UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Crim. No. H-09-342 |
| § | |
| ROBERT ALLEN STANFORD § | |
|   a/k/a Sir Allen Stanford § | |
|   a/k/a Allen Stanford § | |

MEMORANDUM IN SUPPORT OF DETENTION

The United States seeks an order detaining defendant Stanford until trial because there is a serious risk that he will flee if released on bond. Stanford has the motive, means and opportunity to leave the United States prior to trial. There is no condition or combination of conditions that would eliminate these risks and ensure his appearance for trial.

I.    THE PREPONDERANCE STANDARD GOVERNS FLIGHT RISK DETERMINATIONS.

If after the detention hearing, the "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . ., such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). The "simple preponderance standard" governs the flight risk determination, that is, a detention order should issue if "the judicial officer should determine that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *United States v. Fortna*,

769 F.2d 243 (5th Cir. 1985) (distinguishing this standard governing the flight risk determination with the higher "clear and convincing" burden of proof that governs detention based on danger to the community).[1]

II.   A SERIOUS RISK EXISTS THAT STANFORD WILL FLEE.

   A.  Stanford Has The Motive To Flee.

The indictment in this case alleges an extraordinary fraud scheme involving more than seven billion dollars in money due investors. If convicted, Stanford is likely facing a sentence that would result in him spending the rest of his life in prison. Few cases involve such a strong incentive for the defendant to flee.

The indictment charges Stanford with one count of conspiracy to commit wire, mail and securities fraud; seven counts of wire fraud; ten counts of mail fraud; one count of conspiracy to obstruct an SEC proceeding; one count of obstructing an SEC

---

[1] Stanford's Memorandum seeking his pretrial release erroneously claims that *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992), supports the proposition that the Bail Reform Act "favors non-detention." Memorandum 2. There is no such statement in *Byrd*, which is a case involving detention based on danger to the community in which the Fifth Circuit simply noted that danger is a basis for detention only in the types of cases Congress enumerated in the detention statute. *See* 969 F.2d at 106. The Fifth Circuit has repeatedly held that in flight risk cases, the preponderance standard governs. *See, e.g.*, *United States v. Ortlieb*, 1999 WL 274310 (5th Cir.) (affirming district court's order to detain because "the government proved by a preponderance of the evidence that [the defendant] is a flight risk") (unpublished); *United States v. Apolinar*, 1998 WL 224574 (5th Cir.) ("The record supports the district court's determinations that the Government proved by a preponderance of the evidence that Apolinar has strong ties to Mexico and is a flight risk.") (unpublished); *United States v. Khalaf*, 1995 WL 413065 (5th Cir.) ("An order of detention premised on a serious risk of flight must be supported by the preponderance of the evidence.") (unpublished); *Fortna*, 769 F.2d at 250.

proceeding; and one count of conspiring to launder money from places in the United States to places outside the United States and vice versa. The statutory maximum Stanford faces if convicted of all counts is 375 years. The Sentencing Guidelines range that would apply to such convictions is literally "off the chart" and thus effectively calls for a life sentence.[2]

Moreover, Stanford lacks real economic or family ties to Houston that would counter his strong incentive to flee. His "residence" in Houston and the planned move of two of his children to Houston is of recent vintage—having taken place only after the appointment of the Receiver and Stanford's learning of the criminal investigation. *See* Stanford Memorandum at 7-8 & n.3.

B. Stanford Has The Means To Flee.

Stanford has substantial means to act on his strong incentive to flee. Stanford's reported wealth, the willingness of his international network of wealthy acquaintances to provide him financial support, his realistic access to the substantial sums of

---

[2] A cursory review of the fraud Guidelines reveals that upon a conviction the base offense level would be 7, loss in excess of $400 million would result in a 30-point enhancement, more than 250 victims would result in a 6-level enhancement, a substantial part of the fraudulent scheme being committed offshore would result in a 2-point enhancement, and an offense substantially jeopardizing the safety and soundness of a financial institution would add another net of 2 points. *See* U.S.S.G. § 2B1.1. That results in a Guidelines score of 47 even before considering other sections of the Guidelines that would likely apply such as role in the offense and abuse of trust. *See* U.S.S.G. § 3B. The highest score on the Guidelines sentencing table is 43, which results in an sentencing range of life imprisonment even for a person with no criminal history. *See* U.S.S.G. § 5 (Part A-Sentencing Table).

