IN THE HIGH COURT OF JUSTICE                          Case No. [ ] of 2009
CHANCERY DIVISION
COMPANIES COURT

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)
                                                                    Applicant

_____

**Exhibit KVT21**

_____

This is the exhibit "KVT21" signed and sworn to before me, the undersigned notary public in

and for the State of Texas, on the _l_ day of June, 2009.

_____

Notary Public
My Commission Expires _6/1/11_

Debra Williford
My Commission Expires
06/01/2011

Stanford: SFG Corporate Video 2006

Page 1

1    Stanford Disk 3:   "SFG Corporate Video 2006"

2

3    NARRATOR:

4    The eagle, proud symbol of Stanford Financial Group.  Like

5    the eagle, we soar higher and farther, taking the art of

6    financial services to new heights.  We scan the landscape

7    with eagle vision, seeing opportunities where others cannot;

8    opportunities for new markets, new investments, and new ways

9    of enhancing your financial security.  Up here the

10   possibilities are endless, because potential has no

11   boundaries.

12

13   ALLEN STANFORD:

14   Hello.  I'm Allen Stanford, Chairman and CEO of Stanford

15   Financial Group.  In the next few minutes I'm going to tell

16   you about the products, the services, and the personal

17   philosophy that make us unique in the financial services

18   industry.

19

20   Stanford Financial Group is a family of financial services

21   companies with global reach.  We serve over 40,000 clients

22   who reside in 79 countries on six continents.  Our world

23   headquarters are located in Houston, Texas, and we have a

24   continual growing number of offices around the world to

25   serve our clients.

Stanford: SFG Corporate Video 2006

Page 2

1

2    Our European clients are served through Stanford Group Swiss

3    located in Zurich.  We also have offices throughout Mexico,

4    Ecuador, and Venezuela.  And because we are always searching

5    for new opportunities, we've experienced tremendous growth

6    in the Caribbean and Latin America, a market that many have

7    ignored despite the fact that the total population there is

8    almost one half a billion people.

9

10    We offer a full array of financial services, including

11    international private banking, brokerage, investment

12    advisory services, trust administration, commercial banking,

13    and real estate investment.  And whatever your investment

14    goals, there's a world of Stanford companies to serve you.

15

16    Although independent, all of our affiliate companies work

17    together to form a powerful cohesive network.  Together they

18    represent over 20 billion dollars in assets under management

19    or advisement.  We pride ourselves on the extraordinary

20    level of personal service we offer, and we take the time

21    necessary to truly understand your individual financial

22    needs, developing a relationship based on trust and

23    integrity.

24

25

Stanford: SFG Corporate Video 2006

Page 3

```
 1   JAMES DAVIS, CEO:

 2   Trust and integrity are indispensable.  That thought of

 3   personal relationships is a cornerstone to establish a

 4   lifelong rapport whereby it goes beyond the product

 5   delivered and it becomes, I'm assisting almost a family

 6   member -- in some cases it is a family member -- but

 7   certainly an esteemed friend.

 8

 9   ALLEN STANFORD:

10   Our head office reflects our commitment to the highest level

11   of personal service, including a full-time client concierge

12   desk, our five-star Eagle dining room, private parking

13   facilities, and our Lotus room, a state-of-the-art,

14   multi-media theater.  Our corporate flight department

15   provides clients with safe and convenient transportation

16   between our global offices, another sign of our commitment

17   to excellence.

18

19   This commitment to outstanding personal service is deeply

20   rooted in our past.  In 1932 my grandfather, Lotus Stanford,

21   founded Stanford Insurance Company in my hometown of Mexia,

22   Texas.  The Great Depression had its grip on America, and

23   most businesses were sacrificing quality and services to

24   survive.  But my grandfather refused to lower his standards.

25   Instead, he made service his top priority.  He knew
```

3

Stanford: SFG Corporate Video 2006

Page 4

1    employing the best people and providing the highest-quality

2    products would yield success even in a time of unparalleled

3    adversity.

4

5    The values that built our company to what it is today are

6    the same values that will carry us into the future. Over

7    the past seven decades we've mastered new skills, embraced

8    new technologies, and expanded our opportunities to new

9    markets. Here are some of the products and services that

10    make us unique in the marketplace.

11

12    We offer innovative international private and institutional

13    banking services. Stanford International Bank, domiciled in

14    Antigua, was founded for the specific purpose of

15    private-client wealth management; while Stanford

16    International Bank, domiciled in Panama, serves the needs of

17    our institutional clients. Our banks offer innovative

18    products, security, and world-class service, and our global

19    investment strategy minimizes regional risk while

20    consistently providing our clients an exceptional yield on

21    their deposits.

22

23    In a financial world that's constantly shifting, our

24    brokerage and investment advisory services provide bedrock

25    strength and stability. We offer total wealth management,

4

Stanford: SFG Corporate Video 2006

Page 5

1   keeping our eagle vision focused on your entire financial

2   picture, including investment management, retirement

3   planning, and estate planning.  Using our unbiased

4   wealth-management approach we tailor a financial plan to

5   your specific requirements, and then we put that plan into

6   action through the Stanford worldwide network of affiliates.

7   In this way we help you weather the market cycles and, most

8   importantly, we help you reach your financial goals.

9

10  Stanford not only builds wealth, but preserves wealth.  We

11  help our clients protect their estates through carefully

12  drafted trust.  Our trust professionals create a legal

13  structure specific to your family, your tax situation, your

14  business needs, and your goals for the future.  And because

15  potential has no boundaries, you can utilize all of the

16  Stanford products and services in designing your personal

17  trust.

18

19  Stanford was one of the first financial service

20  organizations to recognize the Caribbean's enormous

21  potential for trade and development in the new century.

22  Over the past 22 years Bank of Antigua has developed into

23  one of the Caribbean's leading financial institutions.  The

24  bank combines state-of-the-art technology and security while

25  staying committed to superior customer care.

5

Stanford: SFG Corporate Video 2006

Page 6

```
 1
 2    While we constantly search the horizon for new
 3    opportunities, our real estate investment services are
 4    building a better future from the ground up.  For more than
 5    50 years we have acquired, developed, and managed real
 6    estate properties in the United States and around the world,
 7    including a new luxury-loft development here in Houston and
 8    a one-of-a-kind business and entertainment complex in
 9    Antigua.
10
11    We see untapped potential throughout the Caribbean.  With
12    this vision for the future we created the Stanford Caribbean
13    Investment Fund to stimulate development and jobs across the
14    region while providing the fund's investors with a solid
15    return on their investment in a part of the world we know
16    very well.
17
18    The Stanford name also symbolizes superior service for our
19    business and institutional clients around the globe.  We
20    offer investment banking, merchant banking, institutional
21    equity sales and trading, and the services of our
22    multi-billion-dollar Stanford fixed-income desk from our
23    offices in Houston, Dallas, Miami, San Diego, and New York.
24    And because information is as important as capital in a
25    global economy, our Memphis office provides cutting-edge
```

Stanford: SFG Corporate Video 2006

Page 7

1  research on the latest trends affecting business and finance

2  in the United States and around the world.

3

4  The main reason Stanford can soar so high is our talented

5  staff, of which I'm very proud.  Regardless of where they're

6  located -- in the United States or around the world -- our

7  employees are the brightest and the most highly trained

8  professionals in the financial-services industry.  We

9  proudly wear the eagle pin as a symbol of our dedication to

10  Stanford values.

11

12  As we build wealth for our clients, we also enrich the lives

13  of the communities we call home.  We provide critical

14  financial support for artistic and community programs

15  worldwide, and I am proud to say that we have been a

16  major financial supporter for the restoration of the

17  Leland Stanford mansion in Sacramento, helping preserve an

18  important piece of California and Stanford family history.

19

20  From humble beginnings, my family has created a world-class

21  financial-services organization with global reach.  But we

22  have never forgotten the lessons learned for the long road

23  of building a business step by step over the past seven

24  decades.  Seven decades of determination and commitment,

25  seven decades of hard work, clear vision, and value for you,

Stanford: SFG Corporate Video 2006

Page 8

1    our client.

2

3    I am truly honored and truly excited to lead our companies

4    forward in the 21st century.  With eagle vision we will

5    continue to search the world for new investment

6    opportunities, kept aloft by our core Stanford values of

7    stability, trust, and integrity.  The eagle soars because

8    potential truly has no boundaries.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8

Page 9

```
1              REPORTER'S CERTIFICATION
2         OF THE STANFORD AUDIO RECORDING
3              SFG CORPORATE VIDEO 2006

4         I, Sandra S. Givens, Certified Shorthand
5    Reporter in and for the State of Texas, hereby
6    certify to the following:
7         That this transcript of the aforementioned
8    Stanford audio recording disk is a true record of
9    the recording as taken down by me;
10        That the transcript was submitted on May 27,
11   2009, via electronic mail, to Baker Botts, LLP;
12        I further certify that I am neither counsel
13   for, related to, nor employed by any of the parties
14   or attorneys in any action to which this recording
15   may relate, and further, that I am not financially
16   or otherwise interested in the outcome of any such
17   action.
18        Certified to by me this 27th day of May, 2009.
19
                    GIVENS COURT REPORTING
20                  9532 Morgan Creek Drive
                    Austin, Texas 78717
21                  (512) 301-7088
22
23                  _____
                    SANDRA S. GIVENS, CSR
24                  Certification No. 5000
                    Certificate Expires 12/31/09
25

     sg-#999
```

IN THE HIGH COURT OF JUSTICE                                    Case No. [ ] of 2009
CHANCERY DIVISION
COMPANIES COURT

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)
                                                                    Applicant

---

Exhibit KVT22

This is the exhibit "KVT22" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the ___ day of June, 2009.

Notary Public
My Commission Expires ____6/1/11____

Debra Williford
My Commission Expires
06/01/2011

# HispanicBusiness.com

## Stanford Financial Group's CEO R. Allen Stanford Donates $100,000 to Help Launch Eduardo Najera Foundation for Latino Achievement

PR Newswire

DALLAS, March 31 /PRNewswire/ -- Stanford Financial Group's (SFG) CEO, R. Allen Stanford, announced that he is donating $100,000 and joining Dallas Mavericks' star Eduardo Najera in launching the Eduardo Najera Foundation for Latino Achievement, which will provide college scholarships for outstanding Latino students facing barriers to their educations.

Mr. Stanford's gift, the first to the Foundation, was presented at a halftime ceremony during yesterday's game between the Mavericks and the Cleveland Cavaliers.

"Eduardo Najera's inspirational effort to overcome language barriers to obtain a college education and star in the NBA epitomizes the central role of education in Latino achievement," said R. Allen Stanford. "I am especially committed to the development of the region and its most precious resource -- its young people. I am proud to be part of his efforts. This foundation is an effort to give back by helping a new generation of outstanding Latino students achieve their own educational and career aspirations."

Eduardo added, "I deeply appreciate Mr. Stanford's generosity. I had a dream and the establishment of the Foundation helped make it a reality. If we make a difference in just one child's life, it will have been a success."

Eduardo Najera, the youngest of seven children, is only the second Mexican-born athlete to play in the National Basketball Association and one of Mexico's most popular athletes. Having graduated from high school in Chihuahua, Mexico, with little knowledge of English, Eduardo played two years at Cornerstone Christian Academy in San Antonio to learn the language in order to enter the University of Oklahoma, where he was named Third-Team All-America by The Associated Press and the National Association of Basketball Coaches. He helped Mexico achieve fourth place finishes in the 1999 World Games and World University Games. Eduardo received the Chip Hilton Player of the Year Award from the Basketball Hall of Fame, an award given to a player who has demonstrated personal character both on and off the court, and has served as a United Nations Drug Control Program Goodwill Ambassador for Sports Against Drugs.

About Stanford Financial Group

Stanford Financial Group is an international network of affiliated companies that together provide a wide range of coordinated financial services to more than 40,000 clients in 79 countries. With assets under management, advisement or on deposit of approximately $20 billion, the Stanford organization offers its clients financial planning and investment management, investment advisory, trust, commercial banking, international private banking, and real estate investments services. Headquartered in Houston, Texas, Stanford Financial Group has some 2,000 employees in the United States and worldwide. More information about Stanford Financial Group is available online at http://www.stanfordfinancial.com/ Stanford Financial Group

CONTACT: Susan Herman, +1-305-960-8528, for Stanford Financial Group

Web site: http://www.stanfordfinancial.com/

Source: PR Newswire

**IN THE HIGH COURT OF JUSTICE**                    **Case No. [ ] of 2009**
**CHANCERY DIVISION**
**COMPANIES COURT**

**IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC. (IN RECEIVERSHIP)**
**AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS 2006**

### RALPH STEVEN JANVEY

**(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)**
**Applicant**

---

**Exhibit KVT23**

---

This is the exhibit "KVT23" signed and sworn to before me, the undersigned notary public in and for the State of Texas, on the ___ day of June, 2009.

Notary Public
My Commission Expires _6/1/11_

Debra Williford
My Commission Expires
06/01/2011



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

### 1. INTRODUCTION

#### 1.1 Reputation

Stanford International Bank Limited (SIBL) will not knowingly deal with criminals nor handle transactions which result from criminal activity. Additionally, SIBL will comply with all applicable restrictions, *laws and regulations.*

#### 1.2 Basis of Document – Policy of SIBL

This document sets forth our procedures relating to anti-money laundering legislation and regulation. It also represents our policy in respect to the adherence and compliance with anti money laundering legislation.

### 2. GENERAL AND GUIDING PRINCIPLES

The guiding principles of SIBL's Client Policy and Procedures (CPP) are the common practices of prudent bankers and businessmen worldwide.

> *Principle 1:   Do business only with reputable clients/intermediaries who are involved in legitimate business activities and whose income and wealth are derived from legitimate sources.*

STANFORD INTERNATIONAL Bank

1



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

**Principle 2:** *Determine and record the identity, background and business of all clients/intermediaries and identify and know the beneficial owners/principals/settlors of all relationships.*

**Principle 3:** *From the information gathered, predict the types and levels of the client's transactions, and ensure the relationship is monitored continuously, in order to identify unusual or suspicious activity so that appropriate actions can be taken.*

These three basic guiding and general principles will govern all SIBL's dealings with clients/intermediaries and prospective clients.

### 2.1    Principle 1 - In detail

*Do business only with reputable clients/intermediaries who are involved in legitimate business activities and whose income and wealth are derived from legitimate sources.*

### 2.1.1   Responsibilities

The Bank has primary responsibility for ensuring that sufficient information is gathered about their clients/intermediaries in order to make objective evaluations to determine if the clients/intermediaries are reputable and involved in legitimate business activities, with income and wealth derived from legitimate sources.

STANFORD INTERNATIONAL Bank

2



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Inconsistencies or questions about the legitimacy of the client/intermediary or the source of funds must always be satisfactorily resolved. Further, the Bank's staff should be concerned with those persons directly involved in the client's business, particularly where they have authority over the operation of the relationship.

Directors/Managers/employees or intermediaries must not deal with persons or entities whose identities cannot be confirmed, who do not provide all the required information, for whom they cannot resolve inconsistencies in information or for whom no due diligence or unsatisfactory due diligence has been carried out. Suspicious activities at any stage must be immediately reported to the Senior Compliance Officer.

### 2.1.2  Prohibited client types

SIBL will not maintain accounts for the following:

(i)     Exchange houses or money changers;

(ii)    Anonymous relationships;

(iii)   Individuals or organizations involved with illegal drugs, terrorism, money laundering etc.;

(iv)    Elected or appointed government officials, unless (a) the relationship is supported by a well documented, commensurate, non-political source of wealth and/or income and (b)

3



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

early satisfactory consultation has been carried out with the President of the bank or his designate;

(v)     A managed entity which will be used for unauthorized transactions or transactions for or on behalf of third parties which have not been subject to due diligence or approval ;

(vi)    Individuals or organizations involved in arms or other military equipment sales;

(vii)   Prohibited business segments as advised, from time to time.

