IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-09-342 |
| | § | (J. Hittner) |
| ROBERT ALLEN STANFORD; | § | |
| LAURA PENDERGEST-HOLT; | § | |
| GILBERTO LOPEZ; | § | |
| MARK KUHRT; and | § | |
| LEROY KING | § | |

## CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON'S AND ARCH SPECIALITY INSURANCE COMPANIES' RESPONSE TO DEFENDANT HOLT'S AND DEFENDANT LOPEZ'S MOTIONS FOR PAYMENT OF FEES OR STAY OF THE PROCEEDINGS AND RESPONSE TO QUESTIONS RAISED BY THE HONORABLE DAVID HITTNER

### *Preliminary Statement*

At the request of this Court, Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company file this response to motions filed by Defendants Laura Pendergest-Holt ("Holt") and Gilbert Lopez (collectively, "Movants") in which they seek an order compelling payment of certain insurance policy proceeds, and answer questions posed by this Court.

The issue Movants have raised with this Court already is pending before another federal court, on the motion of one of these same Movants, and is already briefed and fully submitted in that court. On February 17, 2009, on the complaint and ex parte motion of the Securities and Exchange Commission ("SEC"), the U.S.

1

6397822

District Court for the Northern District of Texas entered an Order Appointing

Receiver that, among other things, froze all assets then in the possession, custody,

or control of any entity associated with the Stanford Financial Companies, and

appointed Receiver Ralph Janvey to oversee the collection of such assets. The

Honorable David Godbey, U.S. District Judge, is now presiding over the case,

styled *SEC vs. Stanford Int'l Bank Ltd.. et al.*, 3:09-cv-0298 (N.D. Tex.).

On June 26, 2009, the Receiver notified Underwriters that he takes the

position that proceeds of three insurance policies issued by Underwriters are assets

of the Receivership Estate, and therefore the February 17 Order enjoins

Underwriters from distributing any such proceeds to claimants, including the

Movants here. On June 30, Laura Pendergest-Holt filed a Motion to Clarify in

Judge Godbey's court, asking that court to rule that insurance policy proceeds are

not receivership assets and may be paid to her for her defense. The Receiver filed

a response supporting his argument that proceeds are receivership assets.

Underwriters have filed a motion to intervene, noting an urgent need for the court

to rule on this issue, and requesting that the court do so as soon as possible.

After Holt sought relief from Judge Godbey, and before a ruling was issued,

Movants filed the instant motions asking the Court to order Underwriters to

distribute policy proceeds to them to pay for their defense against criminal charges

pending in this Court. Movants' request should be denied for several reasons.

First, Movants' request would effectively award them a damages judgment (or pre-judgment sequestration) against Underwriters without trial. Underwriters have reserved their right to deny coverage on several grounds, including that the criminal charges against Movants may have resulted from a massive fraudulent Ponzi scheme and money laundering operation.

Second, the order Movants request could conflict directly with the February 17 Order. Movants ask this Court to enter an order compelling Underwriters to distribute insurance proceeds; the February 17 Order prohibits distribution of receivership assets. Holt has already asked Judge Godbey to rule whether insurance proceeds are receivership assets, as the Receiver contends. If Judge Godbey rules that insurance proceeds are receivership assets, then an order compelling their distribution would conflict with the February 17 Order.

Third, Underwriters include a number of syndicates based in the United Kingdom, none of which are parties to any civil action before this Court. Movants' claim for insurance proceeds would lie, if at all, solely under state law. This Court lacks federal subject matter jurisdiction to enter an order compelling a private party to make payments based on Movants' alleged state-law contract rights. Indeed, Laura Pendergest-Holt previously sued Underwriters *in state court* in Dallas County for damages based on an alleged breach of contract and other state-law theories—seeking essentially the same relief she seeks here—then nonsuited that

lawsuit. Defendant Holt should not be permitted to recover here, without discovery or judicial process, the same relief she was seeking in state court.

Finally, to be clear, Underwriters have previously agreed in writing that Movants may incur reasonable and necessary attorney's fees and costs in the defense of this matter that Underwriters will reimburse, subject to a complete reservation of rights, including the right to cease such reimbursement if a policy exclusion or other defense precludes coverage. Underwriters did not make such reimbursements in light of the Receiver's argument based on the February 17 Order. If Judge Godbey rules that the insurance policy proceeds are not receivership assets, Underwriters presently intend to reimburse Movants' reasonable and necessary attorneys' fees and costs, subject to a complete reservation of rights. That decision by Underwriters does not entitle Movants to coverage, nor is it a basis to compel Underwriters to make such payments.

