UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CR. NO.4:09-342-01 |
| | § | |
| | § | |
| ROBERT ALLEN STANFORD | § | |

## MOTION TO RECONSIDER ORDER QUASHING STANFORD'S SUBPOENA AND TO ORDER AKIN GUMP TO COMPLY WITH STANFORD'S MODIFIED SUBPOENA

TO: THE HONORABLE DAVID HITTNER, UNITED STATES DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

COMES NOW Robert Allen Stanford ("Movant") by and through his attorney of record, and respectfully moves for this Court to Reconsider its Order Quashing Stanford's Subpoena Duces Tecum and Order Akin, Gump, Strauss, Hauer, and Feld LLP ("Akin Gump") to Comply with Stanford's Subpoena attached herein as modified.

## BACKGROUND FACTS

1.      Initially, Movant, as a former client, sought production of his attorney-client file from Akin Gump.  On June 9, 2010, without a formal request being filed, Akin Gump began locating files related to prior representation of Stanford, SFG and affiliated entities all.[1]  On June 11, 2010 Movant filed an Emergency Motion to Compel Underwriters and Akin Gump to produce "any and all attorney client files and/or records" related to Akin Gump's representation of R. Allen Stanford, Stanford Financial Group, and affiliates by June 15, 2010.[2]  The Motion was granted by Judge Atlas on June 11, 2010.[3]  Akin Gump filed an Emergency Motion for Reconsideration of Order or, Alternatively, Motion for Protective Order, on June 13, 2010. In its Motion for Protective Order, Akin Gump admitted that:

> Mr. Bennett made his first request for documents related to [Akin Gump's] representation of Mr. Stanford and any Stanford Entities on June 9, 2010. . . . Although we probably will have gathered much of the written documentation relating to the matters which were handled for Stanford Entities, Akin Gump cannot provide all of the requested information on such a short

---

[1] *See* Underwriters' Motion for Reconsideration of Order, or Alternatively, Motion for Protective Order, No. 4:09-cv-03712, Dkt. 144, at 3-4, attached as Exhibit "A."

[2] *See* Stanford's Emergency Motion to Compel Akin Gump to Produce any and all Client files of Stanford, Stanford Financial Group, and its Affiliates, No. 4:09-cv-03712, Dkt. 141, attached as Exhibit "B."

[3] *See* Order No. 4:09-cv-03712, Dkt. 144, (S.D. Tex. June 11, 2010), attached as Exhibit "C."

notice. . . . Certain of the limited engagements with the Stanford Entities are up to ten years old, and reviewing firm electronic archives for electronic records pertaining to these engagements **will take many days, if not weeks**. . . . Akin Gump cannot meet the burdensome request for electronic discovery set forth in Stanford's Motion in the six day window between Akin Gump's receipt of the request and the deadline ordered for production required by the Court's order.[4] (*emphasis added*)

2.    On June 15, 2010, Judge Atlas had a telephonic hearing regarding Akin Gump's Motion for Reconsideration.[5]  In the hearing, Akin Gump stated that it possessed email exchanges between Akin Gump attorneys and Stanford, Stanford Financial and/or affiliated entities.[6]  Akin Gump stated that it had over 800,000 emails, but that not all of these emails pertained to Stanford.[7]  These emails were archived by attorney name, but not by subject matter.  Akin Gump stated these 800,000 emails could be reduced by 80 percent doing a key word search reducing the number of emails to "about 175,000."[8]  Furthermore, Akin Gump stated that because Judge Atlas' Order was unclear as to the production of these emails "I, [Barry Chasnoff], continue with the process of trying to identify

---

[4] *See* Exhibit "A" at 8–9.

[5] Tr. of June 15, 2010 Hr'g. before the Hon. Nancy J. Atlas, No. 09-cv-03712, *Laura Pendergest-Holt et al. v. Certain Underwriters at Lloyd's of London* (S.D. Tex. June 15, 2010) (hereinafter "June 15 Tr.") attached as Exhibit "D."

[6] June 15 Tr. at 18.

[7] June 15 Tr. at 18.

[8] June 15 Tr. at 18.

the emails."[9]  The only concern that Mr. Chasnoff, a partner at Akin Gump, had

regarded the email production.[10]  Additionally, Mr. Chasnoff also stated that there

are 405 electronic documents which they are "now [in] control of."[11]  Mr. Chasnoff

stated that "just because we're aware of this issue, we didn't stop our efforts to

gather materials."[12]   Moreover, Barry Chasnoff speaking about the electronic

documents stated "we are not opposed to whatever happens to these documents.

