IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA PENDERGEST-HOLT, R. ALLEN STANFORD, GILBERTO LOPEZ, JR. and MARK KUHRT, *Plaintiffs*, | § § § § § § | |
| vs. | § § | CIVIL ACTION NO. 4:09-cv-03712 |
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and ARCH SPECIALTY INSURANCE COMPANY, *Defendants*. | § § § § § | |

## DECLARATION OF BARRY A. CHASNOFF IN SUPPORT OF CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON AND ARCH SPECIALTY INSURANCE COMPANY'S EMERGENCY MOTION FOR RECONSIDERATION OF ORDER OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

I, Barry A. Chasnoff, declare as follows:

1) My name is Barry A. Chasnoff. I am over the age of eighteen (18), of sound mind, and am fully capable of making this declaration. I have personal knowledge of all facts stated in this declaration, and all facts herein are true and correct. If called upon to do so, I am competent to testify to these facts.

2) I am lead counsel for Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company (collectively, "Underwriters") in the above captioned matter. I also am a partner and serve as the General Counsel of Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump").

3) When Underwriters approached me about representing them in the insurance related matters arising out of Stanford Financial Group and its affiliates' (the "Stanford Entities") alleged Ponzi scheme, Akin Gump immediately investigated to determine whether any conflict of interest existed. The investigation concluded that no conflicts existed.

4) On June 9, 2010, I received an email request from Plaintiff R. Allen Stanford's counsel, Mr. Robert Bennett, that Akin Gump produce all


DEFENDANT'S EXHIBIT

documents in its possession arising out of Akin Gump's representation of R. Allen Stanford and the various Stanford Entities.

5) Upon receipt of the this email, Akin Gump began the process of again reviewing records for potential prior engagement by either Mr. Stanford or any of the nearly one hundred thirty (130) Stanford Entities listed as insureds in the D&O Policy. This was the first step necessary to begin collecting documents responsive to Mr. Bennett's request.

6) Our review of Akin Gump's records disclosed that Akin Gump never performed any services, entered any engagement, or represented R. Allen Stanford in his individual capacity.

7) Akin Gump has only represented a few Stanford Entities. The subject matter of these former representations is not related to the matters before this Court, and none of these matters involved the same issues as this case. Akin Gump's past representations are:

   a) <u>Stanford Financial Group</u>:

      i) Intellectual property, patent and trademark matters:

         (1) "Eagle Design" trademark owned by Stanford Financial Group. Last billed October 2006.

         (2) "Stanford Financial Group" trademark owned by Stanford Financial Group. Last billed October 2006.

      ii) Representation in connection with Stanford Financial Group's investments in four telecommunications companies:

         (1) Blue Sky Communications, Inc.: Last billed March 2003.

         (2) OPM Auction Company: Last billed December 2003.

         (3) Telecom Wireless Solutions, Inc.: Last billed February 2004.

         (4) America Samoa Telecom, LLC: Last billed February 2004.

   b) <u>Caribbean Sun Airlines</u>:

      i) Trademarks owned by Caribbean Sun Airlines, Inc. Last billed July 2004.

    c) <u>Stanford 20/20 LLC</u>:

        i) Regulatory and compliance engagement. Assisted Stanford 20/20 LLC in safeguarding compliance with U.S. sanctions and other trade controls associated with Stanford 20/20's effort to have Cuba participate in the Stanford 20/20 Cricket Tournament held in Antigua. Last billed October 2008.

8) The Receiver, designated by the United States District Court for the Northern District of Texas, controls all of the various Stanford Entities. I spoke with the Receiver about this request for documents, and the Receiver has not waived attorney-client privilege or otherwise consented to Akin Gump providing its documents related to the above listed representations.

9) Akin Gump has always understood that the Receiver controls the Stanford Entities, including their attorney-client privilege, and transferred various files to the Receiver. For instance, on January 10, 2010, Akin Gump transferred certain of the Stanford Entities' trademark files to the Receiver's counsel.

10) In his letter to the Court, Docket No. 131, Mr. Stanford represents that Tony Nunes was a "[f]riend who set up Stanford's Corporate Structure and Stanford International Bank 1980's to 2009. . . . Throughout this time, he was in constant contact with Stanford in not only a social friendly relationship, but in a client counsel relationship." On the contrary, our records reflect that Mr. Nunes never opened a client matter for Mr. Stanford while at Akin Gump. To confirm our records, I spoke with Mr. Nunes, who is no longer with Akin Gump. He confirmed that he never opened any files for R. Allen Stanford or any of the Stanford Entities while at Akin Gump. According to Mr. Nunes, he never met with Mr. Stanford while an attorney at Akin Gump; Mr. Stanford never requested that Mr. Nunes represent him; and Mr. Stanford only contacted him seeking his support of Mr. Stanford's motion to disqualify Baker Botts, filed in the United States District Court for the Northern District of Texas.

11) I have had the opportunity to review Docket No. 146, Mr. Stanford's Response to Underwriters' Emergency Motion for Reconsideration. In this Response, Mr. Stanford alleges that "[m]any if not all representations by Akin Gump of Stanford's Companies involved direct dealing with Mr. Stanford and his closely held corporations." Resp. at 4. Since receiving Mr. Stanford's document request, the lawyers working on this case interviewed as many attorneys as possible to determine whether the representation was of a Stanford Entity or Mr. Stanford. With one exception, none ever spoke to Mr. Stanford. The one attorney who did

speak to Mr. Stanford is Mr. Wynn Segall, who never met Stanford but spoke to him a few times over the phone. As explained in paragraph 12, below, Mr. Segall was instructed that his primary contact on the Stanford 20/20 matter was Ms. Yolanda Suarez. Thus, this unsworn statement by Mr. Bennett represents yet another falsehood presented to this Court.

12) Mr. Bennett's Response later states that "Akin Gump represented Stanford individually," and uses the billing statements for Stanford 20/20 as an example. Resp. at 7. Again, this is incorrect. Akin Gump represented Stanford 20/20 as described above in paragraph 7. Julie Hodge signed the engagement agreement, on behalf of Andrea Stoelker, President of Stanford 20/20. A true and correct copy of this engagement letter is attached as Exhibit 1. Shortly after receiving the engagement letter, Stanford 20/20 informed Akin Gump that Yolanda Suarez would be the "primary point person." A true and correct copy of this letter is attached as Exhibit 2.

13) I declare under penalty of perjury, under the laws of the United States of America, that the foregoing statements made in this declaration are true and correct.

Executed this 14th day of June, 2010, in San Antonio, Texas.

_____
Barry A. Chasnoff