Stanford International Bank Ltd. (SIBL) investor money that still cannot be located, and the fact that bank accounts continue to be located which do not appear to be listed in official Stanford Financial Group (SFG) records demonstrate that he has the financial means to flee.

In September 2008, Forbes magazine reported that Stanford was the 205th richest American with a net worth over $2 billion. While the court-appointed Receiver has frozen all of Stanford's assets located to this date, one illustration of Stanford's ability to command the appearance of funds to be used for his benefit is his apparent "convincing" of a recent acquaintance to provide $36,000 to pay a full year's rent for Stanford's lease of an apartment in Houston.

Moreover, the forensic accountants the Receiver has retained to locate SIBL assets have been unable to locate approximately $1 billion in investors' deposits (this is after taking into account the approximately $2 billion in investors' deposits that was diverted to and through other Stanford entities, part of which went towards funding Stanford's lifestyle). Stanford's access to any of this missing billion should be considered in light of the fact that the accountants have found a Stanford-controlled Swiss bank account not documented in official SFG records, which contains approximately $20 million. An email shows that this same Swiss bank

account was used in mid-2008 to increase payments to the individual in Antigua responsible for SIBL's outside "audits."

   C. <u>Stanford Has The Opportunity To Flee</u>.

Stanford's extensive international ties are another highly unusual fact about this case and afford him the opportunity to flee. Stanford's passport shows that he traveled to the following foreign countries: Antigua, Aruba, the Bahamas, Barbados, Bermuda, Brazil, the Cayman Islands, Colombia, the Dominican Republic, Ecuador, France, Grenada, Italy, Jamaica, Libya, Malaysia, Mexico, the Netherlands, the Netherlands Antilles, Panama, Singapore, South Africa, St. Kitts and Nevis, St. Lucia, Sweden, Switzerland, Thailand, Trinidad & Tobago, the United Arab Emirates, the United Kingdom, and Venezuela. During 2008 alone, Stanford's passport shows more than 40 entries into Antigua. The passport also reveals multiple occasions in which there is an exit stamp for Antigua but no corresponding entry stamp, or an entry stamp with no corresponding exit stamp.

Stanford accomplished this far-flung travel via private plane. Stanford insisted on privacy concerning his travel plans and often asked his pilots to prepare and file flight plans within an hour of takeoff.

Stanford's extensive international business travel and his numerous wealthy international business acquaintances and associates presents an even more serious

5

risk of flight in light of the grand jury's allegation that Stanford bribed a foreign official, the head of the Antiguan Financials Services Regulatory Commission. See Indictment ¶ 38. This willingness to bribe foreign officials, combined with Stanford's extensive international ties and experience in private jet travel, demonstrate that Stanford has ample opportunity to act on his strong incentive to flee.

CONCLUSION

This case presents a rare combination of flight risk indicators. The defendant is facing the serious prospect of spending the rest of his life in prison. He is the sole shareholder of a financial company from which approximately one billion dollars is missing. And he has widespread international contacts, experience using private jets at a moment's notice, and is charged with bribing a foreign official. These facts demonstrate that Stanford is a serious flight risk and should be detained pending trial.

    Respectfully submitted,

    TIM JOHNSON
    United States Attorney

BY:     _____S:_____
    GREGG COSTA
    Assistant United States Attorney

    STEVEN A. TYRRELL
    Chief
    Fraud Section, Criminal Division
    U.S. Department of Justice

BY:     _____S:_____
    PAUL E. PELLETIER
    Principal Deputy Chief
    JACK B. PATRICK
    Senior Litigation Counsel
    MATTHEW KLECKA
    Trial Attorney
    Fraud Section, Criminal Division

## CERTIFICATE OF SERVICE

    I certify that the Motion to Dismiss was served on counsel for the defendant, Dick DeGuerin, via ECF on June 25, 2009.

                                              S:\_____
                                              Gregg Costa