The overall guiding principle is to comply with relevant money laundering legislation and thus protect SIBL's legal responsibility, reputation and positioning in the marketplace.

2.2     Principle 2 – In detail

*Determine and record the identity, background and business of all clients/intermediaries and identify and know the beneficial owners/principals/settlors of all relationships.*

SIBL has developed account-opening forms for new accounts business together with a Due Diligence Report.  All questions of due diligence must be satisfactorily resolved before a relationship is established.

STANFORD INTERNATIONAL Bank

4



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

# Client Policy and Procedures

2.2.1   Account Opening Forms/Due diligence report

Every effort must be made in each client relationship to complete account opening forms signed by the client and a due diligence report, duly authorized, together with accompanying information/supporting documentation, which must be contained in each single client file. Appropriate due diligence forms must be completed following Report Completion Guidelines established by SIBL.

2.2.2.   Sign Off/Authorization

An account will not be established until such time as the appropriate Bank official has duly executed the Due diligence report.

2.2.3.   Filing of Account Application and Due Diligence Documents

The importance of obtaining supporting documentation should be recognized by applying a high level of control and the method of filing should be consistent. All information relating to the client/intermediary account application forms, due diligence report and supporting documentation must be placed each client's file, so that reviewing officers and auditors are not required to refer to a file other than the one in which the account application form and due diligence documentation are stored.   This is particularly important for audit purposes. Original documents must be kept in a separate and secure area.

STANFORD INTERNATIONAL Bank



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Furthermore, the file should contain cross-references to other relevant accounts; e.g. a trust file should contain a reference to an underlying company and vice versa.

New and relevant due diligence information must be assessed and added to the client file.

### 2.2.4   Retention of Account Application and Due Diligence forms/Information on Closed Accounts

Documentation on client files must on no account be destroyed while the relationship remains active. Once the relationship is closed, unless otherwise instructed, files must only be destroyed after the appropriate local statutory retention period has elapsed, but never sooner than six (6) years from the date of closure.

### 2.3   Principle 3 – In detail

*From the information gathered, predict the types and levels of the client's transactions, and ensure the relationship is monitored continuously, in order to identify unusual or suspicious activity so that appropriate actions can be taken.*

### 2.3.1.  Understanding the business proposal

The general levels of activity should be determined and such information used to assess the appropriateness of the client's actual activities.

### 2.3.2.  Monitoring activity



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

The Compliance Officer will review due diligence reports, new account vetting processes, and transaction volumes on a regular basis. Suspicious activity or deviation from policy will be reported as set forth in 2.3.3 below.

### 2.3.3   Reporting Suspicious Activity/Relationships

It is SIBL's policy to adhere to statutory reporting requirements and those of appropriate regulatory, investigatory and prosecuting authorities.

### 2.3.3.1.   Action to be Taken

An employee who discovers suspicious activity or the appropriateness of a relationship, account or transaction should gather all pertinent information and follow the procedures set out in these procedures.

In addition to internal procedures, local regulations regarding the report of suspicious activities should be followed in all cases. Management must determine appropriate action, in accordance with applicable local law and take appropriate action.

## 3.   MONEY LAUNDERING

Money is laundered to disguise its true source. While generally associated with drug/narcotic trafficking it is important to understand that money laundering now covers a much broader

STANFORD INTERNATIONAL Bank

7



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

range of illicit and criminal activity. It consists of three phases: placement, layering and integration.

### 3.1    Three Stages of Money Laundering

Placement is the physical disposal of cash proceeds derived from illegal activity;

Layering is the distancing of illicit proceeds from their source by creating layers of financial transactions designed to disguise the audit trail and provided anonymity;

Integration is the re-entry of the laundered proceeds into the economy in such a way that they appear to the financial system to be legitimate investment funds.

Our Client Policy and Procedures is our primary defense against money laundering and other criminal activity. They are designed to detect and prevent attempts to misuse SIBL or any of products and services for illegal activity.

### 3.2    Penalties

Failure to fully implement and comply with the CPP may result in the penalties to SIBL up to and including loss of licenses to conduct business as well as damage to reputation. In addition, SIBL directors and employees may be subject to, and personally liable for, criminal and civil fines and penalties, including imprisonment, if they are aware of, or remain negligent/reckless/willfully blind to a client's illegal activities.

### 3.3    Negligence/recklessness

STANFORD INTERNATIONAL Bank

8



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Negligence/recklessness/willful blindness may result when a director/manager/employee has failed to perform due diligence, or has been negligent an/or reckless and/or willfully blind in carrying out due diligence, or has not satisfied himself /herself as to the bona fide source of funds, or having had his or her suspicions aroused, does not make further inquiries which satisfactorily resolve those suspicions. Money legislation states that a person deemed to have knowledge of a client's illegal activity can be held personally liable.

Failure to meet these policies may result in disciplinary proceedings being commenced against individuals. Adherence to the CPP policy is not only mandatory, but also essential from a prudential point of view. SIBL is committed to preventing the use of its network for criminal purposes. It is equally committed within the confines of the law to cooperating with regulators, prosecutors and other government authorities to stop any person form using SIBL for illegal activity.

3.4    Suspicious Activity and Money Laundering Reporting

Any suspicious activity of money laundering which comes to the attention of employees of SIBL must be reported immediately to the Compliance Officer. The Compliance officer in the Bank will file all required reports to the appropriate governmental authority relating to all suspicious activity and money laundering.

4.  RESPONSIBILITIES

4.1    Management

STANFORD INTERNATIONAL Bank

9



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Management of SIBL should ensure that they and their staff are familiar with and continuously comply with the CPP policies.

### 4.2    Staff, Client Support Services

SIBL employees responsible for client relationships must know their clients and ensure that client relationships are conducted according to the guiding principles of the CPP policy. They are responsible for ensuring that:

- Account application and due diligence forms are thoroughly and accurately prepared, with ample detail and supporting documentation and are properly approved;

- Information records are accurate and up-to-date. The Bank should be kept abreast of developments or changes affecting relationships, particularly matters affecting transactions or activities which are not in keeping with the client's known business or declared business plan; personal information regarding the client;

- There is a procedure for monitoring and reporting of suspicious transactions.

SIBL management, employees and officers should, when relevant, assist one another wherever and whenever possible, to comply with applicable local laws. They should provide to, and obtain from their colleagues supporting information about clients, local business information, or any other assistance that can help in assessing the appropriateness of a relationship.



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

4.3    Compliance

The objective and role of compliance is to ensure that each employee complies with all relevant laws and regulatory requirements.

Compliance involves identifying on a continuing basis all relevant laws and regulatory requirements and establishing adequate procedures and controls to ensure compliance with such regulatory requirements;

Compliance will monitor the effectiveness of such procedures and controls and increase the awareness of the importance of compliance through an ongoing program of staff training.

4.3.1    Compliance Officer

A Compliance Officer shall be appointed in accordance with the laws of Antigua and Barbuda.    The Compliance Officer is the first point of contact for compliance and related inquiries.

4.3.2    Reporting lines

The Compliance Officer shall report to SIBL's President.

4.3.3.    Raising issues

———————————————————————————————— STANFORD INTERNATIONAL Bank



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Compliance issues and questions should be directed first to the Compliance Officer and if necessary, directly to SIBL's President.  All money laundering issues shall be directed to the Compliance Officer.

### 4.4  Internal Audit

Internal audit overlaps with compliance in the monitoring adherence to compliance procedures. Auditing of business procedures forms an integral part of SIBL's program. Account application forms, due diligence forms and other supporting documentation presented when an account is established will be reviewed by Audit to ascertain that all required client information is being obtained and properly recorded.

### 4.5  Policy exceptions

SIBL's President or his designate must approve requests for policy exceptions.  The request should clearly state the reason for the proposed exception and the alternative controls/documentation that will provide similar or enhanced level of protection to SIBL.

### 4.6  On-Going Training of all employees

The Client Policy and Procedures applies to every employee of SIBL.  SIBL will maintain a proper and planned training program is in place which will ensure each employee receives effective anti money laundering training, training in relation to the Client Policy and

12



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

Procedures and are notified of other relevant developments from time to time. An appropriate entry of such training will be made on the employee's record.

SIBL's Compliance Officer shall ensure that all new employees should on starting their employment with SIBL be given full anti money laundering training in accordance with CPP. An appropriate entry of such training will be made on the employee's record.

4.7    Compliance to appear as an item on SIBL's Board Agendas

SIBL's Board of Director's will receive a copy of relevant Compliance Audit reports. SIBL's President will update the Board on the status of such reports.

4.8    Annual Reviews

The Board of Directors shall receive and review an annual report regarding Compliance matters. Amendments to the CPP should also be reviewed and approved by the Board at least annually.

5.    NEW BUSINESS REQUIREMENTS

The following standards represent the minimum requirements of SIBL. Officers and staff should be fully conversant with these standards as well as the requirements of local anti-money laundering laws. SIBL's President will delegate authority to the appropriate officials

STANFORD INTERNATIONAL Bank

13



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

for the acceptance of new business. The appropriate official must sign off all new business. Notwithstanding, SIBL's President is responsible for all new business approved.

5.1    Identification

5.1.1  Beneficial owners

Establish whether the client and each party in the relationship will act on his/her own behalf. In all cases, the names of all legal owners, beneficial owners, and persons/entities having signing powers, must be recorded in the appropriate account opening documentation. Due diligence must be carried out on all of them. Appropriate due diligence reports must be filed for each owner, beneficial owner or person/entities having signing powers.

5.1.2  Third parties

In exceptional cases where a client proposes at inception to give signing authorities to a third party, the association between the third party and the client must be explained satisfactorily. In all such cases and in particular where the third party exercise control/influence over the relationship the rationale must be recorded in the appropriate forms and due diligence must be carried out on that third party.

5.1.3  Identification documents

SIBL must receive a satisfactory copy of a current passport, national identification card, driver's license or other appropriate identification from original documentation for all parties

STANFORD INTERNATIONAL Bank



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

to the relationship for retention in the client's file. . The identification per client must have an  identification number, the date and place of issuance of the identification and the issuing entity.   In all cases the copies should be clear.   Details regarding identifications will be recorded in the appropriate due diligence form for each client.

### 5.1.3.1 Verification of Identification

Identification will need to be verified when the situation calls for it. The situation will call for it when and if the circumstances are such that the identification itself or the circumstances in which it was given or other related matters would give rise to a doubt in a reasonable person's mind.  Proper notes should be made of such verification, which must be added to the client file.

### 5.1.4   Nationality/Date of Birth

Obtain the record of the client's date and place of birth, country of residence/domicile, nationality and occupation on the appropriate due diligence form.

### 5.1.5   Companies

For companies seeking to establish a business relationship, obtain originals or up to date copies of proper registration and legal status.  Specific requirements depend on the type of legal entity and local laws.  Additionally, obtain copy of the Memorandum and Articles of Association, equivalent or appropriate incorporation documents together with a resolution

STANFORD INTERNATIONAL Bank



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Client Policy and Procedures

from the Secretary of the Board and Board Resolution approving the account relationship and signatories of those duly authorized to administer it. Wherever possible a certificate of good standing should be obtained. . Also, identify major shareholders of the company and any relevant inter company related party relationships.

The Compliance Officer will conduct periodic reviews of all client files to ascertain compliance with the requirements of these procedures.



*Policies and Procedures*

# Completion of Due Diligence Reports

### 1. GENERAL

1.1    In accordance with our Anti-Money Laundering Policy, other internal policies and the provisions of applicable laws and regulations, we are required to obtain certain information on each proposed client, corporate director, beneficial owner(s) or anyone with signing authority on the account (for example: signatories by Power of Attorney).

We have designed and implemented Due Diligence Report forms to be completed for each type of proposed clients. The information gathered on these reports must allow the Bank to analyze the acceptability of a proposed account and develop a profile of the client and expected account activity.

A referring officer must complete the form and send it to the appropriate Manager(s) for review and approval.

### 2. FORMS

The following forms are available for use by referring officers:

FORM NO.      TITLED

SFG33      <u>DUE DILIGENCE REPORT FOR CORPORATIONS OR OTHER ENTITIES</u>: Complete this form for incorporated entities (Offshore companies, Inc., Ltd. S.A. de C.V., etc.), or other entities such as partnerships, etc. SFG 33 requires completion of SFG 34, and SFG 35 or

STANFORD INTERNATIONAL Bank

17



*Policies and Procedures*

## Completion of Due Diligence Reports

SFG 36 as applicable, SFG(01) and a Declaration of Beneficial Owner's Identity form (SIB38).

SFG34     <u>DUE DILIGENCE REPORT FOR DIRECTORS OR SIGNATORIES</u>: Complete this form for each Director or Signatory who <u>is not</u> an account owner (names appearing on account title) or beneficial owner's of the proposed account.     If a Director or Signatory is also a beneficial owner then SFG35 and SFG 36, as applicable, must be completed in lieu of SFG34.

SFG35     <u>DUE DILIGENCE REPORT FOR INDIVIDUAL ACCOUNT OWNERS OR BENEFICIAL OWNERS</u>: Complete this form for the first account owner listed (name appearing on the account title) or beneficial owner of a proposed account.

SFG36     <u>DUE DILIGENCE REPORT FOR ADDITIONAL ACCOUNT OWNERS OR BENEFICIAL OWNERS</u>: Complete this form for each additional individual listed as account owner or any beneficial owner of a proposed account, whether or not his/her name appears as part of the account title.

SFG(01)     <u>SIBL ADDENDUM</u>: Complete one addendum per account referral.

STANFORD INTERNATIONAL Bank

18



*Policies and Procedures*

## Completion of Due Diligence Reports

SIB 38        <u>DECLARATION OF BENEFICIAL OWNER'S IDENTITY</u> :

To be completed for all company or trust accounts.

<u>QUICK REFERENCE GUIDE:</u>

Individual Accounts:    SFG 35 or SFG 36 as applicable, and SFG(01) required.

Corporate Accounts:    SFG 33,  SFG 34 (SFG35 or SFG 36 as applicable),  SFG (01) and

SIB 38 required.

3.    FORM COMPLETION GUIDELINES

Although all forms are self-explanatory, there are several general guidelines that must be
followed when completing them:

a)  All forms must be duly completed. Every question must be answered.  Enter "N/A"
when the question is not applicable. For example, if the client does not have a fax
number, then you may enter N/A. However, entering N/A as an answer to Home address
or Telephone number will not be accepted.

b)  The bank must have a "Home address" on record.  This is the residential address of the
proposed client. P.O. boxes and office/business addresses are not to be entered under
"Home address".

STANFORD INTERNATIONAL Bank

3

19



*Policies and Procedures*

## Completion of Due Diligence Reports

c) Copies of identifications should accompany every Due Diligence Report. Copies must meet the standards set forth in the Client Policy and Procedures, section 5.1 . As a minimum requirement, details of the identification must be recorded on the Due Diligence Report

d) Country of birth or Place of Birth: Enter the name of the city and country.

e) Description of Professions, Types of Business, Position/Title must be specific. Examples of acceptable descriptions include: Owner of furniture wholesales company, manufacturer of motorcycle parts. Unacceptable descriptions are those too generic in nature, for example: Wholesaler, Manufacturer, and Merchant. These generic descriptions do not allow the bank to gain an understanding of the proposed client's line of business and project account volumes.

f) Primary source of income, Client's approximate net worth, Current Net worth: Include figures and answers obtained from the client, or based on a review of the client's financial statements. The answers to these questions allow the bank to project account volumes. Be precise and realistic. <u>Any new findings or changes should be reported by updates to the Due Diligence Reports.</u>

g) Banking or personal references: List or attach banking or personal references. We prefer updated Bank reference letters. Personal reference letters or copies of recent

STANFORD INTERNATIONAL Bank

20



*Policies and Procedures*

## Completion of Due Diligence Reports

account statements are also acceptable. If these are not available, the bank must have enough information to independently verify data provided about its proposed clients.