## I. **FACTS**

Lloyd's of London Underwriting Members in Syndicates 2987, 2488, 1886, 2623, 1084, 4000, 1083, 1274 and 623, and Arch Specialty Insurance Company (collectively, "Underwriters") issued certain insurance policies to Stanford Financial Group Company, Stanford Group Company and their affiliated entities ("Stanford Entities"). These policies include:

1.    Lloyd's Director's and Officers' and Company Indemnity Policy,
      reference 576/MNK558900 (the "D&O Policy");

2.    Lloyd's Financial Institutions, Crime and Professional Indemnity
      Policy, reference 576/MNA851300 (the "PI Policy"); and

3.    Lloyd's Excess Blended "Wrap" Policy, reference 576/MNA831400
      (the "Excess Policy").[1]

On February 17, 2009, the SEC filed a Complaint in the U.S. District Court

for the Northern District of Texas seeking emergency relief against the Stanford

Entities, R. Allen Stanford, James M. Davis, and Laura Pendergest-Holt.  The

Complaint alleged a "massive, on-going fraud."[2]  The Honorable Reed O'Connor

immediately issued an Order in the SEC Action appointing Ralph S. Janvey

Receiver to control the financial affairs of the SEC Action Defendants.[3]  Ten days

later, the SEC filed its First Amended Complaint, further alleging

"misappropriation of billions of dollars of investor funds" and other fraudulent

conduct.[4]  Nearly four months after the SEC filed its Complaint in the Northern

---

[1] *See* Appendix in Support of Defendant Laura Pendergest-Holt's Motion for Payment of Fees, or, In the Alternative, Stay of Criminal Proceedings (hereinafter "Holt App.") at 1-153.  Docket No. 101.  Lexington Insurance Company, represented by separate counsel, has underwritten ten percent of the Excess Policy.

[2] *See* Complaint at 1, *Secs. and Exch. Comm'n v. Stanford Int'l Bank, Ltd. et al.*, 3:09-cv-0298 (N.D. Tex. Feb. 17, 2009) (hereinafter "*SEC Action*").  A true and correct copy of the Complaint is attached as Exhibit "A."

[3] *See* Order Appointing Receiver, *SEC Action* (N.D. Tex. Feb. 17, 2009) (hereinafter "Receivership Order").  The Receivership Order was amended on March 12, 2009; the provisions of the Receivership Order relevant to this submission remain unchanged.

[4] First Amended Complaint at 1, *SEC Action* (N.D. Tex. Feb. 27, 2009).  A true and correct copy of the First Amended Complaint is attached as Exhibit "B."

6397822                                  5

District, the U.S. Department of Justice brought this criminal action against Allen Stanford, Laura Pendergest-Holt, Gilberto Lopez, Mark Kuhrt, and Leroy King.[5]

On the heels of the SEC's allegations and the indictment of the Defendants in this case, Stanford investors began filing individual and class action lawsuits against various Stanford Officers, Directors, and employees in jurisdictions throughout the United States and in several foreign nations.

The Receiver sought coverage for, and noticed a number of claims for suits brought against, the Stanford Entities. Dozens of Stanford Entity Directors, Officer, and Employees also noticed claims for coverage under the Policies. Defendants Holt, Lopez, Stanford and Davis noticed a number of claims, including claims based on the criminal charges brought by the United States in this Court.

Underwriters are currently evaluating numerous claims against Stanford and various of its Officers, Directors, and employees in order to make a determination of coverage and to assess the extent, if any, of Underwriters' obligations. After receipt of Holt's notice of claim, Underwriters sent a letter to her attorneys advising that although Underwriters had not "yet made a final determination of coverage, Underwriters will consent to [the] request to incur reasonable Costs, Charges and expenses" pursuant to the D&O Policy "subject to a complete

---

[5] *See* Docket No. 1.

6

reservation of all rights."[6]  Several months later, Mr. Lopez also submitted a claim

to Underwriters, which Underwriters are currently evaluating.