We just want to be sure we comply with orders. . . . Our position on these

documents is, one of neutrality."[13]

    3.    Also in the telephonic hearing on June 15, 2010, Judge Atlas Ordered

that Mr. Stanford seek production of these documents in Judge Godbey's Court.

Judge Atlas denied Stanford's Motion for Production and granted Akin Gump's

Motion for Reconsideration.  Notably, Judge Atlas said that she could not "speak

for Judge Hittner about something Judge Hittner would have to decide on the

criminal side," with regards to production.[14]

    4.    On June 21, 2010, Judge Godbey granted in part and denied in part

the motion to produce documents by Mr. Stanford.  Judge Godbey Ordered that

"Receiver Ralph S. Janvey is authorized to produce to Robert S. Bennett the ***paper***

---

[9] June 15 Tr. at 18.
[10] June 15 Tr. at 17, 18.
[11] June 15 Tr. at 17.
[12] June 15 Tr. at 15, 16. .
[13] June 15 Tr. at 17.
[14] June 15 Tr. at 24.

*files* concerning Akin, Gump, Strauss, Hauer & Feld, LLP's representation of Stanford International Bank, Ltd. ("SIB") and its affiliated entities, that were at the time the Motion was filed, in the possession of Akin, Gump, Strauss, Hauer & Feld, LLP ("Akin Gump") and which are now in the Receiver's possession (the "Documents")."[15]

5.     Movant received some documents from Akin Gump through his attorney of record, Robert S. Bennett, on June 22, 2010.[16]   The documents constituted a total of three banker boxes.  However, billing statements were not included as part of the documents delivered.  Akin Gump provided some but not all billing documents via email on June 24, 2010.[17]   Akin Gump provided the remaining billing statements on Friday June 25, 2010.[18]

6.     Mr. Stanford is now asking for the email exchanges, and any thing remaining in the Stanford, Stanford Financial Group, and affiliates client file in the possession of Akin Gump that has not been previously produced to the receiver, such as "electronic archives for electronic records pertaining to engagements"[19] between Stanford, Stanford Financial Group, SIB, and related entities or affiliates.

---

[15] *See* Order Granting in Part and Denying in Part R. Allen Stanford's Emergency Motion for Production of Documents, No. 3:09-cv-0298, *SEC v. Stanford Int'l Bank et al.* (N.D. Tex. June 21, 2010), attached as Exhibit "E."
[16] *See* Akin Gump's letter dated June 21, 2010, attached as Exhibit "F."
[17] *See* email FW: Akin Gump Billing Statements, attached as Exhibit "G."
[18] *See* email FW: Stanford - Invoice, attached as Exhibit "H."
[19] *See* Exhibit "A" at 9.

7.      Mr. Stanford is also asking for any documents received by Akin Gump from Underwriters, which indicate good financial standing, financial review, compliance, and/or any type of financial audit upon Stanford, Stanford Financial Group, and/or related entities in order to help with the advancement of any criminal defense theory.

8.      The electronic records are the only things that Akin Gump has alleged take "many days if not weeks to produce." [20]   However, Akin Gump has admitted to having notice of production of these documents since June 9, 2010.  It is now July 27, 2010, and that is why Movant is now asking for production of these documents on August 17, 2010, three weeks from today.   Production of these documents within this time is not unreasonable as Akin Gump has led this Court to believe.

9.      Mr. Stanford served Barry Chasnoff with a Subpoena Duces Tecum on June 28, 2010.  Akin Gump moved to quash Stanford's Subpoena Duces Tecum on June 29, 2010.  Stanford submitted a Response to Akin Gump's Motion to Quash on June 30, 2010.  This Court Ordered a Stay on the Subpoena on June 30, 2010 and Granted Akin Gump's Motion to Quash Stanford's Subpoena on July 15, 2010.

---

[20] *See* Exhibit "A" at 9.

## **INTRODUCTION**

Akin Gump has been on notice that Mr. Stanford is requesting electronic documents related to representation of Stanford Entities and himself personally since June 9, 2010.  Previously, Akin Gump was able to quickly produce twelve years of Stanford's paper client files in under a week.[21]  These electronic documents that are requested are necessary for his criminal defense related to financial transactions and a possible advice of counsel defense.  The modified Subpoena complies with the factors stated in *United States v. Nixon*.  418 U.S. 683, 697-98 (1974)**.**  Therefore**,** Mr. Stanford asks this Court to reconsider its Order Granting Akin Gump's Motion to Quash Stanford's Subpoena and Order Akin Gump to comply with the modified Subpoena attached herein.[22]

## **ARGUMENT**

The modified Subpoena complies with *United States v. Nixon*.  418 U.S. 683, 697-98 (1974).  In *Nixon*, the court "turn[ed] to the question whether the requirements of Rule 17(c) [had] been satisfied" after President Nixon filed a Motion to Quash a Subpoena Duces Tecum.  *Id*. at 698.