4.  General Comments and Statement

Provide answers to the general comments questions found on the appropriate forms. Enter your signature after reading and understanding the following statement:

*" I hereby state I have completed this report to the best of my knowledge, obtained a copy and reviewed the original of the identifications listed above, and that I will report any change in this information of which I may become aware"*

5.  Forwarding forms

Duly completed forms must be presented to the appropriate Manager for action. That Manager is responsible for handling of the form, following internal procedure at the appropriate company, and forwarding the form to SIB.

SIB will receive the forms, review them and accept, deny or request more information regarding the proposed account. Until SIB accepts and signs off on a referral, law does not consider the individual or entity, a client of SIB.

6.  Procedural questions or clarifications regarding Due Diligence Forms

Questions or clarifications regarding these forms may be directed to the Sr. Vice President, Operations at SIBL.

STANFORD INTERNATIONAL Bank

2)

## Due Diligence Report for Individual Account Owners or Beneficial Owners

is form must be filled out completely. Spaces that do not apply must be marked "N/A". Please type or print. Attach separate
rmation sheets for each additional proposed account holder or proposed beneficial owner.

Please check one:    ☐ Account Owner       ☐ Beneficial Owner

Please check one:    ☐ (a)       ☐ (b)       ☐ (c)       ☐ (d) (as per account application) [Bank use only]

Name:_____
　　　　First　　　　　　　　　　MI　　　　　　Last　　　　　　　　　　Last

Date of birth: _____(DD/MM/YY)  Country of birth: _____

Identification (Please check one and enclose legible copy):

　　　　☐ Passport number: _____   ☐ National ID (Cedula) Number: _____

　　　　☐ Driver's License Number: _____

Home address: _____ No. of years:_____

　　　　☐ Telephone number: (　　) _____

Profession: _____

Retired:　　　　☐ No, complete below:　　　☐ Yes, provide information below for previous business/employer:

Name of Business/Employer:_____

⁻⁻⁻e of Business: _____

　ıtion/Title: _____ No. of Years: _____

F  : check one:   ☐ Sole Owner    ☐ Part Owner    ☐ Employee

Business address: _____
_____

Business telephone: (　　) _____ Fax: (　　) _____ Email: _____

Number of years with this Business/Employer: _____ years

Primary source of income:　　☐ Business/Employment listed above　　☐ Rental Income
　　　　　　　　　　　　　　☐ Investments　　　　　　　　　　☐ Other: _____

Projected annual income from primary source: $_____

Other sources of income:　　☐ Business/Employment listed above　　☐ Rental Income
　　　　　　　　　　　　　　☐ Investments　　　　　　　　　　☐ Other: _____

Projected annual income from other sources:$ _____

Is this individual now, or has he/she ever been, a government employee or an elected or appointed government official?
☐ No　　　　　　　☐ Yes, provide details:

Dates　　　　　　Position　　　　　　　　　　　　　　Country

_____　　_____　　_____
_____　　_____　　_____
_____　　_____　　_____
_____　　_____　　_____

22

## Due Diligence Report for Additional Account Owners or Beneficial Owners

This form must be filled out completely. Spaces that do not apply must be marked "N/A". Please type or print. Attach separate information sheets for each additional proposed account holder or proposed beneficial owner.

Please check one:    ☐ Account Owner    ☐ Beneficial Owner

Please check one:    ☐ (a)    ☐ (b)    ☐ (c)    ☐ (d) *(as per account application)* [Bank use only]

Name: _____
      First               MI      Last                               Last

Date of birth: _____ (DD/MM/YY)  Country of birth: _____

Identification: *(Please check one and enclose legible copy)*

  ☐ Passport number: _____    ☐ National ID *(Cedula)* Number: _____

  ☐ Driver's License Number: _____    ☐ ID Expiration date: _____

Home address: _____
                                                               No. of years: _____

Telephone number: (_____) _____

Profession: _____

Retired:    ☐ No, complete below:    ☐ Yes, provide information below for previous business/employer:

Name of Business/Employer: _____

Type of Business: _____

Position/Title: _____  No. of years: _____

Please check one:    ☐ Sole Owner    ☐ Part Owner    ☐ Employee

Business address: _____
_____

Business telephone: (_____) _____ Fax: (_____) _____ Email: _____

Number of years with this Business/Employer: _____ years

Primary source of income:    ☐ Business/Employment listed above    ☐ Rental Income
                              ☐ Investments    ☐ Other: _____

Projected annual income from primary sources: $ _____

Other sources of income:    ☐ Business/Employment listed above    ☐ Rental Income
                              ☐ Investments    ☐ Other: _____

Projected annual income from other sources: $ _____

Is this individual now, or has he/she ever been, a government employee or an elected or appointed government official?

☐ No    ☐ Yes, provide details:

Dates               Position                               Country

_____    _____    _____

_____    _____    _____

_____    _____    _____

23

### Due Diligence Report for Corporations or Other Entities

This form must be filled out completely. Spaces that do not apply should be marked "N/A". Please type or print only. Attach separate information sheets for each Director, Signatory or Beneficial Owner*.

Name: _____

Type of entity:  ☐ Corporation          ☐ Other, specify: _____

Business address: _____

Business telephone:(     ) _____ Fax:(     ) _____

Contact person:_____

Email address: _____

Date registered: _____ (DD/MM/YY)

Registration number: _____ Country of Registry:_____

Is this an IBC?  ☐ No        ☐ Yes, shares:   ☐ Bearer:_____       ☐ Registered: _____

Financials:       ☐ Operating income: $ _____    ☐ Net income: $ _____

                  ☐ Other sources of income: $ _____

                  ☐ Asset size: $ _____

This company is: ☐ Privately held         ☐ Publicly held: _____

_____

What type of business does this company engage in? _____

mber of years in this line of business: _____

Primary source of income:      ☐ Business listed above              ☐ Investments

                               ☐ Other: _____

Projected annual income from primary source: $_____

Other sources of income:       ☐ Business listed above              ☐ Investments

                               ☐ Other: _____

Projected annual income from other sources: $ _____

Corporate documentation attached:

                  ☐ Articles of Incorporation          ☐ Certificate of Good Standing

                  ☐ Financial Statements               ☐ Other: _____

Please list Directors, Signatories and Beneficial Owners*:

| Name | Director/Signatory/Beneficial Owner |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

24



### Due Diligence Report for Directors or Signatories

This form must be filled out completely. Spaces that do not apply must be marked "N/A". Please type or print. Attach separate information sheets for each additional Director of proposed corporate clients or proposed signatories who are not beneficial owners.

Proposed account title: _____

Please check one:    ☐ Director    ☐ Proposed signatory    ☐ Officer    ☐ Other

Please check one:    ☐ (a)    ☐ (b)    ☐ (c)    ☐ (d) *(as per account application)* [Bank use only]

Name: _____
    First           MI     Last               Last

Date of birth: _____ (DD/MM/YY)  Place of birth: _____

Identification: *(Please check one and enclose legible copy)*

☐ Passport Number: _____  ☐ National ID *(Cedula)* Number: _____

☐ Driver's License Number: _____   ID Expiration Date: _____

Home address: _____ No. of years: _____

Telephone number: (____) _____

Profession: _____

Retired:     ☐ No, complete below:       ☐ Yes, provide information below for previous business/employer:

Name of Business/Employer: _____

Type of Business: _____

Position/Title: _____

Please check one:    ☐ Sole Owner     ☐ Part Owner     ☐ Employee

Business address: _____
_____

Business telephone: (____) _____ Fax: (____) _____ Email: _____

Number of years with this Business/Employer: _____ years

Is this individual now, or has he/she ever been, a government employee or an elected or appointed government official?

☐ No       ☐ Yes, provide details:

| Dates | Position | Country |
|-------|----------|---------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Please check one:    Have you personally met this client?   ☐ No   ☐ Yes

                 Are you related to the client? ☐ No   ☐ Yes,   Explain: _____

Date of last visit:    ☐ Business: _____  ☐ Never

                 ☐ Residence: _____  ☐ Never

_____      _____
Referring Officer's Signature                      Date

_____      _____
Manager's Signature                            Date

SFG54 (91) ENG                                             Mex 2836 64.64 2000 SPL

25



### SIBL Addendum

1. Are any of the proposed directors, signatories or beneficiaries listed on this referral related to any other accounts with the Bank?

☐ No

☐ Yes, please provide details:

Account Number: _____   Account Name: _____

Relationship: _____   *(signatory, beneficial owner, relative)*

2. Will more deposits likely be sent to SIBL?

☐ No

☐ Yes, please provide details:

Account Frequency /Via: _____

☐ Monthly   ☐ Quarterly   ☐ Yearly   ☐ Other: _____

☐ Check   ☐ Wire

3. Have all proposed account holders, signatories and beneficiaries been advised that the Bank does not accept cash, money orders, travelers checks or checks payable to third parties?

☐ Yes   ☐ No *(All parties must be advised before an account may be established)*

Officer's signature: _____   Date: _____

Manager's Approval: *(as applicable)* _____   Date: _____

| SIBL USE ONLY |
|---|

☐ Account Approved

☐ Conditional Approval-Specify Conditions:

_____

_____

_____

Follow up Dates: (1) _____   (2) _____

(3) Closing date if conditions not met: _____

☐ Declined:

_____   _____

Authorized Signature (SIBL)   Date

SFG 2015 EMC

26



## STANFORD INTERNATIONAL BANK LTD.

2000 AIRPORT BOULEVARD, ST. JOHN'S ANTIGUA, W.I. • TEL. (268) 480-3700 FAX (268) 480-3737

### Declaration of Beneficial Owner's Identity
(For Companies/Trust Accounts)

Title of proposed/existing account:

_____

(If existing account, please note customer number below)

Customer No.:

_____

I/We hereby declare that the Individuals/Entities listed below are the Beneficial Owners of the proposed/existing account.

We enclose copies of Beneficial Owner's picture ID with signature

| Full Name | Full Address |
|-----------|--------------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

The Account Holder undertakes to inform the bank immediately of any changes to the information provided herein.

Place and date                                    Signature

27



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

1.  SIBL Commitment to compliance

2.  Know Your Customer Policy (KYC)

    - Need to have a KYC policy
    - When to identify customers
    - Documents to prove identity

3.  Due Diligence Reports and Account Documentation

    - Required Documentation
    - Required information

        Individual customers accounts
        Business or Corporate Accounts
        Trusts Accounts

    - Customers signatures
    - Designated Beneficiaries
    - OFAC

4.  Suspicious Activity Reports (SAR) Referrals

    - General kinds of possible suspicious activities
    - When to make a report
    - How to prepare a report
    - Record retention

5.  Compliance Procedures

    - Compliance Reviews
    - SFG Corporate Compliance
    - Employees compliance training

STANFORD INTERNATIONAL Bank

28



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

1. SIBL Commitment to Compliance

The foundation of SIBL Money Laundering Act procedures is first and foremost the commitment by management in the strict implementation and support in both in letter and spirit of the Anti Money Laundering Policy. This commitment coupled with a thorough Know Your Customer Policy, effective transactions monitoring and ongoing training to employees, will enhance and support SIBL anti-money laundering policies and procedures. Compliance with the Anti-Money laundering policy is a very high priority for our institution.

Any person who attempts, aids, abets, counsels or procures the commission of and conspires to commit, the offence of money laundering under the law is guilty of an offence.

Management will be strictly enforcing and supporting this policy to avoid any occurrence.

2. Know Your Customer Policy (KYC)

Know your customer procedures is the sensitization of the bank personnel to a comprehensive understanding of who our customers are, what each customer's business is and what type of activities and transactions are "normal" for each customer.

This policy should be followed to increase the likelihood that SIBL is in compliance with all statutes of the Antigua & Barbuda regulations and adheres to sound and recognized banking practices. It should decrease the likelihood that SIBL will become the victim of illegal activities perpetrated by any customer or prospect.

The policy should not interfere with the relationship of SIBL with its good customers.

In order to develop and maintain a practical and useful policy, SIBL incorporated the following principles into our operation.

29



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

- FCs will make all reasonable efforts to determine the true identity of all customers or prospects requesting the bank's services.
- Particular care will be given to identify the ownership of all accounts.
- Bank personnel will monitor for any unusual transaction activity or any activity disproportionate to the customer's known business.

### When to identify customers?

Every customer will be identified at the time a business relationship is intended or initially established.

This will require that the financial consultant FC personally meeti with customers or prospects, the analysis of the information gathered, a visit to the customer's place of business, review of its financial data and obtaining positive and reliable identifications.

Under no circumstances will SIBL accept customers that refuse or are reluctant to provide the pieces of information needed to support the account opening procedure and comply with the know your customer policy established by the bank.

### Documents to prove identity.

As a general rule no business relationship will ever be established until the identity of the potential customer is completely and satisfactorily established.

To positively identify customers and to avoid any fictitious accounts one or more of the following identifications should be obtained at the moment the account is opened. The information in them should be clear and current.

1. Passports
2. National Identification cards (cedulas)
3. Drivers license
4. Electoral cards

STANFORD INTERNATIONAL Bank

3

30



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

5. Government issued IDs
6. Current banking statements from reputable institutions showing account numbers, customers' name and address.

3. **Due diligence reports and account information.**

In accordance to KYC and Bank policies to require information and obtain information on each proposed client, corporate directors, beneficial owners or other account signatories, SIBL has in place the procedures for the completion of the Due Diligence Reports. Detailed general and financial information about proposed and existing customers should be included in these forms by the FCs.

The Due Diligence Reports policy and Client Policy Procedures complement efforts to ascertain that the institution will be in full compliance with the KYC requirements.

The following documentation will be used as it applies for every account opening. All spaces should be filled with the appropriate information. If the information in a space is not needed or available a N/A indication should be made. No spaces should be left blank.

- Account Application (SIB06)
- DDR for individual account owners (SFG35)
- DDR for additional account owners (SFG36)
- DDR for Corporations or other entities (SFG33)
- DDR for directors or signatories (SFG34)
- SIB addendum (SFG)
- Declaration of Beneficial owners (SIB38)

Other account documents needed

- Banks or professional references
- OFAC report form

Personal Accounts

STANFORD INTERNATIONAL Bank

4



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

Each individual customer file should have the following information:

- Full names of account holders
- Complete home address of account holders (no PO Boxes or Hotel addresses)
- Job description (e.g., civil engineer, jewelry store owner, college professor, auto dealership owner, doctor, lawyer, etc.).
- Place of business name and address
- Amount of yearly income (for each signator)
- Expected additional transactions amount
- Name of referral to SIBL, particularly if it's a bank employee or officer.
- Source of funds (the ones used to open the account at SIBL)

Business or corporate accounts

- Complete name and address of the business including telephone and fax numbers (No POB or Hotel addresses).
- Names and address of business officers
- Business description (electrical contractors, tiles factory, hardware store, etc.).
- Corporate resolution dated and signed.
- Financial information of business (e.g. financial statements, trade reports, etc.)
- Name of referral to SIBL, particularly if it's a bank employee or officer.
- Source of funds (the ones used to open the account at SIBL)

Trust Accounts

- Complete name and address of the settlors.
- Declaration of beneficial owner's identity
- Single purpose trust agreements forms
- Investments instructions

32



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

Designated beneficiaries

Designated survivors to account holders claiming funds from any accounts must show proof of identity.

- Passports
- National Identification cards (cedulas)
- Driver's license

Failure to submit beneficiaries ID could result in account opening delays or rejections.

OFAC reports

The importance of establishing a compliance review procedure is extremely obvious to SIBL in our efforts to avoid the expectations regarding processing transactions involving countries under sanctions such as Cuba, Iran, Iraq, North Korea, Libya, specially designated nationals and blocked entities.