On June 24, 2009, however, the Receiver notified Underwriters (through its

agent for notice of claims) of his position that proceeds of the Policies are assets of

the Receivership Estate under the February 17 Order Appointing Receiver.[7]  The

Receivership Order authorized the Receiver to "immediately take and have

complete and exclusive control, possession and custody of the [assets, monies,

securities, and other properties, real and personal, tangible and intangible of the

defendants in the SEC Action]."[8]  The Receiver further asserted that "the

Receiver's right to contractual proceeds supersedes the insured's."[9]  Thus, the

Receiver's position, if correct, would mean that any distribution of Policy proceeds

would violate the Northern District's Order Appointing Receiver and subject

Underwriters to contempt sanctions.

---

[6] *See* Holt Appendix at 155.  Holt filed suit against Underwriters on March 17, 2009 in the 101st Judicial District Court of Dallas County, Texas.  On April 30, 2009, Holt filed a Motion for Expedited Discovery and served Requests for Admission and Interrogatories.  Holt filed a second set of Interrogatories on August 4, 2009.  On August 5, 2009 Underwriters noticed Holt's deposition.  Holt moved to quash the deposition on August 7, 2009.  During a hearing on Holt's Motion to Quash, Holt's counsel was ordered to produce Ms. Holt for deposition or nonsuit the claims.  Holt's counsel announced on the record that she desired to nonsuit her claims.  That court issued the Order of Nonsuit two days later. *See Laura Pendergest-Holt, an individual v. Lloyd's of London a/k/a Society of Lloyd's a/k/a Lloyd's & Institute of London Underwriting Companies; Lloyd's of London Underwriting Members in Syndicates 2987, 2488, 1886, 1084, 1274, 4000*, No. 09-3133 (101st Dist. Ct., Dallas County, Tex. Mar. 17, 2009).

[7] A true and correct copy of the correspondence received from the Receiver's counsel is attached as Exhibit "C."

[8] *See* Receivership Order at 1.

[9] *See* Exh. "C."

Immediately upon receiving the June 24 communication from the Receiver's counsel, Underwriters informed all persons who had previously submitted claims under the Policies that, although Underwriters took no position as to whether the Receiver was correct in his construction of the Receivership Order, Underwriters could not disburse proceeds unless and until the Northern District ruled as to whether Policy proceeds are part of the Receivership Estate.[10] On several occasions, Underwriters' counsel spoke with the Receiver's counsel regarding the Receiver's stated position. The Receiver has not waivered from his stated position that the Policy proceeds are assets of the Receivership Estate.

On June 30, 2009, Holt filed a motion in the SEC Action seeking payment of her defense costs from the Policies and asking Judge David Godbey to clarify whether the Policy proceeds are in fact assets of the Receivership Estate.[11] The Receiver filed his response on July 16, 2009, supporting his stated position.[12] Furthermore, the Receiver noted the existence of claims against both Officers and Directors *and the Receivership Estate itself*, and asked the Court to weigh the competing claims and interests in the Policies and to make an "appropriate

---

[10] Holt App. at 165-66.

[11] Defendant Laura Pendergest-Holt's Expedited Motion for Clarification that Receivership Order Does Not Apply to D&O Policy Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds, and Brief in Support, *SEC Action* (N.D. Tex. June 30, 2009). Holt App. at 197. The SEC Action was reassigned to Judge Godbey on February 20, 2009.

[12] Receiver's Response to Defendant Laura Pendergest-Holt's Expedited Motion for Clarification that Receivership Order Does Not Apply to D&O Policy Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds, *SEC Action* (N.D. Tex. July 16, 2009). Holt App. at 178.

allocation" of the proceeds.[13] The Receiver suggested such an allocation "should reserve the majority of the insurance proceeds for the benefit of the Receivership Estate."[14] Several other individuals have joined Holt's motion, including Defendant Davis, Defendant Stanford, and various Stanford financial advisors.[15]

On September 11, 2009, Underwriters filed a Motion to Intervene in the SEC Action.[16] In their Motion, Underwriters requested that the Northern District clarify whether the proceeds of the Policies are part of the Receivership Estate, and thus whether disbursement of those proceeds would violate the Receivership Order.[17] Underwriters, however, also asked that the Court include in such order an acknowledgement that coverage under the Policies has not yet been determined and that any rights of Holt or the Receiver to the Policies' proceeds are subject to the terms and conditions of the policies, including any applicable coverage exclusions.[18]

This motion is pending before Judge Godbey.

---

[13] *Id.* at 14.