The Supreme Court in *Nixon*, first examined Rule 17 (c):

---

[21] The one week timeline is Judge Godbey's Order on June 21, 2010 to the last production of billing statements by Akin Gump on June 25, 2010.

[22] See Exhibit "I."

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein.  The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.  The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

*Nixon*, 418 U.S. 683, 698; Fed. R. Crim. P. 17 (c).  Moreover, "a subpoena for documents may be quashed if their production would be 'unreasonable or oppressive' but not otherwise."  *Id*. at 698.  There are certain fundamental characteristics of a subpoena duces tecum in a criminal case: (1) it is not intended to provide a means of discovery in criminal cases; (2) its chief innovation is to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.[23]  *Id*. at 698–99.  In order to require production prior to trial,

---

[23] In *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 n.5, the Supreme Court quoted a statement of a member of the advisory committee that the purpose of the Rule [17 (c)] was to bring documents into court 'in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose . . . of enabling the party to see whether he can use (them) or whether he wants to use (them).  *See United States v. Nixon*, 418 U.S. 683, at 700 n.11 (1974). "The Manual for Complex and Multidistrict litigation published by the Federal Judicial Center recommends that use of Rule 17(c) be encouraged in **complex criminal cases** in order that each party may be compelled to produce its documentary evidence well in advance of trial and in advance of the time it is to be offered." *Nixon,* 418 U.S. at 699.  (*Emphasis added*).

the moving party must show that: (1) the documents are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition." *Id*. at 699-700.

The Movant in *Nixon* needed to "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity. Mr. Stanford's Subpoena complies with the requirements of *Nixon*. Accordingly, this Court should reconsider its Order Granting Akin Gump's Motion to Quash Stanford's Subpoena and Order Akin Gump to comply with the modified Subpoena herein.[24]

1. **Stanford's Subpoena is Relevant, Admissible and Specific.**

Stanford's Subpoena requests documents that are relevant to the criminal case, admissible as evidence into the criminal case, and requested in the subpoena with sufficient specificity. Therefore, this Court should reconsider its Order Granting Akin Gump's Motion to Quash Stanford's Subpoena and Order Akin Gump to comply with the modified Subpoena herein.

---

[24] "In a case such as this, however, where a subpoena is directed to a President of the United States, appellate review, in deference to a coordinate branch of Government, should be particularly meticulous to ensure that the standards of Rule 17 (c) have been correctly applied." *Nixon*, 418 U.S. at 700.

### a. Mr. Stanford's request is for information that is relevant to his indictment.

The documents that Mr. Stanford seeks in the subpoena are relevant to the indictment.  Mr. Stanford "must show a 'sufficient likelihood' that the documents sought are 'relevant to the offenses charged in the indictment.'" *United States v. Wells*, 2005 WL 3822883 (E.D. Cal. 2005) at *2 (quoting *Nixon*, 418 U.S. at 700). Clearly, the information that Mr. Stanford seeks is relevant to his indictment.  The government has alleged that Mr. Stanford committed wire fraud, mail fraud, and money laundering.  Because Akin Gump represented SIB, Stanford Financial Group ("SFG), and Stanford Venture Stanford Venture Capital Holdings in a variety of deals involving the transfer of assets among Stanford's companies in addition to aiding the restructuring of Stanford corporations, these documents are valuable to Stanford's defense.  The documents will help him prepare for a defense of reliance on advice of counsel, show the existence of legitimate businesses. Further, this information is essential in establishing the custom and practices of SFG and affiliates, which may be used against the government's accusations that Stanford "directed, managed, and monitored" investments.[25]

As a general rule, advice of counsel, when given on full disclosure of all the facts and followed in good faith, may be a matter to be considered by the jury in determining the appellant's guilt.  *United States v. Thaggard*, 477 F.2d 626, 632

---

[25] *See* Indictment at 8, attached as Exhibit "J."