Although not required by local laws it is our policy to follow the OFAC requirements by monitoring each customer with the list and referring to management any matched names.

If any customer included in the OFAC list appears to be doing business or intends to open an account at SIBL, it will be referred to the CO who will review the information and if positive will refer the case to SFG Senior Compliance officer and legal counsel for the proper action.

Copies of the report will be included in the customer's files as evidence of compliance with the procedures.

STANFORD INTERNATIONAL Bank

33



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## 4. Suspicious Activity Report (SAR) referrals

The Money Laundering (Prevention) Act exempts suspicious activity reporting from the confidentiality provisions of the laws of Antigua & Barbuda and provides complete protection to employers from liability for all reports of suspected or known criminal violations and suspicious activities to appropriate authorities.

**When to make a report:**

Financial institutions operating in Antigua & Barbuda are required to make this report following the discovery of:

* *Insider abuse involving any amount.* Whenever SIBL detects a suspect act and has substantial evidence that one of its officers, employees, agents, or other affiliate parties have committed or aided in the commission of a criminal act regardless of the amount involved in the violation.

* *Transactions aggregating US $10,000 or more where a suspect can be identified.* It is SIBL policy not to receive and process cash transactions.

An officer or employee who discovers any suspicious activity shall gather all pertinent information and follow the procedures set out in the "Compliance Policies Procedures" by referring the case to management. Management will determine appropriate action in accordance with the local law.

In making a determination as to the validity of a customer, there are certain categories of activities that could be suspicious in nature and should alert as to the potential of any customer to conduct illegal activities.

34



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

The categories broadly defined are:

- Insufficient, false or suspicious information provided by a customer.
- Reluctance from any customer to provide any information requested for proper identification.
- Transactions not consistent with the business activities of the customer.
- Attempts to establish accounts by means of large amounts of currency.
- Structuring transactions to evade record keeping and /or reporting requirements.
- Irregular trend of transactions not normal to the customer profile.
- Continuous funds transfers to accounts in foreign countries.
- Multiple account openings by one customer without reasonable purposes.

**Sophisticated funds hiding techniques**

The Starburst = A single sum of money is moved into a financial institution, divided into dozens of fragmentary pieces, and credited to multiple pre-existing accounts.

The Hopscotch = money is moved from one pre-existing account to the next, around the world, involving multiple banking institutions in a short period of time.

The Ricochet = money ricochets at lightning speed through electronic funds transfer until it comes to rest at a deposit account.

The Boomerang = Money moves by electronic funds transfer or wires for a period of 1 to 2 months until it comes back to the point of origin.

The Sausage = money is moved and transformed through different accounts, changing accounts names, ownership and sizes.

STANFORD INTERNATIONAL Bank

35



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

Smurfing = individuals carrying money from illicit activities to be deposited in different accounts at different institutions for the same individuals. This money is later electronically or wired to a pre-determined account.

Management will determine the severity of any of these activities after an exhaustive evaluation of the situation. Once determined, the Compliance Officer will complete and file a SAR with the authorities.

SARs will be filed with the International Financial Sector Regulatory Authority and the ONDCP within 10 days of detection of the suspicious activity.

How to prepare a report:

- The compliance officer will send a completed SAR form to the Money Laundering Supervisory Authority and a copy to the Executive Director of the International Financial Sector Authority within 10 days of the detection of the suspicious activity.

- For items in the form that do not apply or for which there is no available information an N/A indication will be stated.

- SAR reports will be completed and filed even if the suspicious activity has been corrected or is being amended.

- All supporting documentation and business records of suspicious activities will be retained by the CO for availability to the appropriate authorities for a period of 6 years.

- An additional SAR form will be used to fully complete the information on an item.

- This additional form should be attached to the original report and both forms should reference one another to facilitate the association.

- Line 16 of the report should be filled out with as much details as possible describing the nature of the suspected act, transactions and activities of the parties involved.

STANFORD INTERNATIONAL Bank



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

## Record Retention

Copies of all SAR and supporting documentation filed with the government of Antigua & Barbuda will be retained in our records for a period of 6 years.

It will be the responsibility of the CO to retain the SAR copies for the above-mentioned period.

## 5. Compliance procedures

Compliance reviews over the DDR and account documentation

SIBL Compliance Officer will be reviewing and monitoring the activities related to the account opening and account documentation for completion and compliance with the bank's DDR and CPP policies. Any findings will be initially presented and discussed with the Senior Vice President for the proper action.

Daily the CO will review the documentation for accounts opened the prior day for completeness and accuracy. Any exception will be notified to the Operations Manager or account opening services for completion or correction.

Periodically the CO will sample the existing customers files for activity monitoring and documentation updating.

The Compliance Officer will be available to advise SIBL management and employees in all related matters concerning compliance. He will be available to analyze, implement and enforce any changes required by the Antigua & Barbuda IBC laws.

STANFORD INTERNATIONAL Bank

37



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

The CO will assist any external or internal auditors in their reviews over compliance issues.

Review reports and transactions originated by the operations department as result of the feating and validation process.

Quarterly the CO will report his activities to the Board of Directors including any compliance issues.

SFG Corporate Compliance

Irregularities noted during compliance reviews will also be referred to the corporate compliance officer. He will decide if the severity of the irregularities noted should be referred to the legal counsel.

## Employees' compliance training

The Compliance Officer will yearly train employees in all related compliance issues. Any deviations of company policies should be brought to the attention of the CO who will evaluate and take the proper action for training, correction or reporting.

Special training sessions will be held each time new regulations or procedures are implemented.

Training on the following areas will be regularly followed:

Due Diligence Reports - for completeness and accuracy of the obtained information.

STANFORD INTERNATIONAL Bank

38



*Stanford International Bank Ltd.*
*Compliance Policies and Procedures*

Money Laundering (Prevention) Act - to avoid any incident and create and maintain awareness of money laundering schemes.

Know Your Customer Policy - to enforce policies and protect SIBL assets.

References

Antigua & Barbuda Money Laundering Prevention Act. 1996

Government of Antigua & Barbuda SAR form

SIB Completion of DDR policy

SIB Client Policy Procedures policy

SIB accounts opening documents

39

# THE GOVERNMENT OF ANTIGUA AND BARBUDA

# SUSPICIOUS ACTIVITIES REPORT

**ALWAYS COMPLETE ENTIRE REPORT**

1. Check appropriate box:

   A ☐ Initial Report     B ☐ Corrected Report     C ☐ Supplemental Report

### REPORTING FINANCIAL INSTITUTION INFORMATION

2. Name of Financial Institution:

3. Address of Financial Institution:

4. Address of Branch Office(s) where activity occurred:

5. Account number(s) affected, if any
   - A _____
   - B _____
   - C _____
   - D _____
   - E _____

6. Have any of the institution's accounts related to this matter been closed?

   A ☐ Yes     B ☐ No     If yes, identify _____
   _____
   _____
   _____

### SUSPECT INFORMATION

| 7. Last Name or Name of Entity: | 8. First Name: | 9. Middle Initial: |
|---|---|---|

10. Address:

| 11. Date of Birth (Day/Mo./Yr.): |
|---|

| 12. Phone Number – Residence (include area code): ( ) | 13. Phone Number – Work (include area code): ( ) |
|---|---|

14. Occupation:

15. Forms of Identification for Suspect:

   A ☐ Driver's Licence   B ☐ Passport   C ☐ National Identification   D ☐ Other

   E   Number _____   F.   Issuing Authority _____

16. Facts Indicating Suspicious Activity:

### TO BE COMPLETED BY COMPLIANCE OFFICER

| 17. Last Name: | 18. First Name: | 19. Middle Initial: |
|---|---|---|

| 20. Phone Number (include area code): ( ) | 21. Date (Day/Mo./Yr.): |
|---|---|

### RECEIPT OF SUSPICIOUS ACTIVITY REPORT

| 22. Last Name: | 23. First Name: | 24. Middle Initial: |
|---|---|---|

| 28. Title: | 29. Phone Number (include ... |
|---|---|

40

## Suspicious Activity Report Instructions

The Money Laundering (Prevention) Act exempts suspicious activity reporting from the confidentiality provisions of the laws of Antigua & Barbuda and provides complete protection from liability for a reports of suspected or known criminal violations and suspicious activities to appropriate authorities MLPA §§ 13(4), 26.

DEFINITIONS:

Suspect act. For the purposes of this form, suspect act includes, but is not limited to, any known or suspected criminal violation, or pattern of criminal violations, committed or attempted against the financial institution or involving a transaction or transactions conducted through the financial institution, where the financial institution believes that it was either an actual or potential victim of a criminal violation, or series of criminal violations, or that the financial institution was used to facilitate a criminal transaction.

Transactions. For the purposes of this form, transactions includes, but is not limited to, deposits, withdrawals, transfers between accounts, exchanges of currency, loans, extensions of credit, purchases or sales of any stock, bond, certificate of deposit, or other monetary instrument or investment security, or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.

WHEN TO MAKE A REPORT:

All financial institutions operating in Antigua & Barbuda are required to make this report following the discovery of:

a. Insider abuse involving any amount. Whenever the financial institution detects a suspect act, and the financial institution has a substantial basis for identifying one of its directors, officers, employees, agents or other institution-affiliated parties as having committed or aided in the commission of a criminal act regardless of the amount involved in the violation.

b. Transactions aggregating US$10,000 or more where a suspect can be identified. Whenever the financial institution detects a suspect act involving or aggregating US$10,000 or more in funds or other assets, and the financial institution has a substantial basis for identifying a possible suspect or group of suspects. If it is determined prior to filing this report that the identified suspect or group of suspects has used an "alias," or "aliases" then information regarding the true identity of the suspect or group of suspects, as well as alias identifiers, such as drivers' licenses or social security numbers, addresses and telephone numbers, must be reported.

HOW TO MAKE A REPORT:

1. Send each completed suspicious activity report to the Money Laundering Supervisory Authority with a copy to the Executive Director of the International Financial Sector Authority within 10 days of detection of the suspicious activity.

2. For items that do not apply or for which information is not available, state "N/A".

3. Complete each suspicious activity report in its entirety, even when the suspicious activity report is a corrected or supplemental report.

4. Do not include supporting documentation with the suspicious activity report. Identify and retain a copy of the suspicious activity report and all original supporting documentation or business record equivalent for 5 years from the date of the suspicious activity report. All supporting documentation must be made available to appropriate authorities upon request.

5. If more space is needed to complete an item, an additional Suspicious Activity Report should be used to provide the information. This additional report should be attached to the original report and both reports should reference one another to facilitate association if separated.

6. Line 16 of the report should be filled out with as much detail as possible and describe the nature of the suspect act, transaction, and activities of the parties involved.

**IN THE HIGH COURT OF JUSTICE**                    **Case No. [ ] of 2009**
**CHANCERY DIVISION**
**COMPANIES COURT**

**IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006**

**RALPH STEVEN JANVEY**

**(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)**
**Applicant**

**Exhibit KVT24**

This is the exhibit "KVT24" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the ⌐ day of June, 2009.

Notary Public
My Commission Expires _6/1/11_

Debra Willford
My Commission Expires
06/01/2011

We need to talk!!

**From:** Frans Vingerhoedt [fvingerhoedt@msn.com]
**Sent:** Friday, February 06, 2009 11:27 PM
**To:** Stanford, Allen
**Cc:** Nanes, David
**Subject:** We need to talk!!

Allen we need to talk soonest! I have no doubt you are going crazy and are doing whatever is humanly possible to remedy the situation, but things are starting the unravel quickly on our side in the Caribbean and Latin America. We need to get a strategy together before the floodgates of withdrawals starts from our side (on top of the US).

We have obvious cash flow problems and have increasingly more difficulties in explaining clients why WT are delayed for more and more time. We have no answers. Clients are completely restless and their only comfort is our word.

The BS answers we get from JRT and SIB only add to the anxiety.

We need to come up with a strategy to give preference to certain wires to people of influence in certain countries, if not we will see a run on the bank starting next week.

We all know what that means. There are real bullets out there with my name on, David's name and many others and they are very real.

Please give David and me a call or let's get together in Miami over the weekend. We are all in this together. We cannot hold the fort and certainly not jump start production if we are completely in the dark. Strain is building quickly amongst FCs.

<u>IN THE HIGH COURT OF JUSTICE</u>                                      <u>Case No. [ ] of 2009</u>
<u>CHANCERY DIVISION</u>
<u>COMPANIES COURT</u>

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)
                                                                  **Applicant**

---

**Exhibit KVT25**

This is the exhibit "KVT25" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the ⎯ day of June, 2009.

Notary Public
My Commission Expires _____

Debra Williford
My Commission Expires
06/01/2011

Stanford Financial Group Receivership
Tier II Investments as of the Institution of the US Receivership

| Bank/Institution Name | Balance |
|---|---|
| AXIA | $ 45,630,830.23 |
| Banque Franck | 25,921,856.50 |
| CMSU & Associates, LLC | 12,824,472.75 |
| Coutts Bank (Switzerland) Ltd. (SIB Basic One) | 502,912.00 |
| Coutts Bank (Switzerland) Ltd. (SIB Execution Account) | 4,002,988.00 |
| Coutts Bank (Switzerland) Ltd. (SIB) | 29,066,633.00 |
| Credit Suisse First Boston (Bonds) SIB | 105,190,583.65 |
| Credit Suisse First Boston (Brandes) SIB | 823,023.65 |
| Credit Suisse First Boston (Equity) SIB | 614,970.78 |
| Lehman 143 (SIB) | 2,730,898.98 |
| Lehman 443 (SIB) | 5,430,598.17 |
| Lehman Kevin Corrigan | 1,091,936.38 |
| Longley Asset Management | 485,651.18 |
| Medieval Int. SA | 8,527,683.00 |
| Meridian Diversified Fund, Ltd. | 6,714,020.00 |
| Refco | 535,838.00 |
| SG (CBG Compagnie Bancaire Geneve) SIB | 75,882,080.84 |
| SSM Venture (SIB) | 3,397,600.00 |
| Stanford Asset Management (SIB) | 4,750,668.00 |
| Stanford Coins & Bullion | 2,627,084.24 |
| Stanford Group Casa de Valores, SA (SIB) | 7,836,268.03 |
| TD Private Asset Management | 200,862.42 |
| Total | $ 344,789,459.79 |

Source: Most Recenty Weekly Summary Sheet for each investment presented

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**COMPANIES COURT**

**Case No. [ ] of 2009**

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC. (IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS 2006

RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)

**Applicant**

---

**Exhibit KVT26**

This is the exhibit "KVT26" signed and sworn to before me, the undersigned notary public in and for the State of Texas, on the __1__ day of June, 2009.

Notary Public
My Commission Expires __6/1/11__

Debra Williford
My Commission Expires
06/01/2011

**STANFORD FINANCIAL GROUP**
Internal Audit Department – July 6, 2007

CONFIDENTIAL

# STANFORD INTERNATIONAL BANK LIMITED

# AUDIT REPORT No. 07-16

# 4th QUARTER 2006

Distribution
R. Allen Stanford
James Davis
Audit Committee
Juan Rodriguez Tolentino
Bhanoo Persaud
C.A.S. Hewlett

Audit Team
Alberto A. Gonzalez

INTERNAL AUDIT DEPARTMENT – STANFORD FINANCIAL GROUP

STANFORD INTERNATIONAL BANK LIMITED

AUDIT REPORT NO. 07-16

TABLE OF CONTENTS

I.   Executive Summary ................................................................................................. 1

II.  Observations ............................................................................................................ 4

   A.   PURCHASING AND ACCOUNTS PAYABLE FUNCTION ........................................ 4
        1.   Bank Reconciliations ................................................................................ 4
   B.   FIXED ASSETS ................................................................................................. 4
        1.   Physical Control of Fixed Assets .............................................................. 4

1

2

**Internal Audit Department – Stanford Financial Group
Audit Report of Stanford International Bank Limited**

**Executive Summary
(Report No. 07-16)**

**Introduction**
In April 2007, the Internal Audit Department (the Department) began a scheduled audit of the Stanford International Bank Limited (The Bank). The Bank was last audited in November 2006.