[14] *Id.*

[15] *See SEC Action* Docket No. 560 (filed by James M. Davis); *SEC Action* Docket No. 567 (filed by R. Allen Stanford); *SEC Action* Docket No. 632 (filed by claimants Carlos (Tony) Perez and Manuel Malvaez); *SEC Action* Docket No. 678 (filed by various financial advisors).

[16] *See* Certain Underwriters at Lloyd's of London's Brief in Support of Motion to Intervene, *SEC Action* (N.D. Tex. Sept. 11, 2009). A true and correct copy of this Brief is attached as Exhibit "D."

[17] *Id.* at 2.

[18] *Id.*

## II. ARGUMENT

A.   **Relevant Case Law and the Unique Facts of this Dispute Militate Against this Court's Exercise of Ancillary Jurisdiction Over Underwriters.**

Defendants Holt and Lopez ask this Court to effect a breathtaking expansion of its ancillary jurisdiction, not only to bring several non-parties, Underwriters, into this criminal proceeding, but also to adjudicate the question of whether proceeds under three insurance policies can be paid to the Defendants. Aside from the fact that all of these issues are currently pending before Judge Godbey in the Northern District (a fact that, standing alone, weighs heavily against this Court assuming jurisdiction), relevant case law does not support Defendants' position.

1.   Ancillary Jurisdiction Exists at the Outer Limits of Federal Courts' Jurisdictional Powers.

Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and by statute.[19] The presumption is that any given claim lies outside of this jurisdiction, and the burden of showing the contrary rests on the party asserting federal jurisdiction.[20] Ancillary jurisdiction is but a tool to enable a court to administer justice *within the scope of its existing jurisdiction.*[21] In the words of the Fifth Circuit, it is a "limited exception to the rule that federal district courts have only such jurisdiction as is provided by the Constitution or by

---

[19] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[20] *Id.*

[21] *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir.1969) (emphasis added).

statute."[22] The doctrine may be employed by a federal court to obtain jurisdiction

of a matter over which the court would not otherwise have jurisdiction where there

is a "tight nexus" between that matter and a subject matter properly in federal

court.[23] Historically, courts have exercised ancillary jurisdiction in criminal cases

over parties and officers *before the court* or property *in the court's custody*, to

expunge arrest records, adjudicate the return of seized property, and resolve

disputes between defendants and their counsel *who had appeared before the

court*.[24] Importantly, ancillary jurisdiction is not a permissive doctrine; rather, it

represents the "constitutional limits of federal judicial power."[25]

> 2.    Neither the Facts of This Dispute Nor the Relevant Authorities
>        Support this Court's Exercise of Ancillary Jurisdiction Over
>        Underwriters.

Holt and Lopez rely on *United States v. Weissman* in support of their

arguments for this Court's assumption of jurisdiction.[26] In that case, Jerry

Weissman, the former Chief Financial Officer of Empire Blue Cross/Blue Shield

("Empire") was convicted by a jury of perjury and obstruction of justice. Empire

advanced his legal fees for four years before the verdict pursuant to a corporate by-

law.[27] After the jury handed down a guilty verdict, Empire stopped paying the

---

[22] *Florida Med. Ass'n, Inc. v. U. S. Dept. of Health, Ed. and Welfare*, 601 F.2d 199, 202 (5th Cir. 1979).
[23] *Id.*
[24] *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006) (emphasis added).
[25] *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371 (1978).
[26] *United States v. Weissman*, No. S2 94 CR. 760 (CSH), 1997 WL 334966 (S.D.N.Y. Jun. 16, 1997).
[27] *Id.* at *1.

6397822                                    11

former CEO's defense costs.  Weissman then asserted that his express right to mandatory advancement extended through post-conviction motions and sentencing and urged the court to exercise ancillary jurisdiction to compel Empire to continue to pay.[28]  On the due date of its response to Weissman's Motion to Compel advancement of funds, Empire filed a separate action for declaratory judgment in New York state court.[29]

The *Weissman* court admitted that it could find no other criminal case where a court had exercised ancillary jurisdiction over an employer for an advancement claim, but it did so nonetheless.[30]  The court reasoned Empire was no "stranger" to the proceedings, because it had been paying the lawyers' fees all along,[31] and the "lawyers were misled by Empire to believe that continued funding would be forthcoming."[32]  The court also pointed to Empire's involvement in the defense strategy and monitoring of the defense's witness preparation.[33]

---

[28] *Id.* at *3.