(5th Cir. 1973).  The defense may be relevant to the defendant's intent to violate the law, namely that "the defendant, on the basis of counsel's advice believed his conduct to be lawful and thus could not  be found to have had unlawful intent." U*nited States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989). Furthermore, in order to use the advice of counsel defense, the defendant must be charged with a crime that requires willfulness, i.e., an "intentional violation of a known legal duty."  *United States v. Masat*, 958 F.2d 932, 932 (5th Cir. 1991). The mail and wire fraud statutes require a willful or intentional state of mind.  18 U.S.C. §§ 1341 and 1343.  Section 1341 criminalizes the devising of "any scheme or artifice to defraud" or any scheme "for the purposes of obtaining money or property by false or fraudulent pretenses, representations, or promises" and the use of the mails in executing such a scheme.  Section 1343 criminalizes the same kind of scheme or artifices and the use of wire, radio or television in executing the particular scheme or artifice.  Therefore, reliance on advice of counsel is a relevant defense that Mr. Stanford is entitled to pursue.

Second, Akin Gump gave legal advice, and conducted a "roll up" of several Stanford entities. Akin Gump is likely to have financial documents and/or information relating to the structure of Stanford Financial Group that are relevant in order to prove the legitimacy of Stanford Financial Group.  Akin Gump

completed a "roll up" transaction where it merged several of SFG entities.[26]  Akin Gump handled this financial transaction.  Additionally, the government has alleged mail fraud due to artificially valued real estate.[27]   These entities could be considered "artificially valued real estate."   Therefore, any and all financial information regarding Stanford, SFG and affiliates and in the possession of Akin Gump is probative of the legitimacy of Stanford businesses.   The relevancy requirement is satisfied.

Third, communications between Akin Gump and Stanford Financial are probative of the internal structure of directors and officers that can be used to demonstrate a pattern of that Mr. Stanford was acting as a figurehead for the corporation while others were in charge of financial dealings and transactions. This can prove helpful to Mr. Stanford's defense because he is accused of having directed, managed, and monitored Tier III investments.[28]   Akin Gump's communications with Mr. Stanford and Stanford employees, in capacity as counsel, carry a wealth of knowledge related to the financial and operational structure of Stanford Entities.

---

[26] *See* Motion to Disqualify, No. 09-cv-03712, *Laura Pendergest-Holt et al. v. Certain Underwriters at Lloyd's of London* at 7-11 (S.D. Tex. July 2, 2010), attached as Exhibit "K."

[27] *See* Exhibit "J" at 8.

[28] *See* Exhibit "J" at 8.

Fourth, the Subpoena request for documents in Akin Gump's possession "regarding Lloyds of London Underwriters and referencing Stanford, Stanford Financial Group, and related entities from 1998 to 2009" is relevant to the criminal case before this Court. Mr. Stanford needs any and all documents that will help him establish the legitimacy of his companies. Akin Gump is likely to have such documents since its client, Lloyds of London ("Lloyds"), contracted with Mr. Stanford for a 100 million dollar D&O policy. Before making such an agreement, Lloyds undoubtedly conducted an in-depth review of Mr. Stanford's companies. Therefore, Mr. Stanford's request for this information from Akin Gump is certainly relevant to his defense. Although Mr. Stanford does not know that Akin Gump possesses this information, it is reasonable to suspect that when Lloyds employed Akin Gump, it provided Akin Gump with documentation of Mr. Stanford's companies.

**b. The information Mr. Stanford requests is admissible evidence.**

Relevant evidence is generally admissible. Fed. R. Evid. 402. To the extent that the documents sought might be hearsay, the defense expects them to be admissible as business records. *See* Fed. R. 803(6).

**c. Mr. Stanford's request is specific.**

Mr. Stanford's request is as specific as possible, given that in many instances he has not seen the documents.   "A request is generally sufficiently specific where it limits documents to a reasonable period of time and states with reasonable particularity the subjects to which the document relates" *United States v. R.W. Professional Leasing Serv. Corp.*, 288 F.R.D. 158, 162 (E.D. N.Y. 2005).

> The proponent of a subpoena cannot be expected to identify the materials he seeks in exacting detail, when (as demonstrated by the fact that he must employ a subpoena) he does not have access to them.  Instead Rule 17 (c) requires a party to provide details sufficient to establish that the subpoena's proponent has made a good-faith effort to obtain evidentiary material and is not engaged in the proverbial "fishing expedition."