**The Company:**
Since 1985 Stanford International Bank Ltd. has provided international private banking services to high-net-worth individuals around the globe. The Bank is domiciled in Antigua, a low tax jurisdiction and a sovereign nation and member of the British Commonwealth. Antigua and Barbuda maintains strict laws protecting private financial information. The Bank focuses on a very select client profile and offers a very limited product line geared solely to high-net-worth individuals and families.

**Financial Highlights**
The Banks Operating Profit was US$ 11.5 million for the fourth quarter of 2006 compared to US$ 19.7 million for the fourth quarter of 2005. Total assets were US$ 5,336 million as of December 31, 2006 and US$ 4,059 million as December 31, 2005.

**Audit Objective**
The audit objective was to perform a review of the financial statements for the period under audit to assure the financial statements are presented fairly in all material respects and to gain assurance that the internal controls are functioning adequately.

**Audit Scope**
Audit procedures consisted of a review and detailed testing of various accounts on the balance sheet and income statement including an analytical review of the income statement. We verified the balances in the published financial statements and tested the internal controls using interviews, questionnaires, random sampling and physical verification. On this occasion, we did not review supporting documentation for the investments and investment income accounts.

**Conclusion**
It is our opinion that the balances in the financial statements as of December 31, 2006 present fairly the results of the operations and the position of the company in all material respects. Based on the results of our audit, which included no major finding, our opinion is that overall the internal controls we tested at the Stanford International Bank Ltd. are functioning adequately.

2

3

Stanford International Bank Lt.
Audit Report (#07-16)

## Major Findings

- **Bank Reconciliations**
  Bank accounts reconciliations should be prepared and reviewed by separate individuals indicating the date of when these tasks were performed.

- **Fixed Assets**
  Fixed assets acquired in 2006 did not have the required identification tag or bar code.

3

4

## A. PURCHASING AND ACCOUNTS PAYABLE FUNCTION

### 1. Bank Reconciliations

Observation: Although the month-end bank reconciliations are performed on a timely basis, they are not approved, signed, and dated by another reviewer.

The Stanford Group of Companies Global Accounting Policies and Procedures require that policies and procedures within the organization should be designed to include segregation of duties as one of its main internal control objectives. Bank accounts reconciliations should be prepared and reviewed by separate individuals indicating the date of when these tasks were performed.

Recommendation:   We recommend that for the month-end bank reconciliation process, Bank management ensure adherence to the Stanford Group of Companies Global Accounting Policies and Procedures by having someone independent of the reconciler review, sign and date the reconciliation.

## B. FIXED ASSETS

### 1. Physical Control of Fixed Assets

Observation: We examined copies of the invoices of all 2006 purchases of fixed assets. We found that all 2006 fixed assets purchased were accounted properly and depreciation charges were in agreement with current fixed assets policy. During our test work of this process, we learned that all fixed assets acquired in 2006 did not have their identification tag or bar code. The assignment of identification tag or bar code is an important and essential physical control feature for fixed assets of any category.

Recommendation: We recommend that Bank management ensure the enforcement of the physical control procedures as outlined in the Stanford Group of Companies Global Accounting Policies and Procedures dated June 2005 that require all fixed assets be identified by an identification tag number or a bar code.

4

5

**IN THE HIGH COURT OF JUSTICE**          **Case No. [ ] of 2009**
**CHANCERY DIVISION**
**COMPANIES COURT**

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

### RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)
**Applicant**

---

**Exhibit KVT27**

This is the exhibit "KVT27" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the 1 day of June, 2009.

Notary Public
My Commission Expires 6/1/11

Debra Williford
My Commission Expires
06/01/2011

**STANFORD FINANCIAL GROUP**          <u>**CONFIDENTIAL**</u>
*Internal Audit Department –July 17, 2006*

# <u>Audit of SIBL 1Q06</u>

**Distribution:**
R. Allen Stanford
Jim Davis
Audit Committee
Gil Lopez
Juan Rodriguez Tolentino
Bhanoo Persaud

**Audit Team:**
Fran Casey, Jr.,
Richard Casas
Angel L. Polo

# EXECUTIVE SUMMARY

We performed the first quarter 2006 audit of Stanford International Bank Limited from April 24 through May 3, 2006. Our audit included random testing of the internal controls in place, and verification of the balances and their related supporting documents as presented on the financial statements.

We encountered no difficulty and no misstatements on the working papers or supporting documents during our quarterly analysis. Any other relevant information or questionable items were resolved on site before completion of the fieldwork.

We did not review supporting documentation for the investments, investment income, or management fees paid.

Following are the areas that should be improved as a result of our audit:

## CASH AND CASH EQUIVALENTS

1. The Bank maintains interest bearing accounts and short term certificates of deposits with various financial institutions. We observed that the bank does not accrue the interest earned for these accounts. This interest income is booked on a cash basis when received at maturity. This practice led to an understatement of Revenue and Net Income by $646,161 for the quarter ending March 31, 2005.

2. The Bank calculates their monthly cash position for foreign currency bank accounts in Canadian Dollars, British Pounds, Euros, and Eastern Caribbean Dollars using currency exchange rates received in the morning of the second to last working day of the month from the Memphis office. We confirmed with Memphis that these currency exchange rates are intraday spot rates not closing numbers. The impact of this practice resulted in the understatement of $300,000 in cash for the quarter ending March 31, 2006.

3. We observed that the Bank does not disclose gain (or loss) from foreign exchange for bank accounts in foreign currencies as a result of exchange rate fluctuations from month to month in a separate account. This profit (loss) is included as other income (expense) on the income statement.

4. We reviewed the bank account reconciliations and observed various outstanding items older than 60 days.

## ACCOUNTS RECEIVABLE

5. The aging of the intercompany accounts receivable shows that all of the receivables from related companies exceed 12 months.

2

ACCOUNTS PAYABLE

6. The account payable vouchers are not signed or initialed by the preparer of the voucher.

7. Bank policy states that: "All checks require at least two signatures with the exception of the single signatory bank account. At least one of the dual signatures should be someone independent from the person who approves the transaction for payment." With the exception of the single signatory account, we observed that the accounting manager signs checks for items which he has also approved for payment.

OPERATING INCOME – SERVICE FEES AND COMMISSIONS

8. In the first quarter of 2006 the Bank paid $48,863,410 in the form of management fees, service fees, and commissions to Stanford Financial Group Company (SFGC), Stanford Group Company (SGC), Stanford Trust Company Limited (STCL), and Stanford Group Antigua Limited (SGAL). The Bank did not provide the auditors with copies of the agreements that SIBL had with these companies in order to verify that the management fees, service fees and commissions paid were in accordance with the terms of the agreements.

EXPENSES

9. We reviewed the rent expense and observed that the Bank makes payments to Stanford Development Company Limited (SDCL) for the use of the Bank premises. The Bank did not have copies of all of the leases for which they were making payments.

For a more detailed explanation of each issue please refer to the attached audit report.

To ensure all above issues are addressed, we require a report of corrective action. Such report should be addressed to our attention not later than August 11, 2006.

We appreciate the cooperation received from management that facilitated our review.

3

## SCOPE AND METHODOLOGY

Our audit focused on evaluating the effectiveness of the internal controls of the financial reporting process, as well as the general internal controls for the financial operations of the Bank. Our review and testing was performed as per the trial balance dated March 31st, 2006.

The audit process consisted of verifying account balances and their supporting documents as presented on the balance sheet as of March 31st, 2006, and tracing them from the trial balance to the subledgers and their related supporting documents. Income statement accounts were traced to the trial balance and subledgers. Supporting documents for revenue and expense accounts were randomly verified.

During the audit process we reviewed and performed the following steps:

1. Tested the internal controls of the financial reporting process in place.

2. Reviewed balance sheet and income statement account balances in ledgers and subledgers including testing of revenue and expense accounts.

3. Reviewed bank reconciliations, deposits in transit, wire transfers and outstanding checks for all accounts as of March 31st, 2006.

4. Reviewed the methodology for calculating depreciation of fixed assets as per the specifications on the calculation sheet.

5. Reviewed proper codification of accounts.

6. Reviewed intercompany billing transactions, supporting documents and current balances on account.

7. Reviewed accounts receivable and accounts payable aging schedules as of March 31st, 2006.

8. Reviewed at random fixed assets allocations and capitalization entries.

9. Reviewed all working papers issued by the SIBL accounting department.

## ATTACHMENTS

Audit Report …………………………………....……   AA.1

Trial Balance* …………………………………….   AA.2

Balance Sheet* ……………………………………   AA.3

Income Statement* ……………………………….   AA.4

Statement of Cash Flow* ………………………….   AA.5

## SUPPORTING DOCUMENTS

Cash Summary* …….....…………………………….. AT.1

Fixed Assets* ……………………………...…………….. AT.2

Accounts Payable* …….....………………………….. AT.3

\* Source – SIBL Accounting Department

# Stanford Financial Group

To:    Stanford Financial Group Company
Attn:  Board of Directors
        Gil Lopez

To:    Stanford International Bank Limited
Attn:  Audit Committee
        Juan Rodriguez Tolentino
Cc:    Miguel Pacheco
        Bhanoo Persaud
        Pedro Rodriguez

From:  Internal Audit Department

Date:  July 17, 2006

### Subject: Stanford International Bank Limited – 1st Quarter, 2006 Review

---

Following are our comments related to the 1st Quarter Review of the Financial Statements of Stanford International Bank Ltd., as of March 31st, 2006.

The analysis and its findings were performed and evaluated as per the balance sheet and income statement presented by the accounting department of SIBL at location. This evaluation was made in accordance with standard accounting practices and regulations.

All amounts are expressed in US$.

**Please see attachment AA2**

6

## ASSETS

### CASH ACCOUNTS

| Total Balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 256,474,934 | $ 302,679,526 |

General ledgers, related subledgers, bank statements, account reconciliations, letters of credit, transactions, currency rates, and adjustments were reviewed as per the balances presented. The review performed covered all account balances and did not include day-to-day account operations from January 1st to March 31st, 2005. Deposits in transit and outstanding checks were also verified and reviewed.

Cash increased in the amount of $46,205,000, up 18% to $ 302,679,526 for the quarter ending March 31, 2006.

**Please see attachment AT.1**

### 1.  Observation

The Bank maintains interest bearing accounts and short term certificates of deposits with various financial institutions. We observed that the bank does not accrue the interest earned. Interest income is booked on a cash basis when received at the maturity date.

We observed that interest income from interest bearing accounts and short term certificates of deposit totaling $995,485 earned in the third and fourth quarters of 2005 was not booked until it was received in the second quarter 2006. Also, the interest income earned in the first quarter of 2006 of $646,161 was not registered until the second quarter.

As a result of not accruing interest income during the period in which it was earned the Bank understated Revenue and Net Income by $995,485 for year ending 2005 and by $646,161 for the first quarter of 2006.

### Recommendation

We recommend that the Bank accrue interest income earned on a monthly basis for interest bearing accounts and certificates of deposit to comply with GAAP and avoid understating the Revenue of the Bank. World wide accounting policy requires accurate financial reporting in order to prepare meaningful financial statements.

7

2. **Observation**

The Bank calculates their monthly cash position for foreign currency bank accounts in Canadian Dollars, British Pounds, Euros, and Eastern Caribbean Dollars using currency exchange rates received in the morning of the second to last working day of the month from the Memphis office. We confirmed with Memphis that these currency exchange rates are intraday spot rates not closing numbers. SFG Accounting stated that currency exchange rates used to calculate the monthly cash position should be the closing currency exchange rate from the last working day of the month. The impact of this practice resulted in the understatement of $300,000 in cash for the quarter ending March 31, 2006.

**Recommendation**

We recommend that the Bank use the closing currency exchange rates for the last day of the month to calculate their cash position in foreign currencies. World wide accounting policy requires accurate financial reporting in order to prepare meaningful financial statements.

3. **Observation**

The Bank does not disclose gain (loss) from foreign exchange for bank accounts in foreign currencies. This is included in other income (expense) on the income statement. We have calculated a gain of $1,784,316 for the quarter ending March 31, 2006 for cash balances held in foreign currency cash accounts resulting in a reclassification among the two income statement accounts.

**Recommendation**

We recommend that the Bank disclose the gain (loss) from foreign exchange in a separate account for better disclosure on the financial statements. This will allow the Bank to better monitor the foreign currency exposure.

8

## 4. Observation

The bank account reconciliations show outstanding items older than 60 days in payroll account number 1000-1030-4000. There are checks from November 2005 through January 2006 for a total amount of $1,850 that has not been posted by the Bank. In the same account, check number 6599 for the pay period dated March 15, 2006 was not identified.

On account number 1000-1040-2000 there are two wire transfers dated January 25, 2006 in the total amount of $13,020 that have not been recorded by the Bank.

### Recommendation

We recommend that the Bank clear any outstanding items older than 30 days on the bank account reconciliations. All transactions should be recorded accurately and timely in accordance with company policy.

## INVESTMENT PORTFOLIO

| | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| Total Balance on account | | |
| | $3,754,765,105 | $3,975,142,810 |

The investment portfolio increased by $220,377,705 to $3,975,142,810 during the first quarter. This was an increase of 6%. The audit process for the investment portfolio solely consisted of tracing the account balances from the trial balance to the account balances as presented on the balance sheet as of March 31, 2006.

**Please see attachment AA.2, AA.3**

## ADVANCES TO CUSTOMERS AND OTHER ACCOUNTS

| | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| Total Balance on account | | |
| | $ 43,274,461 | $ 53,577,785 |
| Account details: | | |
| Loans & Notes Receivable | $ 36,558,681 | $ 46,699,573 |
| Prepaid Items | 4,798,202 | 4,775,398 |
| Accruals | 1,890,167 | 2,158,766 |
| Accounts Receivable | 28,614 | 28,194 |
| Position account | | (1) |
| System Suspense Account | (1,204) | (84,146) |
| Total | $ 43,274,460 | $ 53,577,785 |

Advances to customers and other accounts increased 23.51% during the first quarter of 2006. This was primarily due to the increase in Loans and Notes Receivable. The Loans and Notes Receivable are 100% secured.

**Please see attachment AT.2**

### 5. Observation

All of the transactions included as accounts receivable from related companies are greater than 12 months old are as follows:

| Related Company | Amount | Most Recent Invoice |
|---|---|---|
| Stanford International Bank Panama | $ 23,306 | 04/30/2004 |
| Caribbean Star Airline | 3,513 | 05/21/2004 |
| Stanford Development Company | 735 | 07/28/2004 |
| Stanford International Bank Panama | 483 | 10/20/2003 |
| Sun Printing | 205 | 08/23/2004 |
| Stanford Group Antigua | (48) | |
| Total | $ 28,194 | |

### Recommendation

These amounts should be confirmed as valid claims on the respective entities then collected. Disputed items should be written off. Though immaterial in this case, the bank should establish the practice of regularly reviewing the reliability of all accounts.

10

## FIXED ASSETS

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | 4,600,009 | 4,120,401 |
| **Fixed assets allocations are:** | | |
| Building | $ 4,893,621 | $ 4,893,621 |
| Computer Software | 2,469,516 | 2,498,801 |
| Furniture & Fixtures | 948,638 | 958,751 |
| Land | 573,293 | 573,293 |
| Machinery & Equipment | 325,366 | 374,967 |
| Work in Progress | 215,118 | 171,842 |
| Vehicles | 546,166 | 121,930 |
| Artwork & Accessories | 72,620 | 62,507 |
| Leasehold Improvement | 61,537 | 61,540 |
| | | |
| Allowance for Depreciation | (5,506,591) | (5,425,009) |
| | | |
| Total Fixed Assets | 4,600,009 | 4,120,401 |

Verified fixed asset accounts and the depreciation calculation schedule. The Fixed Assets decreased by $307,767 during the first quarter of 2006. This was primarily due to the quarterly depreciation and the disposition of motor vehicles.