[29] *Id.*  This is in contrast to the fact that the disputes in Judge Godbey's court concerning whether policy proceeds are receivership assets and whether Underwriters should be compelled to pay defense costs predate the issues' tenure in this forum.

[30] *Id.* at *5.

[31] *Id.*

[32] *Id.* at *8.

[33] *Id.* at *18 n.4.  Subsequent courts commenting on *Weissman* have noted that the fee advancement issue suddenly arose in an "awkward period in the case" because the dispute uniquely threatened to affect the timing of post-trial motions and sentencing. *United States v. Wittig*, 512 F. Supp. 2d 1186, 1192 (D. Kan 2007); *Fermin v. Moriarty*, No. 96 Civ. 3022 (MBM), 2003 WL 21787351 at *7 (S.D.N.Y. Aug. 4, 2003).  In the present dispute, unlike *Weissman*, Underwriters have not advanced defense costs along the way to fund litigation, have not misrepresented the status of the advancement of defense costs, and have not participated in the preparation of Defendants' case.  In addition, this criminal matter is hardly at the same late procedural stage as was *Weissman* when that court decided to exercise ancillary jurisdiction.

Later decisions have criticized *Weissman*. As another court observed, "the major flaw in *Weissman* is the court's failure to address the constitutional limitations of ancillary jurisdiction. Instead, the court focused on whether exercise of ancillary jurisdiction was consistent with its purposes."[34]

In *United States v. Polishan,* a case on all fours with the present dispute, the district court denied a defendant's request for it to exercise ancillary jurisdiction and to compel a defendant's former employer and its insurance company to pay defense costs.[35] The court explained that in the absence of a court's control over disputed property or the presence before the court of contesting parties to a dispute, "resort must be made to the other constitutional underpinning for the extension of the federal courts' limited subject matter jurisdiction."[36] Citing *United Mine Workers v. Gibbs*, the court determined that its constitutional power to entertain a state law claim through ancillary jurisdiction rested on there being a "common nucleus of operative fact" between the state claim at issue and the existing federal claim.[37]

The court found that its adjudication of the allegations of the defendant's criminal indictment for conduct as chief financial officer and the defendant's

---

[34] *United States v. Polishan,* 19 F. Supp. 2d 327, 333 (M.D. Pa. 1998).

[35] *Id.* at 333-34.

[36] Here, of course, this Court does not have control over the *res*—the insurance policy proceeds, and not all parties to this dispute are before the Court, namely Underwriters and the Receiver.

[37] *Polishan,* 19 F. Supp. at 332 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

motion for payment of fees (a contract dispute) did not involve a common nucleus of operative fact.[38]  Instead, the alleged criminal conduct was separate and distinct from defendant's state law contract claims against his employer and the insurance company:

> Polishan has been indicted for conduct relating to alleged securities fraud.  Thus, the criminal trial in this matter will center around his conduct as chief financial officer . . . . On the other hand, Polishan's motion for indemnification of expenses relates to an alleged contractual obligation on the part of [his employer] and an alleged breach of contract by [the insurer] in connection with its policy with [the employer].  Aside from the fact that the alleged expenses incurred in his defense in this criminal proceeding form the basis for the alleged breach of contract, Polishan's motion for indemnification shares no common facts with his present criminal indictment.  Moreover, it cannot reasonably be maintained that claims for indemnification of defense costs are ordinarily expected to be tried in a criminal proceeding.[39]

Under these circumstances, said the court, there was no constitutional basis for ancillary jurisdiction.[40]  The court concluded its opinion by noting that "[t]he existence of a common nucleus of operative facts, court control over property, or the presence of the parties to a fee dispute are precisely the type of factors that

---

[38] *Id.* at 332.
[39] *Id.*
[40] *Id.*

assures that the vague concept of ancillary jurisdiction does not overwhelm the boundaries of federal judicial authority."[41]

Other courts have echoed the *Polishan* analysis. The Second Circuit, for example, recently found that non-party accounting firm KPMG was entitled to a writ of mandamus to preclude a district court from exercising ancillary jurisdiction in a criminal proceeding involving the prosecution of several of its former partners and employees.[42] These criminal defendants had filed civil suits after KPMG stopped reimbursing their defense costs. The defendants then sought to have the criminal court exercise ancillary jurisdiction over KPMG to compel it to reinstate reimbursement.[43] In issuing its writ of mandamus vacating the district court's order allowing the fee advancement action to proceed in criminal court, the court noted that the