*United States v. Reyes,* 239 F.R.D. 591, 599 (N.D. Cal 2006); *see also Nixon*, 418 U.S. at 699-700; *see also* U*nited States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (it is ***unreasonable to expect an extremely detailed*** description of the connection between the documents and the facts at issue in the case since the requesting party "has not yet seen the documents") (*emphasis added*).  In general, all that is required is that the description "provide[d] the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994).  Akin Gump states that it

has only "represented a few Stanford Entities."[29] Therefore, it should not be difficult for Akin Gump to identify and produce these documents. *See also Nixon*, 418 U.S. at 700 ("Of course, the contents of the subpoenaed tapes could not at that stage be described fully by the [Moving party], but there was a sufficient likelihood that each of the tapes contained conversations relevant to the offenses charged in the indictment.").

The documents requested in the Subpoena are specific because we know in what transactions Akin Gump represented Stanford, Stanford Financial Group, and related entities.[30]   The court in *Williams* accepted the modification of the subpoena, which was narrowed to "documents relating to the allegations made by [Moving party] which gave rise to this suit as well as to Williams' suit . . . ."  178 F.R.D. 103, 109-10 (N.D. Tex. 1998) (**"Modification of a subpoena duces tecum is preferable to quashing it."**) (*emphasis added*); Fed. Rules Civ. Proc. Rule 45(c)(3)(A)(iv), 28 U.S.C. 2009; *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994).  The court in *Williams* found that this modification was considerably narrower and more focused in its temporal and substantive scope.  *Williams*, 178 F.R.D. at 110.   Similarly, Mr. Stanford's request for "all documents however maintained or stored related to Akin Gump's representation of Robert Allen Stanford, Stanford Financial Group and related entities from 1998 to 2009

---

[29] *See* Exhibit "L" at 2.
[30] *See* Declaration of Barry A. Chasnoff, attached as Exhibit "L."

including internal memos, financial information, work products, communications, emails, and attorney notes" and other request in the Subpoena are limited enough in temporal scope, can be easily identifiable, and parallel the accepted language in *Williams*.

2. **The Documents are Not Otherwise Procurable Reasonably in Advance of Trial by Exercise of Due Diligence.**

Akin Gump has indicated that the documents requested are "wholly irrelevant and immaterial to Mr. Stanford's criminal defense," although defense counsel has insisted otherwise.[31]   In Akin Gump's Emergency Motion to Quash [Stanford's] Subpoena Duces Tecum, Akin Gump claimed the subpoena is "unreasonable, oppressive, and . . . issued in bad faith."[32] Furthermore, Akin Gump argues that the subpoena is only for discovery of "something to support [Stanford's] frivolous motion [to disqualify],"[33] despite the fact that Mr. Stanford has already filed his Motion to Disqualify Akin Gump.[34]   Additionally, Akin Gump states that they have "fully complied with Judge Atlas' previous orders in the Coverage Action and has turned over to Mr. Bennett the client files and billing records from the firm's prior, limited representation of Stanford entities," however,

---

[31] *See* Akin Gump's Emergency Motion to Quash Robert Bennett's Subpoena Duces Tecum, No. 4:09-cv-342-01, Dkt. 258 at 1 (herinafter "Akin Gump's Motion to Quash").
[32] Akin Gump's Motion to Quash at 1.
[33] *See* Akin Gump's Motion to Quash at 2.
[34] *See* Exhibit "K."

the criminal case although related to the coverage case is independent of the Coverage case.  Judge Nancy Atlas has indicated that she "can't speak for Judge Hittner" with regards to production of documents.[35]

Akin Gump has refused to provide the requested information, which Mr. Stanford cannot get from another source.  Akin Gump has not given these documents to the Receiver, but rather, kept the information within its possession.

3. **Mr. Stanford cannot properly prepare for trial without production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial.**

Mr. Stanford needs these documents prior to trial since the review of these documents will take a considerable amount of time.  Additionally, Mr. Stanford is needed to personally review the documents[36] and due to his condition and the conditions of the Federal Detention Center ("FDC") Movant request that these documents be provided prior to trial  The complexity of the transactions Akin Gump participated in on behalf of Mr. Stanford, Stanford Financial, and affiliates contributes to the necessity of a thorough review of the documents prior to trial. Therefore, because of Mr. Stanford's condition, the conditions at the FDC, and the complexity of the transactions performed by Akin Gump, Movant appropriately seeks these documents prior to trial.   "Where evidence relevant to guilt or punishment is in a third party's possession and is too massive for the defendant to

---

[35] June 15 Tr. at 24.

review unless obtained prior to trial, pre-trial production through Rule 17(c) is necessary to preserve the defendant's constitutional right to obtain and effectively use such evidence at trial." *United States v. Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997).