**Please see attachment AA.2, AA.3**

## LIABILITIES

## CUSTOMER DEPOSITS

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 3,763,011,041 | $ 4,036,777,141 |

**Please see attachments AA.2, AA.3**

Customer deposits increased by $273,766,100 during the first quarter 2006 to $4,036,777,141. This was an increase of 7.28% for the period ending March 31, 2006.

(1

## ACCOUNTS PAYABLE AND ACCRUALS

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 13,648,916 | $ 12,046,262.86 |
| Account details: | | |
| Accounts Payable | $ 11,413,698 | $ 10,660,500 |
| Reconciled Items | 1,726,482 | 1,492,395 |
| Suspense | 52,477 | 42,988 |
| Accrued Interest | 755,226 | 18,720 |
| Adjustment | | 54 |
| Benefits Payable | 144 | 0 |
| Checks pending issuance | (299,110) | (168,394) |
| Total | $13,648,916.40 | $12,046,262.86 |

Accounts payable and accruals decreased $1,602,654, or 11.74% during the quarter.

**Please see attachments AT.4**

### 6.  Observation

When reviewing Bank expenses we observed that supporting documents for payments include an accounts payable voucher. The vouchers are not signed or initialed by the preparer or approver. In order to see evidence that the vouchers were prepared by someone independent from the person that approved the payment the junior accountants should initial or sign the vouchers which they prepare.

### Recommendation

We recommend that Bank management require the junior accountants to sign or initial the accounts payable vouchers that they prepare.

12

## SHAREHOLDER'S EQUITY

### SHAREHOLDER'S EQUITY

| Shareholder's Equity | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 282,453,830 | $ 286,868,961 |
| Account details: | | |
| Capitol | $ 10,000,000 | $ 10,000,000 |
| Paid-In-Capitol | 103,500,000 | 103,500,000 |
| Retained Earnings | 133,042,596 | 168,953,830 |
| Current Net Income | 35,911,234 | 4,415,132 |
| | $282,453,830 | $ 286,868,961 |

The variance of the account represents the profit for the first quarter of 2006, $ 4,415,132.

**Please see attachments AA.2, AA.3**

## INCOME STATEMENT

### INTEREST INCOME

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 22,964,032 | $ 7,571,581 |
| Account details: | | |
| Interest & Non Interest Income | $ 131,978,495 | $121,969,382 |
| Less Interest Paid | (62,985,512) | (65,534,391) |
| Less Service Fees & Commissions | (46,028,952) | (48,863,410) |
| Net Interest & Non Interest Income | $ 22,964,032 | $ 7,571,581 |

We verified the details of the income statement as per the financial statements as of March 31st, 2006 against the trial balance, subledgers, and supporting documentation. Interest and Non Interest Income fell by $10,009,113 during the period from the previous quarter. This was a decrease of 7.58% from period ending December 31, 2005.

Interest Paid to Customers and Service Fees and Commissions both increased during the period, 4.05% and 5.73% respectively. After deductions for Interest Paid to Customers and Management Fees, Service Fees, and Commissions, Net Interest and Non Interest Income before Operating Expenses fell to $7,571,581 from $22,964,032 for the previous quarter, a decline of 66.76%. .

**Please see attachments AA.2, AA.4**

13

### 7. Observation

A significant cost of sales are the Management Fees, Service Fees, and Commissions, that the Bank pays to Stanford Financial Group Company (SFGC), Stanford Group Company (SGC), Stanford Trust Company Limited (STCL), and Stanford Group Antigua Limited (SGAL). For the first quarter of 2006 SIBL made the following payments:

| | |
|------|------------|
| SFGC | $ 22,024,652 |
| SGC | $ 21,689,385 |
| STC | $ 2,916,163 |
| SGA | $ 2,185,745 |
| Total | $ 48,815,945 |

We requested from the Bank copies of the agreements between SIBL and the companies to which SIBL pays Management Fees, Service Fees, or Commissions so that we could verify that the amounts paid were in accordance with the terms of the agreements. As a result of not providing the agreements we were not able to verify that the Management Fees, Service Fees and Commissions paid in accordance with the terms of the agreements.   Permission was to be requested from the Board of Directors.

### Recommendation

We recommend that the Bank management request confirmation from the Board of Directors to provide to the auditors the agreements between SIBL and SFGC, SGC, STC, and SGAL. This item will be followed up on the next quarterly audit.

14

## OPERATING EXPENSES

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 3,097,393 | $ 3,116,045 |
| Expressed in detail: | | |
| Salaries and Other Staff Cost | $ 627,492 | $ 656,792 |
| Office & Other General Expenses | 427,762 | 454,943 |
| Insurance Expense | 459,573 | 389,250 |
| Rent | 264,750 | 313,369 |
| Professional Fees | 226,488 | 272,298 |
| Depreciation | 229,012 | 215,730 |
| Travel and Accommodations | 151,094 | 183,970 |
| Telephone and Telex | 163,508 | 155,046 |
| Bank Charges | 144,084 | 137,958 |
| Advertising and Promotion | 207,940 | 106,974 |
| Subscriptions and Donations | 53,177 | 81,931 |
| Electricity & Water | 18,775 | 79,355 |
| Repairs and Maintenance | 71,688 | 50,509 |
| Licenses and Permits | 7,050 | 17,920 |
| Directors Emoluments | 45,000 | 0 |
| Total Operating Expenses | $ 3,097,393 | $ 3,116,045 |

Operating Expenses for the first quarter 2006 increased slightly by $59,057, and increase of 1.91%. We verified all expense accounts on the income statement. They were correctly applied and posted to the financial statements. Overall, expenses are in good order.

**Please see attachments AA.2, AA.4**

8. **Observation**

We reviewed the rent expense and observed that the Bank makes payments to Stanford Development Company Limited (SDCL) for the use of the Bank premises for three leases referred to as the old lease, the new lease, and the STC portion. We requested copies of the lease agreements in order to make certain that the Bank rent expenses paid agreed with the terms of the agreements. The Bank was only able to provide a copy of the agreement known as the new lease. This agreement between SIBL and SDCL dated April 1, 2002 is for a term of twenty years for a yearly rent of $848,000.

The Bank did not have a copy of the agreement known as the old lease. The Bank did provide us with an amortization schedule that shows based on a payment made to SDCL for $6,500,000 in December 1998; the monthly amortization deduction for SIBL is $41,666.67 monthly through April 2002. After April 2002, when the new lease agreement was signed, the monthly amortization was reduced to $20,313.

15

The Bank also did not have a copy of the STC portion lease agreement. This agreement is for the area in the building that was formerly occupied by STCL, but is now occupied by the Bank.

**Recommendation**

We recommend that Bank obtain and maintain copies of lease agreements for which lease or rental payments are made. We also recommend that the Bank obtain and maintain in a convenient place supporting documents related to prepayments for which amortization over future periods. This will allow the Bank to demonstrate that accounts are accurate and financial statements are supported with the requisite documentation.

**9. Observation**

We observed that Bank policy states that: "All checks require at least two signatures with the exception of the single signatory bank account. At least one of the dual signatures should be someone independent from the person who approves the transaction for payment." The accounting manager signs checks for payment of items in which he has also approved the item for payment. This represents a lack of proper segregation of duties. The ideal situation would be that both signatures are from individuals independent of the person that approves the transaction. If possible, accounting staff should not sign the checks.

**Recommendation**

We recommend that the Bank implement the practice to obtain both signatures from individuals independent of the individual who approved the transaction for payment.

**OPERATING PROFIT**

| | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| Total balance on account | | |
| | $ 19,680,430 | $ 4,415,132 |
| Net Income | $ 22,777,823 | $ 7,531,305 |
| Operating Expenses | (3,097,393) | (3,116,046) |
| Operating Profit | $ 19,680,430 | $ 4,415,132 |

16

Operating Profit for the quarter ending March 31, 2006 fell to $4,415,132 from $19,681,430 for the quarter ending December 31, 2005. This was a decrease of 77.57%.

**Please see attachments AA.2, AA.4**

## CONTINGENCIES

| Total balance on account | Dec 31st, 2005 | Mar 31st, 2006 |
|---|---|---|
| | $ 27,815,441 | $ 34,044,233 |

We observed that contingent liabilities increased 22.39%. Contingent liabilities are letters of credit that have been opened for the benefit of the Bank customers.

**Please see attachments AA.2, AA.4**

All contents of this report were discussed with Stanford International Bank Management and the accounting department on location. Refer to responses within the context of this report for their confirmation.

Should you have any additional questions or comments please so advise.

Regards,


Stanford Financial Group
Internal Audit Department

17

**IN THE HIGH COURT OF JUSTICE**                     Case No. [ ] of 2009
**CHANCERY DIVISION**
**COMPANIES COURT**

**IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006**

**RALPH STEVEN JANVEY**

**(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)**
                                                                    **Applicant**

---

**Exhibit KVT28**

This is the exhibit "KVT28" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the $\underline{1}$ day of June, 2009.

Notary Public
My Commission Expires _____6/1/11_____

Debra Williford
My Commission Expires
06/01/2011

**STANFORD FINANCIAL GROUP**
*Internal Audit Department –October 22, 2004*

<u>**CONFIDENTIAL**</u>

# <u>Audit of  SIBL 3Q04</u>

**<u>Distribution:</u>**
Board of Directors - SIBL
Audit Committee - SIBL
Juan Rodriguez-Tolentino - SIBL
Miguel Pacheco - SIBL
Bhanoo Persaud - SIBL
Gil Lopez - SFGC
C.A.S. Hewlett

**<u>Audit Team:</u>**
Edmundo J. Posadas
Alberto A. Gonzalez

# EXECUTIVE SUMMARY

**OPINION:** Overall, we believe that the internal controls in place at Stanford International Bank Limited in Antigua are adequate and the balances in the financial statement accounts as of September 30th, 2004, fairly represent the results of the operations and the position of the company.

The verification included selective testing of the internal controls in place and the verification of the balances and their related supporting documents as presented on the financial statements.

We encountered no misstatements on the working papers or supporting documents as per our quarterly analysis and coverage. Any other relevant information or questionable items were resolved on site before completion of the fieldwork.

We appreciate the cooperation received from management that facilitated our review.

### SCOPE AND METHODOLOGY

Our audit focused on evaluating the effectiveness of internal controls of the financial reporting process, as well as the general internal controls found in the financial operations of the company. Our review and testing was performed as per the trial balance dated September 30th, 2004, on a preliminary status before any posted journal entries.

Among other things, during the audit process we reviewed and performed the following steps:

1. Tested the internal controls of the financial reporting in place at the bank.

2. Reviewed all balance sheet and income statement account balances in ledgers and sub-ledgers including testing of revenue and expense accounts.

3. Reviewed bank reconciliations, deposits in transit, wire transfers and outstanding checks for all accounts as of September 30th, 2004.

4. Reviewed the methodology for calculating depreciation of fixed assets as per the specifications on the calculation sheet.

5. Proper codification of accounts.

6. Reviewed inter-company billing transactions, supporting documents and current balances on account.

7. Reviewed accounts receivable and accounts payable aging schedules as of September 30th, 2004.

8. Reviewed fixed assets allocations and capitalization entries.

9. Reviewed all working papers issued by the SIBL accounting department, from schedule A to schedule P4.

10. Reviewed accounts payable by sample testing.

3

## ATTACHMENTS

Audit Report ……………………………………….    AA1

Balance Sheet and Income Statement ……………    AA2

Trial Balance …………………………………….    AA3

## SUPPORTING DOCUMENTS

Cash Summary    ……...……………………………….    AT.1

Advances to Customers and Other Accounts……...……….    AT.2

Fixed Assets …………………………...………………    AT.3

Accounts Payable ……...…………………………………..    AT.4

4

# Stanford Financial Group

To:    Stanford Financial Group Company
Attn:  Board of Directors

To:    Stanford International Bank Limited
Attn:  Audit Committee

To:    Stanford International Bank Limited
Attn:  Juan Rodriguez-Tolentino
Cc:    Miguel Pacheco
       Bhanoo Persaud

To:    Stanford Financial Group Company
Attn:  Gil Lopez

From:  Internal Audit Department

Date:  October 22, 2004

**Subject: Stanford International Bank Limited – 2004, 3rd Quarter Review**

---

Following are our comments related to the 3rd Quarter Review of the Financial Statements of Stanford International Bank Ltd., as of September 30th, 2004.

The analysis and its findings were performed and evaluated as per the preliminary balance sheet and income statement presented by the accounting department of SIBL at location. This evaluation was made in accordance with standard accounting practices and regulations and does not include the proposed adjustments made by SFGC and those applied by the accounting department of SIBL.

All amounts are expressed in US$.

**Please see attachment AA2**

Note: All tick marks in the attachments represent verification of balances in the general ledger and that they are in agreement with the sub-ledgers presented by the local accounting department.

5

**Reference guide per account.**

| Account | Status | Comments |
|---|---|---|
| **ASSETS** | | |
| Cash Account | In good order | N/A |
| Advances to Customers & Other Accounts | '' '' | '' |
| Investment Portfolio | '' '' | '' |
| Fixed Assets | '' '' | '' |
| **LIABILITIES** | | |
| Customer Deposits | In good order | N/A |
| Accounts Payable and Accruals | '' '' | '' |
| **SHAREHOLDER'S EQUITY** | | |
| Capital Stock Issued | In good order | N/A |
| Share Premium Account | '' '' | '' |
| Retained Earnings ( Deficit ) – Prior Year | '' '' | '' |
| Current Year Profit or ( Loss ) | '' '' | '' |
| **REVENUE** | | |
| Interest Income and Non Interest Income | In good order | N/A |
| Less: Interest Paid | '' '' | '' |
| Service Fee Activities | '' '' | '' |
| **EXPENSES** | | |
| Salaries and Other Staff Cost | In good order | N/A |
| Director's Emoluments | '' '' | '' |
| Bank Charges | '' '' | '' |
| Professional Fees | '' '' | '' |
| Office and General Expenses | '' '' | '' |
| Electricity and Water Charges | '' '' | '' |
| Telephone, Telex and Fax | '' '' | '' |
| Insurance Expense | '' '' | '' |
| Licenses & Permits | '' '' | '' |
| Rent | '' '' | '' |
| Depreciation | '' '' | '' |
| Repairs and Maintenance | '' '' | '' |

6

| Advertising and Promotion | In good order | N/A |
| Travel and Accommodations | " " | " |
| Subscriptions and Donations | " " | " |

**NET INCOME ( LOSS )**

| Net Income ( Loss ) | In good order | N/A |

**CONTINGENCIES**

| Contingencies | In good order | N/A |

**Please see attachment AA2**

7

**ASSETS**

### CASH ACCOUNT

Total Balance on account          $   120,600,919.18          Account in good order

**Balance as of September 30th, 2004.**

Ledgers, sub-ledgers, bank statements, account reconciliations, letters of credit, transactions, currency rates and adjustments to accounts were reviewed as per the balances presented. The review performed covered all account balances and does not include day-to-day account operations from July 1st to September 30th, 2004. Deposits in transit and outstanding checks were also verified and reviewed. All observations and comments were resolved on site.

**Please see attachment AT.1**

### ADVANCES TO CUSTOMERS AND OTHER ACCOUNTS

Total Balance on account          $    39,551,405.12          Account in good order

In detail:

| | |
|---|---|
| Bank Advances to Customers | 29,309,912.08 |
| Prepaid Items | 5,479,743.64 |
| Accounts Receivable | 4,761,749.40 |
| | ------------------------- |
| Total | $    39,551,405.12 |
| | ------------------------- |

**Please see attachment AT.2**

### INVESTMENT PORTFOLIO

Total Balance on account          $2,606,322,139.52          Account in good order

Investment account was expressed and recorded as per the summary analysis reported by the CFO office.