> exercise of ancillary jurisdiction over a fee dispute between a party and an attorney functioning as an officer of the court in litigation over which a court has jurisdiction is . . . a world apart from the exercise of ancillary jurisdiction in a criminal proceeding to adjudicate a contract dispute between the [criminal] defendants and a non-party former employer . . . . [W]hen a non-party to the primary proceeding is sought to be joined as a defendant in the ancillary proceeding, the need for the ancillary proceeding and the efficiencies provided by it must be both sufficiently great to outweigh the prejudice to the non-party and to be consistent with the limited jurisdiction of federal courts.[44]

---

[41] *Polishan*, 19 F. Supp. at 333. The *Polishan* court also rejected the defendant's argument that the Sixth Amendment right to counsel justified exercising ancillary jurisdiction over a state law contract dispute about the advancement of attorneys' fees in a criminal proceeding. *Id.* at 333-34.

[42] *Stein v. KPMG, LLP*, 486 F.3d 753, 763-64 (2007).

[43] *Id.* at 755-56.

[44] *Id.* at 760-61.

In a similar vein, the United States District Court for the District of Kansas recently rejected a criminal defendant's request that a criminal court exercise its ancillary jurisdiction to compel a non-party former employer to advance defense costs.[45] The court noted that the claims against the employer sounded in contract and were the subject of a separate civil action "in a forum that has jurisdiction over the parties to the contract dispute and the discreet [sic] issues pertaining to the contract."[46] "The mere fact that the state court proceedings are not moving as quickly" as the federal proceeding, said the court, "does not compel this Court's exercise of ancillary jurisdiction."[47]

Holt argues that her situation resembles the one in *Weissman* because "no disposition of this issue can reasonably be obtained in another forum."[48] This is simply not true. Holt initially sought relief in a state-court lawsuit against Underwriters, which she later dismissed. Holt also entrusted this issue to Judge Godbey by filing an expedited motion seeking disbursement of policy proceeds. Holt and the Receiver have fully briefed the motion, which remains pending. Underwriters, through their intervention, have also requested that Judge Godbey

---

[45] *United States v. Wittig*, 512 F. Supp. 2d 1186, 1192 (2007).

[46] *Id.*

[47] *See also United States v. Buhler*, 278 F. Supp. 2d 1297, 1299-1301 (M.D. Fla. 2003) (analyzing *Weissman* and *Polishan* and declining to exercise ancillary jurisdiction over an attorneys' fee dispute in a criminal prosecution); *Fermin v. Moriarty*, No. 96 Civ. 3022 (MBM), 2003 WL 21787351 at *7 (S.D.N.Y. Aug. 4, 2003) (finding that there was an insufficient relationship between a federal criminal proceeding and a civil lawsuit brought by a prisoner against his former attorney to warrant discretionary exercise of supplemental jurisdiction over the civil lawsuit).

[48] Holt's Motion ¶ 27.

16

address whether distributing insurance proceeds to Movants and others would violate the February 17 Order.

Thus, the questions of whether policy proceeds are receivership assets and whether Underwriters can make reimbursement without subjecting themselves to contempt charges are ripe for adjudication, and there is no sufficient reason for this Court to accept Defendants' invitation to infringe on Judge Godbey's prerogative.[49] The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs.[50] "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[51] The parties here risk each of these bad outcomes if this Court assumes ancillary jurisdiction.

**B.    Is the Receiver Prohibiting the Insurance Companies from Paying These Defendants' Attorneys' Fees Pursuant to the D&O Policy? (Judge Hittner's First Question)**

To the Court's first question, Underwriters answer "No."

---

[49] Assistant U.S. Attorney Gregg Costa evidently said as much when Lopez's counsel contacted him to confer on the instant motion. *See* Lopez's Motion ¶ XI.

[50] *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast of ILA, AFL-CIO*, 751 F.2d 721, 728-29 (5th Cir. 1985).

[51] *Id.* at 708-09; *Gregory-Portland Indep. School Dist. v. Texas Ed. Agency*, 576 F.2d 81 (5th Cir. 1978); *Mann Manuf'g, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971).