### a.  Conditions of the FDC

Mr. Stanford's continued detention at the FDC is detrimental to conducting discovery in this, one of the most voluminous case in history.  Movant has been deprived of the requisite confidentiality of his discussions with his attorneys by enforced institutional review of every document which his attorneys wished to discuss with him during their meetings.[37]  The lack of privacy at the FDC and other conditions of the FDC make it difficult for Movant to quickly review documents brought before him.  Therefore, Movant asks for production of the Subpoenaed documents prior to trial in order to have a reasonable time to inspect the documents, help develop his defense, and avoid delays at trial.

There is a lack of privacy at the FDC during Attorney-Client meetings, which hinders the progress of document review and impedes discussion.[38]

---

[37] *See* Declaration of Nhen Nguyen at 2-6, attached as Exhibit "M."

[38] The attorney-client privilege promotes the public interests in the administration of justice and observation of the law by encouraging full and frank discussions between client and attorney.  *See In re Public Defender Serv.,* 831 A.2d 890, 900 (D.C. 2003).

On at least two occasions during an attorney-client meeting, Mr. Stanford, his attorneys and legal staff were put in a room which was adjoining a library.  The two rooms were separated by a wall which had an approximate one foot by three foot opening, "a hole in the wall," leaving the meeting room entirely exposed.  The opening allowed both Mr. Stanford and his attorneys to look and listen to activities/conversations in the library and for the persons in this library to look and listen into activities/conversations in the "attorney-client" meeting room.  At one point a woman appeared in the other room and was going through books in the library.  She was in the other room, but was only about eight feet away from the table where Mr. Stanford and his legal team were to discuss private attorney-client information.  She was clearly visible from the "attorney-client" room since she was standing right in front of the "hole in the wall/window opening."  Moreover, her walkie-talkie was audible from the attorney-client room.  This is one example of the difficulty encountered in meeting with Mr. Stanford on a routine basis.  Additionally, because of the health condition of Mr. Stanford, he has difficulty regaining focus and overcoming his frustration of constantly being observed even when he is in an attorney-client meeting.

Because of this lack of privacy, constant distractions, and restriction of freedom, the conditions of the FDC are not as productive as sought, and Movant asks for this Court to Order Akin Gump to comply with the Modified Subpoena

attached herein.   Exhibit "I." *See* Albert W. Alschuler, *Preventive Pretrial Detention and the Failure of Interest-Balancing Approaches to Due Process*, 85 Mich. L. Rev. 510, 516 (Dec. 1986) ("incarceration affects a defendant's appearance and impedes his ability to consult lawyers, locate witnesses, and otherwise prepare a defense. The available empirical studies of effects of detention may not be conclusive, for perfect controls are unattainable. Nevertheless, these studies strongly suggest that pretrial incarceration makes both conviction and a severe sentence more likely").

### b. Mr. Stanford's Condition

Mr. Stanford's personal review of the documents is crucial to defense counsel's understanding of the numerous relevant financial and business records that would be provided by Akin Gump.  The documents to be produced by Akin Gump will not self-explanatory and will be difficult or even impossible to understand without the guidance of Movant, with his knowledge of the workings of the worldwide Stanford-related companies.  This was the case with the limited documents that Akin Gump has already delivered.  Movant can, for example, call counsel's attention to documents which are of significance to a potential defense of reliance on counsel which defense counsel might otherwise overlooked.  He can explain to counsel the context of the various documents and what they mean in that context, as well as the relationships between various transactions and businesses,

20

which counsel may be unable to discern without Mr. Stanford's direct guidance and assistance. The same applies to the emails that should be provided.

However, Movant's physical and psychological conditions have deteriorated, and therefore the production of these documents is needed before trial where Movant would have sufficient time to review them. Movant has been physically assaulted; he has suffered significant medical injury and psychological debilitation. Movant's core cognitive faculties have been diminished by the conditions of confinement in a high-security prison which, in a myriad of ways detailed, made it extremely difficult if not impossible to prepare for his criminal trial before this Court. Because of the adverse condition of Movant, more time than usual is needed to review documents with him.

### c. Complexity of the Transaction

Akin Gump was involved in complex financial transactions on behalf of Mr. Stanford, Stanford Financial Group, and/or related entities. Reviewing these complex transactions takes a long time to decipher and put in perspective. Based on some of the documents that we already received from Akin Gump we know that Akin Gump represented Stanford, Stanford Financial and related entities in a "roll up" of several Stanford entities. According to the declaration of Barry Chasnoff Akin Gump represented SFG in: (1) intellectual property, patent, and trademark matters (2) Representation in connection with Stanford Financial Group's

investments in four telecommunications companies.[39]   Barry Chasnoff also states that Akin Gump represented Caribbean Sun Airlines, a Stanford entity in Trademark transactions, and Akin Gump also represented Stanford 20/20 LLC in "regulatory and compliance engagement[s]."[40]

This case is voluminous already as is shown by the million of documents on I-connect provided by the Government.   Movant asks for the pretrial production of these documents in order to be able to have sufficient time to review the complex documents prior to trial.