## FIXED ASSETS

Total balance on account              $  7,224,541.69          Account in good order

**Fixed assets allocations are as follows:**

| | |
|---|---:|
| Building | $  4,893,620.82 |
| Computer Software | 2,431,340.14 |
| Furniture & Fixtures | 739,588.61 |
| Leasehold Improvement | 2,865.00 |
| Machinery & Equipment | 312,483.30 |
| Vehicles | 502,047.88 |
| Artwork & Accessories | 56,786.39 |
| Land | 573,293.03 |
| Investment Property | 2,063,460.00 |
| Work in Progress | 52,835.67 |

Allowance for Depreciation            ($  4,403,779.14)
                                      ----------------------
               Total Fixed Assets     $  7,224,541.69
                                      ----------------------

Verified fixed asset accounts and the depreciation calculation schedule. All accounts are in good order.

**Please see attachment AT.3**


## LIABILITIES


## CUSTOMER DEPOSITS

Total balance on account          $2,606,613,788.17          Account in good order

**Please see attachments AA3**

9

## ACCOUNTS PAYABLE AND ACCRUALS

Total balance on account        $ 9,943,347.16      Account in good order

In detail as follows:

| | |
|---|---|
| Accounts Payable | $ 5,461,681.04 |
| Current Liabilities | 3,624,362.18 |
| Accrued Expenses | 856,237.01 |
| Employee Benefits Payable | 1,066.93 |
| Total | $ 9,943,347.16 |

**Please see attachments AT.4, AA3**

## SHAREHOLDER'S EQUITY

## SHAREHOLDER'S EQUITY

Shareholder's Equity        $157,141,870.00      Account in good order

**Please see attachments AA2, AA3**

10

## INCOME STATEMENT

### INTEREST INCOME

Total balance on account          $233,548,210.00          Account in good order

Interest Income          $233,548,210.00
Less Interest Paid          (117,196,650.00 )
Less Service Fees          ( 86,467,379.00 )
                        ------------------------
Total Int. and N/Int, Income     $ 29,884,181.00
                        ------------------------

Verified the profit and loss statement as per the presentation on the financial statements as of September 30th, 2004.

**Please see attachments AA2, AA3**

### OPERATING EXPENSES

Total balance on account          $ 7,770,930.00          Account in good order

Expressed in detail:

| | |
|---|---:|
| Salaries and Other Staff Cost | 1,613,655.00 |
| Directors Emoluments | 45,000.00 |
| Bank Charges | 232,698.00 |
| Professional Fees | 704,181.00 |
| Office & Other General Expenses | 1,105,971.00 |
| Electricity & Water | 78,861.00 |
| Telephone and Telex | 433,937.00 |
| Insurance Expense | 800,255.00 |
| Licenses and Permits | 122,141.00 |
| Rent | 636,000.00 |
| Depreciation | 660,282.00 |
| Repairs and Maintenance | 168,859.00 |

11

| | | |
|---|---|---|
| Advertising and Promotion | 619,058.00 | |
| Travel and Accommodations | 533,350.00 | |
| Subscriptions and Donations | 16,683.00 | |
| | ------------------ | |
| Total Operating Expenses | $ 7,770,930.00 | |
| | ------------------ | |

**Please see attachments AA2, AA3**

## OPERATING PROFIT

| | | |
|---|---|---|
| Total balance on account | $29,884,181.00 | Account in good order |
| | | |
| Net Income | 29,884,181.00 | |
| Operating Expenses | ( 7,770,930.00 ) | |
| | ---------------------- | |
| | $22,113,251.00 | |
| | ---------------------- | |

**Please see attachments AA2, AA3**

## CONTINGENCIES

| | | |
|---|---|---|
| Total balance on account | $ 5,909,700.03 | Account in good order |

**Please see attachments AA2, AA3**

12

Verified all expense accounts on the income statement. They were correctly applied and posted to the financial statements. Overall, expenses are in good order.

All contents of this report were partially discussed with Stanford International Bank Management and the accounting department on location.

Should you have any additional questions or comments please so advise.

Regards,

Stanford Financial Group
Internal Audit Department

D:EP/SFGC/SIBL/Actionlist2004/3rdQ04IAR/2004quarterlyanalysis/cc:xdrive/sibl-3q04.doc

13

**IN THE HIGH COURT OF JUSTICE**                    Case No. [ ] of 2009
**CHANCERY DIVISION**
**COMPANIES COURT**

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

**RALPH STEVEN JANVEY**

**(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)**
**Applicant**

_____

**Exhibit KVT29**

This is the exhibit "KVT29" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the 1 day of June, 2009.

_____

Notary Public
My Commission Expires ___6/1/11___

Debra Williford
My Commission Expires
06/01/2011

**STANFORD FINANCIAL GROUP**
Internal Audit Department – January 3, 2008

**CONFIDENTIAL**

# STANFORD INTERNATIONAL BANK LIMITED

## AUDIT REPORT No. 08-01
## 1ST & 2ND QUARTER 2007

Distribution
R. Allen Stanford
James Davis
Audit Committee
Juan Rodriguez Tolentino
Bhanoo Persaud
C.A.S. Hewlett

Audit Team
Alberto A. Gonzalez
Richard Casas

**INTERNAL AUDIT DEPARTMENT – STANFORD FINANCIAL GROUP**

**STANFORD INTERNATIONAL BANK LIMITED**

**AUDIT REPORT NO. 08-01**

<u>**TABLE OF CONTENTS**</u>

I.   Executive Summary ................................................................................................... 2

II.  Observations............................................................................................................... 3

    A.   <u>CASH AND CASH EQUIVALENTS</u> ................................................................ 3
       1.  <u>Old Items on Bank Reconciliations</u> ............................................................. 3
       2.  <u>Short Term Deposits Placed by Houston Treasury not Reported to SIBL Accountant</u>.. 3
    B.   <u>FIXED ASSETS</u>.................................................................................................. 4
       1.  <u>Inaccurate Depreciation Expenses of Fixed Assets</u> ..................................... 4
    C.   <u>PURCHASING AND ACCOUNTS PAYABLE FUNCTION</u> ........................................ 5
       1.  <u>Incorrect Calculation of Compound Interest Payable</u>.................................. 5

1

Stanford International Bank Limited
Audit Report (#08-01)

**Internal Audit Department – Stanford Financial Group**
**Audit Report of Stanford International Bank Limited**

**Executive Summary**
**(Report No. 08-01)**

## Introduction
In May and September 2007, the Internal Audit Department (the Department) completed the scheduled audits of the Stanford International Bank Limited (the Bank) for the first and second quarters of 2007.

## The Company
Since 1985 Stanford International Bank Ltd. (SIBL) has provided international private banking services to high-net-worth individuals around the globe. The Bank is domiciled in Antigua, a low tax jurisdiction and a sovereign nation and member of the British Commonwealth. Antigua and Barbuda maintains strict laws protecting private financial information. SIB focuses on a very select client profile and offers a very limited product line geared solely to high-net-worth individuals and families.

## Financial Highlights
Net Income was $5.1M in the first quarter of 2007 and $4.4M in the second quarter of 2006. Total assets were $5,734M as of March 31, 2007 and $4,336M as of March 31, 2006.
Simultaneously, Net Income was $11.5M in the second quarter of 2007 and $10,3M in the second quarter of 2006. Total assets were $6,177M as of June 30, 2007 and $4,625M as of June 30, 2006.

## Audit Objective
The audit objective was to evaluate the internal control structure of the Bank to determine if it was functioning adequately and efficiently.

## Audit Scope
Audit procedures consisted of a review and detailed testing of various accounts on the balance sheet and income statement including an analytical review of the income statement. We verified the balances in the published financial statements and tested the internal controls using interviews, questionnaires, random sampling and physical verification.

## Conclusion
Based on the results of our audit it is our opinion the internal controls we tested at the Bank are in need of some improvement.

3

## A. CASH AND CASH EQUIVALENTS

### 1. Old Items on Bank Reconciliations

Observation: During our review of SIBL bank reconciliations we noted two old outstanding reconciling items that are worth mentioning:

a. Toronto-Dominion Bank USD (code account # 1000-1010-1000) had an outstanding Deposit in Transit of US$15,990 dated April 28, 2006 which was eleven months old as of March 31, 2007.

b. Trustmark National Bank (code account # 1000-1030-1000) had an outstanding check # 98335 of US$32,378 dated March 13, 2006 which was over twelve months old as of March 31, 2007. This check was issued out of the client's FLEX CD #138418 and, according to the client's instructions, payable to District of Columbia Treasury to pay for taxes due on March 15, 2006.

A case was opened by SIBL with Toronto Dominion Bank regarding the outstanding deposit of $15,990 to follow up on this issue. As to the outstanding check for $32,378 the Bank has a procedure stating that stale dated checks more than six months old should be removed from the bank reconciliation and transferred to the Unclaimed Payments account. Then, on a quarterly basis, the balances on this account should be investigated and those clients on whose account the checks were drawn must be contacted via their Financial Advisor.

This follow-up procedure was not carried out as required in the related policy and therefore, the obligation to honor the payment remains until the check is replaced at the request of the payee or the account holder, even though it is no longer considered negotiable.

Recommendation: Reconciling items should be addressed in a timely manner, within 30 to 60 days depending on the nature of the reconciling item. For customer services purposes and to comply with bank internal policy, we recommend contacting the client's corresponding Financial Advisor (FA) so that he in turn can notify the client directly and inform him that there is a check still not cashed. Because the check is now too old and most likely it can no longer be cashed at any bank, the client should notify the FA how he would like to handle the pending transaction and then notify the Bank.

### 2. Short Term Deposits Placed by Houston Treasury not Reported to SIBL Accountant

Observation: The Houston Treasury Department (Treasury) manages SIBL cash flow according to corporate guidelines and places short term deposits with other banking institutions as deemed appropriate. However, the SIBL accountant is not informed of the terms of the investments (such as maturity date, interest rate, etc), so that he can record the interest receivable accordingly. The instructions for short term investments are given by Treasury to the Toronto-Dominion Bank over the phone and subsequently confirmed by the SIBL accountant through the SWIFT system network.

3

4

The SIBL Operations Department in Antigua has access to SWIFT and prints all transaction information on a daily basis, which includes short term deposits. Subsequently, it is delivered to the SIBL Accounting Department. However, identifying and capturing short term deposit information intermingled among all other transactions such as incoming/outgoing wire transfers, checks issued, etc, is not the most efficient procedure to follow. Currently, and due to the high volume of daily transactions reported through the SWIFT system, it is time consuming for the Bank's accounting department at the end of each calendar quarter to determine which transactions are still considered short term deposits in order to book the corresponding interest accrual .

Due to the communication routine established between Treasury and SIBL plus the above mentioned issue, the latter is not aware of related maturity dates and interest rates required for interest accrual computation and recording. This is an internal control weakness because it causes inaccurate recording and reporting of financial assets and interest income.

Recommendation: Treasury maintains a Short Term Deposit Summary in an Excel spreadsheet with all pertinent information, updated on a daily basis. Therefore, we recommend that the SIBL accountant coordinate with Treasury in order to obtain such summary at the end of each month or each time that a short term deposit is placed by Treasury for a period of 30 days or more. On the other hand, SIBL should maintain appropriate SWIFT archive files such as short term deposit confirmations for quarter-end documentation support. For placements shorter than 30 days, related information already obtained and recorded by SIBL from daily bank statements is considered adequate.

## B. FIXED ASSETS

### 1. Inaccurate Depreciation Expenses of Fixed Assets

Observation: During our tests of depreciation expense by fixed asset category we observed inaccurate calculations of the monthly depreciation expense for the items indicated below.

There are two reasons for these miscalculations:

a) When the item parameters were set in the FAS system, the monthly depreciation expense was not calculated so as to end on the last month of the estimated useful life of the asset. Consequently, the asset reached its full depreciation period for the category but it still carried a remaining Net Book Value instead of a zero value which indicates that the asset amount is fully depreciated. FAS system does not allow to continue depreciating an asset that has reached its full depreciation period as set initially in the parameters.

b) If a depreciation period for a fixed asset category is established at a predetermined number of months according to company policy and a different depreciation period is input in the FAS system due to an error; the monthly depreciation expense will result erroneous as well.

4

5

As a result of the above:

- Eight assets under the Computers/Software category should have been fully depreciated by March 2007 since their depreciation period ceased before that date. However, they still have a net book value totaling $6,483.

- Out of twenty assets under the Furniture category, one of them is erroneously being depreciated in seven years instead of the fourteen established for this category; thirteen of them should have been fully depreciated by March 31, 2007 since their depreciation period ceased before that date and six of them fully depreciated and disposed of but still reflected in the fixed assets listing at March 31, 2007.

- One asset under the Artwork category is erroneously being depreciated for seven years instead of the thirteen established for this category.

- Finally, one asset under the Machinery & Equipment category should have been fully depreciated by March 31, 2007 since its depreciation period ceased before that date. However, it still shows a net book value of $152.

Recommendation: We recommend that the errors indicated above that were not captured in the review performed by the SIBL Accounting Department in April, 2007 be corrected in order to adjust the monthly depreciation expense, accumulated depreciation and net book value to their actual figures.

Additionally, due to the nature of the errors observed, the fixed assets system and its listings/reports should be reviewed in search of possible flaws or incorrect data entry procedures.

Subsequent note: All of the above miscalculations were corrected in April 2007.

## C. PURCHASING AND ACCOUNTS PAYABLE FUNCTION

### 1. Incorrect Calculation of Compound Interest Payable

Observation: Our tests of interest paid to customers for their CD's placed with SIBL revealed that there is an incorrect calculation of compound interest when said CD's are opened on a leap year which has 366 days and then falls back again into a regular year of 365 days. The miscalculation is due to a flaw in the system as it does not automatically change the number of days in the year which is a required input data for the calculation and is first set at the CD's opening date. Following is the effect:

- There is an underpayment of interest on a regular year if the CD was opened on a leap year. That is because interest is calculated based on a 366 days daily rate.

- There is an overpayment of interest on a leap year if the CD was opened on a regular year. That is because the interest is paid at the 365 day daily rate for the 366th day.

Out of a universe of more than 40,000 CDs, we took a sample of 44 CDs and found the following two examples of compound interest miscalculation:

- One CD opened on November 16, 2004 (a leap year) and with a balance of $5,042,468 at March 1, 2007 and  another CD opened on October 13, 2004 (a leap year) and with a balance of $5,678,002 at March 1, 2007 were underpaid by $97 and $103, respectively, in interest during the month of March 2007 due to above mentioned flaw in the system.

Further inquiries revealed that in order to overcome the system's flaw it would be necessary to enter the system and manually change each CD's number of days' base to obtain the correct calculation for the year in question. Per the SIBL controller, the new system, "Temenos", does not have the capability to make the change automatically either. Due to the volume of customer CDs (over 40,000) it is not practical to perform it manually. It is worth mentioning that 2008 will be another leap year.

Recommendation:  We recommend that SIBL consider establishing 365 days as a unique base for compound interest calculations all across. Additionally, we recommend listing all CDs opened in 2004 that have not matured as of yet and manually make the adjustment to the number of days in the year to allow for accurate calculations.