The Receiver does not have the right to prohibit or authorize payments by Underwriters. Rather, Underwriters are not distributing insurance policy proceeds at this time because of the possibility that such proceeds are "Receivership Assets" as defined by the February 17 Order in the SEC Action, and that distributing them to claimants may violate the February 17 Order freezing all assets of Stanford Entities.

To be sure, the Receiver first raised the argument that distribution of policy proceeds would violate the February 17 Order, and has supported this position in briefing before Judge Godbey in the SEC Action.[52] But the Receiver has never purported to prohibit payments by Underwriters.

C.    **Where in the D&O Policy at Issue Here Does It State that the Insurance Companies are Not Required to Pay These Defendants' Attorneys Fees in this Criminal Case? (Judge Hittner's Second Question)**

To the Court's second question, Underwriters answer a qualified "Nowhere."

The D&O Policy does not explicitly prohibit Underwriters' payment of Movants' (or any other criminal defendant's) attorneys fees in this criminal case. Neither, in fairness, does the D&O Policy necessarily require Underwriters to pay Movants' attorneys fees in this criminal case. The Policies specifically exclude

---

[52] *See* Receiver's Response to Defendant Laura Pendergest-Holt's Expedited Motion for Clarification that Receivership Order Does Not Apply to D&O Policy Proceeds, or, Alternatively, for Authorization of Disbursement of D&O Policy Proceeds at 10, *SEC Action* (N.D. Tex. July 16, 2009). *See* Holt App. at 178.

coverage for, among other things, claims resulting from money laundering and from dishonest, fraudulent, or criminal acts, which is precisely the nature of the allegations in the SEC Action and in the criminal proceedings before this court.

Underwriters have the legal right to deny coverage under the D&O Policy and defend that decision in subsequent proceedings, but so far Underwriters have not done that. Instead, Underwriters have agreed to reimburse the Defendants' reasonable and necessary attorney's fees subject to a complete reservation of all rights, which includes the right ultimately to deny coverage in the event it is determined that one of several potentially applicable policy exclusions or other coverage defenses precludes coverage.

Again, Underwriters have not reimbursed Movants' fees or expenses to date based on the concern that doing so may violate the February 17 Order entered in the SEC Action. This precise issue is currently pending before Judge Godbey.

### *Conclusion*

Laura Pendergest-Holt and Gilbert Lopez's request for an order from this Court compelling Underwriters to pay them policy proceeds should be denied.

6397822

19

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By:_____/s/ Daniel McNeel Lane, Jr._____
          Barry A. Chasnoff
          State Bar No. 04153500
          Attorney in charge
          Daniel McNeel Lane, Jr.
          State Bar No. 00784441
          Of counsel

          300 Convent Street, Suite 1600
          San Antonio, Texas 78205
          Phone: (210) 281-7000
          Fax: (210) 224-2035

          Attorneys for Certain Underwriters at
          Lloyd's of London and Arch Specialty
          Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded to all counsel of record on this September 14, 2009.

          ____/s/ Daniel McNeel Lane, Jr._____
          DANIEL McNEEL LANE, JR.

6397822

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-09-342 |
| | § | (J. Hittner) |
| ROBERT ALLEN STANFORD; | § | |
| LAURA PENDERGEST-HOLT; | § | |
| GILBERTO LOPEZ; | § | |
| MARK KUHRT; and | § | |
| LEROY KING | § | |

**ORDER ON CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON'S
AND ARCH SPECIALTY INSURANCE COMPANY'S RESPONSE TO
DEFENDANT HOLT'S AND DEFENDANT LOPEZ'S MOTIONS FOR
PAYMENT OF FEES OR STAY OF THE PROCEEDINGS AND RESPONSE
TO QUESTIONS RAISED BY THE HONORABLE DAVID HITTNER**

This Court has reviewed the points and authorities raised in Defendant Laura
Pendergest-Holt's Motion for Payment of Fees or In the Alternative, Stay of
Criminal Proceedings; Defendant Gilbert Lopez's Request for a Court Order
Requiring Payment of Legal Fees, or In the Alternative, For a Stay of His Criminal
Case; and non-parties Certain Underwriters at Lloyd's of London's and Arch
Specialty Insurance Company's Response to same and Response to Questions
raised by this Court. Upon due and careful consideration, this Court DENIES
Defendants Holt's and Lopez's request for an order from this Court compelling
Underwriters to pay them policy proceeds.

_____
HON. DAVID HITTNER

DATED THIS ____ OF _____, 2009

6397822