Because of the conditions at the FDC, Mr. Stanford's Condition, and the complexity of the transactions that Akin Gump was involved in**,** Movant asks for this Court to Order Akin Gump to comply with the Subpoena herein.[41]

4.   **Mr. Stanford's Subpoena is made in good faith and is not intended as a general "fishing expedition."**

This request is not a "fishing expedition" and is made in good faith, because the documents sought via the Subpoena are relevant, admissible, and specific as stated above.     *United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006) ("[S]ubpoenas are not meant to be tools of discovery in criminal cases, but are instead means by which to expedite the trial by providing a time and place prior to

---

[39] Exhibit "L."
[40] Exhibit "L.".
[41] Exhibit "I."

trial for the inspection of subpoenaed materials.  To require production before trial, then, a moving party must show . . . that the documents are evidentiary and relevant and that the application is made in good faith and is not intended as a general fishing expedition."); *see also United States v. Arditti*, 955 F.2d 331, 345–46 (5th Cir. 1992) (Finding that it borders a fishing expedition when the Moving party "failed to establish with sufficient **specificity** the evidentiary nature of the requested materials.  The moving party has demonstrated why he wants to look into the material, but he has not set forth what the subpoena's materials contain, forcing the court to speculate as to the specific nature of their contents and its relevance.") (emphasis added).  In this case, Movant has identified the documents sought and Akin Gump has confirmed what documents it possesses via Barry Chasnoff's Declaration.[42]  Therefore, this request is made in good faith because the documents sought are relevant, specific and admissible in the criminal case.

### 5.  The Information Requested by Mr. Stanford is Not Unduly Burdensome

There is not an undue burden on Akin Gump by providing these documents, because the subpoenaed documents are relevant and specific, the need by Mr. Stanford is great and outweighs any burden on Akin Gump.  Because relevancy and specificity have been addressed above, this section will compare the burden imposed to the necessity of production.

---

[42] Exhibit "L."

A person moving to quash or modify a subpoena duces tecum has the burden of proof, and must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive. *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citing Fed. R. Civ. P. 45(c)(3)(A)(iv)). "Whether a burdensome subpoena duces tecum is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Id*.  The Court has recognized the "extraordinary nature and complexity of this case, the extent and gravity of the charges levied against Stanford, the hundreds of thousands of records involved, and the enormous amount of time no doubt necessary to review those documents and adequately prepare a defense."[43]  The documents in Akin Gump's possession are relevant to various aspects of Movant's defense.  These documents can prove to be exculpatory, and therefore Movant's need for production is great. The complexity of this criminal case and the importance of the documents in Akin Gump's possession outweigh the burden placed on Akin Gump in production of the documents.

The burden on Akin Gump is not great.  *See Id*. at 109 ("Among factors the court may consider in determining whether a subpoena duces tecum imposes an undue burden are: relevance; need of party for the documents; *breadth of document*

---

[43] *See* Judge Hittner's Order, No. 4:09-cv-342-01, Dkt. 133, (S.D. Tex. Sep. 25, 2009).

*request;* time period covered by it; and particularity with which the documents are described and burden imposed"). Akin Gump has stated that it holds a position of neutrality with regards to the electronic Stanford files. With regards to the emails, Akin Gump has had notice of Movant's request for these documents since June 9, 2010 by their own admission. The time given for the production of the documents was Akin Gump's only concern previously in the coverage case. However, Movant's need for pretrial production, as explained above, outweighs the burden placed on Akin Gump by production of documents by August 17, 2010 especially when Akin Gump has had over a month to gather the emails. Furthermore, the need for the production of financial compliance documents and/or documentation of financial reviews conducted by Underwriters and in the possession of Akin Gump outweighs any burden on Akin Gump to produce since they are essential to establishing a defense against the government's criminal allegations.