6

7

**IN THE HIGH COURT OF JUSTICE**　　　　　　　　　　　　Case No. [ ] of 2009
**CHANCERY DIVISION**
**COMPANIES COURT**

IN THE MATTER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.
(IN RECEIVERSHIP)
AND IN THE MATTER OF THE CROSS BORDER INSOLVENCY REGULATIONS
2006

RALPH STEVEN JANVEY

(AS RECEIVER OF STANFORD INTERNATIONAL BANK, LTD., STANFORD
GROUP COMPANY, STANFORD CAPITAL MANAGEMENT, LLC, ROBERT ALLEN
STANFORD, JAMES M. DAVIS, LAURA PENDERGEST-HOLT, STANFORD
FINANCIAL GROUP, AND THE STANFORD FINANCIAL GROUP BUILDING INC.)
**Applicant**

---

**Exhibit KVT30**

This is the exhibit "KVT30" signed and sworn to before me, the undersigned notary public in
and for the State of Texas, on the __1__ day of June, 2009.

Notary Public
My Commission Expires __6/1/11__

**From:** Groves, Denise
**Sent:** Thursday, February 12, 2009 5:25 PM
**To:** Maldonado, Patricia; Patlan, Tarrie
**Subject:** RE: BOH Wire

**Sensitivity:** Confidential
20090212GMQFMP01000998

**From:** Groves, Denise
**Sent:** Thursday, February 12, 2009 10:09 AM
**To:** Maldonado, Patricia; Patlan, Tarrie
**Subject:** BOH Wire
**Importance:** High
**Sensitivity:** Confidential

**Wire Sequence Number is 1691**
Wire is available for verification.
SIB TD - $14,000,000

From: Groves, Denise
Sent: Thursday, January 15, 2009 8:33 PM
To: SFG Treasury
Subject: TRX INITIATED: SIB-BHOU to SIB-TD_20090115_$5,000,000_00

Sensitivity: Confidential

Attachments: image001.png

Wire initiated.

From: Groves, Denise
Sent: Thursday, January 15, 2009 2:09 PM
To: SFG Treasury
Subject: TRX PENDING: SIB-BHOU to SIB-TD_20090115_$5,000,000_00
Importance: High
Sensitivity: Confidential

Wire Sequence Number is 1569

Wire is available for verification.

Wire initiated in Bank of Houston; not logged in Oracle.

From: Maldonado, Patricia
Sent: Thursday, January 15, 2009 2:06 PM
To: dwatson@bankhouston.com
Cc: Monte Giebler; Arias, Oralia; Groves, Denise; Patlan, Tarrie; Tobias, Maria
Subject: Transfer of 5MM

We plan to effect a wire for 5MM out of SIBL today (among other wires).

Regards,

Patricia C. Maldonado

Treasury Manager

STANFORD

Stanford Financial Group Co.

5051 Westheimer

Houston, TX  77056

ph: 713-964-5115

fax: 713-964-5230

P   Please consider the environment before printing this email

mhtml:https://rtlegal.ftitools.com/rtl2005/showImage.asp?page_id=1375795&main_id=1375795&rivPage...   5/7/2009

2

Page 1 of 2

**From:** Patlan, Tarrie
**Sent:** Thursday, October 16, 2008 4:49 PM
**To:** Maldonado, Patricia; Arias, Oralia; Groves, Denise; Tobias, Maria
**Subject:** RE: Transfer 5MM to SIBL/TD

**Importance:** High

**Categories:** SIBL, TD, Trustmark, Wire
**Attachments:** image001.jpg

Patricia,

As per your instructions, the amount has been increased to $10MM at SIBL's request and the transfer will be made from their BOH account.

Wire Sequence Number is 1180

Wire is available for verification.

_____

Tarrie J. Patlan |Senior Treasury Analyst|Stanford Financial Group|

5051 Westheimer Rd. 8th Floor|Houston, TX 77056|Ph. 713-964-5121

_____

From: Maldonado, Patricia
Sent: Thursday, October 16, 2008 10:11 AM
To: Arias, Oralia; Groves, Denise; Patlan, Tarrie; Tobias, Maria
Subject: Transfer 5MM to SIBL/TD

I just spoke to Bhanoo. I told him we could send an additional 5MM today. Please set up a.s.a.p.

Thanks,

Patricia C. Maldonado

Treasury Manager

STANFORD

Stanford Financial Group Co.

5051 Westheimer

Houston, TX 77056

ph: 713-964-5115

fax: 713-964-5230

P   Please consider the environment before printing this email

mhtml:https://rtlegal.ftitools.com/rtl2005/showImage.asp?page_id=1730523&main_id=1729887&rivPage...    5/7/2009

3

**From:** Groves, Denise
**Sent:** Wednesday, January 14, 2009 4:40 PM
**To:** SFG Treasury
**Subject:** BHOU Seq 1552 : 3.1MM EUROS for SIBL

**Importance:** High
**Sensitivity:** Confidential

**Attachments:** image001.png; image002.jpg

Wire Sequence Number Is 1552

Wire is available for verification.

SIB-BHOU – SIB-TD: $5,000,000

From: Maldonado, Patricia
Sent: Wednesday, January 14, 2009 10:30 AM
To: Arias, Oralia; Groves, Denise; Patlan, Tarrie; Tobias, Maria
Subject: RE: 3.1MM EUROS for SIBL

I just got off the phone with Omari. We spoke to Beverly, who said we could move the L/C payment to tomorrow. For that, we will send the funds to TD tomorrow and they will purchase Euros to go out.

We will send 5MM to TD today from BoH. Please set up.

Thanks,

Patricia C. Maldonado

Treasury Manager

STANFORD

Stanford Financial Group Co.

5051 Westheimer

Houston, TX 77056

ph: 713-964-5115

fax: 713-964-5230

P    Please consider the environment before printing this email

———

From: Patlan, Tarrie
Sent: Wednesday, January 14, 2009 10:08 AM
To: Maldonado, Patricia
Subject: RE: 3.1MM EUROS for SIBL

4

Ok.

Thanks

———

From: Maldonado, Patricia
Sent: Wednesday, January 14, 2009 10:06 AM
To: Patlan, Tarrie
Cc: Groves, Denise
Subject: RE: 3.1MM EUROS for SIBL

Talking to Omari about sending funds to cover this and other today to TD.   I don't think we want client to be receiving monies from other than the TD account.

Patricia C. Maldonado

Treasury Manager

STANFORD

Stanford Financial Group Co.

5051 Westheimer

Houston, TX 77056

ph: 713-964-5115

fax: 713-964-5230

P   Please consider the environment before printing this email

———

From: Patlan, Tarrie
Sent: Wednesday, January 14, 2009 8:50 AM
To: Maldonado, Patricia
Subject: 3.1MM EUROS for SIBL

Patricia,

Omari just informed me that they have an L/C obligation for 3.1MM Euros that must be sent asap.  They have only 5K in the HSBC EUR account and only enough in TD to cover today's wires.  They want it today but I told him that the soonest we can get the funds to them is tomorrow (if sent from TNB) or Friday (if sent from BOH).

 - Tarrie  -

Tarrie J. Patlan

Senior Treasury Analyst

Stanford Financial Group Company

S

5051 Westheimer Rd. 8th Floor, Houston, TX 77056

Ph. 713-964-5121 | Fx. 713-964-5230

**From:** Maldonado, Patricia
**Sent:** Wednesday, November 19, 2008 6:16 PM
**To:** Palmliden, Fred
**Cc:** Weeden, Ken; 'Buffle Philippe (RBS Coutts, CH)'; Groves, Denise; Patlan, Tarrie
**Subject:** RE: Transfer Request

**Attachments:** StanfordLogo.bmp; image004.gif; image005.jpg; image006.gif

We can handle from our end.  I just wanted to make sure if there was a separate amount going to TD.

Thanks,

Patricia C. Maldonado
Treasury Manager
STANFORD
Stanford Financial Group Co.
5051 Westheimer
Houston, TX  77056
ph:  713-964-5115
fax: 713-964-5230
P   Please consider the environment before printing this email

────

From: Palmliden, Fred
Sent: Wednesday, November 19, 2008 12:15 PM
To: Buffle Philippe (RBS Coutts, CH)
Cc: Weeden, Ken; Maldonado, Patricia
Subject: FW: Transfer Request

Philippe,

According to our treasury manager, all $14.4M went to Trustmark National Bank.  As discussed earlier, $8.8M should have gone to TD and $5.6M to Trustmark.  What can be done to correct the wire?

Patricia, is it possible for you to transfer $8.8M from Trustmark to TD, or do we need to reject the $14.4M wire and try again?

Regards, Fred.

Frederic Palmliden, CMT

Senior Investment Officer / Western Europe

Stanford Financial Group

6075 Poplar Avenue, Suite 300

Memphis, TN 38119

Phone: (901) 537-1633

mhtml:https://rtlegal.fltitools.com/rtl2005/showImage.asp?page_id=378145&main_id=379209&rivPageNu...   5/7/2009

Fax: (901) 537-1635

HYPERLINK "mailto:fpalmliden@stanfordeagle.com"fpalmliden@stanfordeagle.com

HYPERLINK "http://www.stanfordfinancial.com/"www.stanfordfinancial.com

Hard work. Clear vision. Value for the client

———

From: Maldonado, Patricia
Sent: Wednesday, November 19, 2008 11:01 AM
To: Palmliden, Fred
Cc: Weeden, Ken
Subject: RE: Transfer Request

Fred,

All 14.4 came into Trustmark National Bank.  What happened?

Also, please let me know what, if any, other funds are expected.

Thanks,

Patricia C. Maldonado

Treasury Manager

STANFORD

Stanford Financial Group Co.

5051 Westheimer

Houston, TX  77056

ph: 713-964-5115

fax: 713-964-5230

P   Please consider the environment before printing this email

———

From: Palmliden, Fred
Sent: Tuesday, November 18, 2008 11:40 AM
To: Brooks Peter (RBS Coutts, CH); Buffle Philippe (RBS Coutts, CH)
Cc: Weeden, Ken; Pendergest, Laura; Maldonado, Patricia
Subject: Transfer Request

Dear Peter,

Please transfer a total of $14,400,000.00 at your earliest convenience from the cash allocation of the main SIBL account.  The

mhtml:https://rtlegal.ftitools.com/rtl2005/showImage.asp?page_id=378145&main_id=379209&rivPageNu...   5/7/2009

specific instructions are listed below. After the transfer takes place, please send me a confirmation with the exact dollar value transferred.

$8,800,000.00 to:

Bank of America

New York, NY

ABA# 026009593


For credit to:

Toronto Dominion Bank

55 King St. West and Bay ST.

Toronto, Ontario, Canada

SWIFT: TDOMCATTTOR

Account with Bank of America: 6550826336

For further credit to:

Stanford International Bank

No. 11 Pavilion Dr.

St. John's, Antigua

SWIFT: SIBPAGAG

Account no. 0360 01 2161670

$5,600,000.00 to:

Trustmark National Bank

248 East Capitol Street
Jackson, Mississippi 39201

ABA# 065300279

For credit to:

Stanford International Bank Limited

No. 11 Pavilion Dr.

St. John's, Antigua


mhtml:https://rtlegal.ftitools.com/rtl2005/showImage.asp?page_id=378145&main_id=379209&rivPageNu...    5/7/2009

Account no. 3003101707

Thank you for your assistance.  A signed fax will follow.

Kind regards, Fred

Frederic Palmliden, CMT

Senior Investment Officer / Western Europe

Stanford Financial Group

6075 Poplar Avenue, Suite 300

Memphis, TN 38119

Phone: (901) 537-1633

Fax: (901) 537-1635

HYPERLINK "mailto:fpalmliden@stanfordeagle.com"fpalmliden@stanfordeagle.com

HYPERLINK "http://www.stanfordfinancial.com/"www.stanfordfinancial.com

Hard work. Clear vision. Value for the client

10

From: Maldonado, Patricia                                                      Page 1 of 3

From: Maldonado, Patricia
Sent: Tuesday, November 11, 2008 3:20 PM
To: Patlan, Tarrie
Subject: RE: SIBL

I didn't realize we set up to go directly to Bank of Houston.  Should be OK.  Let's also look
at SIBL's DDA account at Comerica and see what we can move without incurring account fees.

Regards,
Patricia C. Maldonado
Treasury Manager
Stanford Financial Group

-----Original Message-----
From:     Patlan, Tarrie
Sent: Tuesday, November 11, 2008 09:16 AM Central Standard Time
To:     Maldonado, Patricia
Cc:   Arias, Oralia; Groves, Denise; Maldonado, Patricia; Tobias, Maria
Subject:     RE: SIBL

I sent the email to Jim.

I am also sending the requests to Comerica to move the funds and execute the wire all for
tomorrow.

I noticed that the Comerica funds are going directly to BOH, so those funds can stay there for
our use and the $10MM from TNB to TD can stay at TD for SIB's needs.

-----Original Message-----
From: Maldonado, Patricia
Sent: Tuesday, November 11, 2008 8:49 AM
To: Patlan, Tarrie
Subject: RE: SIBL

Yes.  Email Jim Outlaw.

Regards,
Patricia C. Maldonado
Treasury Manager
Stanford Financial Group

-----Original Message-----
From:     Patlan, Tarrie
Sent: Tuesday, November 11, 2008 08:18 AM Central Standard Time
To:     Maldonado, Patricia
Subject:     RE: SIBL

Looking at our numbers again, I think it would be best to transfer 10MM to TD then to BOH.  We
have both Payroll and regular funding this week.

Can we move $10MM instead of $5MM?

-----Original Message-----
From: Maldonado, Patricia
Sent: Tuesday, November 11, 2008 3:41 AM
To: Patlan, Tarrie
Cc: Groves, Denise; Davis, James
Subject: RE: SIBL

Tarrie,
OK to transfer from TMK.

mhtml:https://rtlegal.ftitools.com/rtl2005/showImage.asp?page_id=784897&main_id=785232&rivPageNu...  5/7/2009

11

From: Maldonado, Patricia                                                                                                       Page 2 of 3

Will touch base with JMD.  Glad today is a banking holiday.

Regards,
Patricia C. Maldonado
Treasury Manager
Stanford Financial Group

   -----Original Message-----
From:      Patlan, Tarrie
Sent: Monday, November 10, 2008 03:54 PM Central Standard Time
To:   Maldonado, Patricia
Cc:   Groves, Denise
Subject:   SIBL

Patricia, We are going to need funds at BOH for payroll funding Wednesday.


Here are the current balances (in bold):


BHOU  3,500,000

          (3,000,000)       Elandia-Approved for 11/12

(500,000)          HSS-Approved for 11/12

(50,000)           GoAntiques-Approved for 11/12

(1,500,000)    Est. for payroll/funding for 11/12

(1,550,000)    Projected Balance EOD 11/12

(675,000)      Forefront-Approved for 11/13



TD       13,000,000       Estimated EOD residual balance for today, 11/10

No S/T Investments

10,000,000     Transfer from Comerica 11/12   (Omari called & requested for Wed.)


COM   20,000,000

          (10,000,000)    Transfer to TD sched. 11/12


TNB   43,000,000

          (5,000,000)    Possible transfer to TD then to BHOU on 11/12

                         to cover Payroll & related funding


Please let me know if we can move $5MM from TNB to TD (then on to BHOU) to cover funding on

12

From: Maldonado, Patricia                                                    Page 3 of 3

Wednesday.

---

Tarrie J. Patlan |Senior Treasury Analyst|Stanford Financial Group|.

5051 Westheimer Rd. 8th Floor|Houston, TX 77056|Ph. 713-964-5121

13

**From:** Groves, Denise
**Sent:** Friday, October 10, 2008 3:15 PM
**To:** 'lnichols@trustmark.com'; 'Phyllis_Swartz@trustmark.com'
**Cc:** SFG Treasury
**Subject:** International Wire Transfer (Repetitive) for value Friday, October 10, 2008

**Importance:** High
**Sensitivity:** Confidential

**Attachments:** [FRB94026] Wire ID #2142 SIBL (2008-10-10) $10MM.pdf

Linda/Phyllis – attached please find one international wire for value Friday, October 10th.

FRB94026 - $10,000,000.00

Please confirm receipt.

Regards,
Denise Groves
713-964-8343

14