Additionally, undue burden can be found if the subpoena duces tecum is facially overbroad. *Id.* at 109. In *Williams*, the subpoena was overbroad because it did not include a time restriction nor did it specify the types of documents being subpoenaed. *Id*. at 109, 110. The subpoena in *Williams* required production of "[a]ny and all documents relating to Erik Williams, Michael Irvin, and Nina Shahravan." However, the court recognized that the question of undue burden is fact specific and must be assessed on a case-by-case basis. *Id*. at 110 n.6 (*citing*

*Cf. Mack v Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) ("For the most part, there are no barbed-wire fences making the precise boundaries of pretrial discovery.   Management of discovery is a largely empirical exercise, requiring judges to balance inquirer's right to know against the responder's right to be free from unwarranted intrusions, and then to factor in systemic concerns. Limits can be best be set case by case.")).   In looking to *Williams*, Movant's subpoena for all relevant documents that Akin Gump has in its possession relating to Stanford, SFG and related entities is not unduly burdensome.   Rather, the request has specificity and Akin Gump has already located the requested information.

Lastly, as a general rule, a witness or a recipient of a subpoena duces tecum is required to bear the cost of compliance.   *In re Grand Jury etc.*, 555 F.2d 1306, 1308 (5th Cir. 1977).   Since some costs can be anticipated in complying with any subpoena duces tecum, Fed. R. Crim. P. 17(c)'s provision that a trial court may quash a subpoena if compliance is unreasonable or oppressive must be read to mean that in the main run of cases the cost of compliance will be assumed ***as part of the public duty of providing evidence***.   *Id. (emphasis added).*

6. **Mr. Stanford has a Constitutional Right to Obtain and Present Evidence**

A defendant in a criminal case "has both a Constitutional right to obtain evidence which bears upon the determination of either guilt or punishment, and a

Sixth Amendment right to process." *United States v. Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997).  As the Supreme Court has explained, fundamental fairness requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense.  To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485 (1984) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)); see also *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defendant against the State's accusations.").  Movant could remain incarcerated for the rest of his life, and the allegations by the Government are serious. Therefore, Movant should be afforded an opportunity to receive, review, and potentially present before this Court exculpatory evidence.

## CONCLUSION

Mr. Stanford is accused of 21 counts of mail fraud, wire fraud, obstruction of an SEC investigation, and conspiracy thereto and money laundering.  The documents requested are relevant, admissible, and specific to the criminal case. The production of the documents is needed prior to trial, and the necessity of Mr. Stanford outweighs the burden placed on Akin Gump.  For these reasons, Mr. Stanford seeks production of the Subpoenaed documents prior to trial and

respectfully asks for this Court to reconsider its Motion Granting Akin Gump's Motion to Quash and Order Akin Gump to comply with the Subpoena attached herein.  Exhibit "I."

July 27, 2010                                    Respectfully submitted,


                                                     /s/  Robert S. Bennett
                                                 ROBERT S. BENNETT
                                                 Federal ID. No. 465
                                                 TBA No. 02150500
                                                 BENNETT NGUYEN JOINT VENTURE
                                                 515 Louisiana St. Suite 200
                                                 Houston, TX 77002
                                                 713.225.6000
                                                 713.225.6001 (FAX)

                                                 Attorney for Defendant,
                                                 ROBERT ALLEN STANFORD

## **Certificate of Conference**

I certify that I have conferenced with Greg Costa who is opposed to the filing of this Motion.   I certify that I have conferenced with Barry Chasnoff and Neel Lane at Akin Gump who are opposed to the filing of this motion.

Respectfully submitted,

        /s/  Robert S. Bennett____
ROBERT S. BENNETT
Federal ID. No. 465
TBA No. 02150500
BENNETT NGUYEN JOINT VENTURE
515 Louisiana St. Suite 200
Houston, TX 77002
713.225.6000
713.225.6001 (FAX)

Attorney for Defendant,
ROBERT ALLEN STANFORD

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

     /s/ Robert S. Bennett____

ROBERT S. BENNETT

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CR. NO.4:09-342-01 |
| | § | |
| | § | |
| ROBERT ALLEN STANFORD | § | |

## <u>ORDER</u>

Upon consideration of the Defendant's Motion to Reconsider Granting Akin Gump's Motion to Quash Stanford's Subpoena and Order Akin Gump to comply with Stanford's Modified Subpoena, the responses and replies thereto, the evidence submitted by all parties, and the arguments of counsel, the Court is of the opinion that Mr. Stanford's motion is GRANTED in its entirety.

It is therefore ORDERED that Akin Gump comply with the modified Subpoena attached herein.  Exhibit "I."

**SIGNED** at Houston, Texas, this _____ day of _____, **2010**.

_____
David Hittner
United States District Judge