AFFIDAVIT OF NHAN H. NGUYEN, MD, JD, MSF

THE STATE OF TEXAS              §
                                §
THE COUNTY OF HARRIS            §

I, Nhan H. Nguyen, MD, JD, MSF ("Declarant"), am over 18 years old and am a resident of the City of Katy, County of Harris, State of Texas, and do hereby certify, swear or affirm, and declare that I am part of current trial counsel to Mr. Robert Allen Stanford (inmate number 35017-183) and am competent to give the following declaration based on my personal knowledge, unless otherwise stated, and that the following facts and things are true and correct to the best of my knowledge:

I am a licensed attorney with the Texas State Bar. I am also a medical doctor, albeit unlicensed in the State of Texas, and I also have a Master's of Science in Finance. Beginning on February 12, 2010, at the request of his daughter, Ms. Randi Stanford, to Mr. Bob Bennett, I began having routine visits with Mr. Robert Allen Stanford on a weekly and often daily basis at the high-security Federal Detention Center (FDC) in Houston, Texas. I understand Mr. Stanford is facing a 21-count indictment related to his management of the Stanford Financial Group, and Mr. Stanford's case is currently assigned to Southern District Court Judge Hittner. I also understand that Mr. Stanford has had multiple sets of prior counsel in his criminal defense, all of which were not of his explicit choice or initiative with the exception for Mr. Dick Deguerin and current counsel.

During the month of February, an attorney-client relationship was established with Mr. Stanford, eventually leading to the execution of a retained attorney engagement contract for me, along with other attorneys, namely Mr. Robert ("Bob") Bennett, to represent Mr. Stanford to defend the allegations in the indictment. The engagement further became official when Judge Hittner ruled in favor of a Motion for Substitution of Counsel on April 6, 2010.

Having not met Mr. Stanford ever in the past, and from my initial meeting with him in February 12, 2010, it was clear to me that he was suffering from mental fatigue and depression. At the time, Mr. Stanford appeared physically and mentally exhausted,



DEFENDANT'S EXHIBIT M

malnourished and underweight for a typical male of his size and structure, slow in his gait and broad motor movements, and slow in his speech and thoughts. Mr. Stanford's skin pallor was pale and the skin turgor suggested dehydration and lack of nutrition. Additionally, it was observed that Mr. Stanford had difficulty with reading and near vision in his right eye, and he often had to pause while reading and writing due to described "splitting headaches" over his right forehead, both effects presumably attributable to his brutal assault at the Joe Corley Federal Prison in Conroe, Texas and the resulting major surgery on his right orbital structure. While coherent and lucid without many tangential thoughts during these initial conversations in February, Mr. Stanford often repeated the same sentences and topics during the course of a single visit and often over the course of discussions spanning several visits, wherein he forgot that he discussed the exact topics during prior visits.

Our discussions during our meetings entailed a variety of topics, but mainly his experience and issues with prior counsel, his treatment by officers while being detained at the Joe Corley Federal Prison, his treatment by officers while being detained at the FDC, the fact that little to no trial preparation work or discovery has been done on his case since his indictment in June 2009 due to insurance denials of payments to his prior attorneys, and his inability to prepare for trial while being detained due to a host of factors, including his limitations on conducting discovery while being detained, especially the lack of Internet connectivity. Over the course of time from my initial meetings with Mr. Stanford to the date of this affidavit, Mr. Stanford has been observed to have an overall down-trending and continuing deterioration of his mental and emotional well-being (despite episodic moments of clarity and cogency). Mr. Stanford's short, intermediate, and long-term memory has worsened over this period and his mental anxiety and depression has increased. Prison medical personnel have placed Mr. Stanford on seven (7) different types of physical and psychotropic medications, affecting his mental acuity and responsiveness significantly. It would be difficult to ascertain to what extent Mr. Stanford's mental instability is medication-induced as compared to intrinsic mental health etiologies.

Mr. Stanford often falls into self-described "mental black holes", where he is awake and aware but cannot remember anything, and where he is disoriented mentally

and physically, similar to a blackout while being awake. Mr. Stanford describes these episodes occurring while in his cell often at night, and he relates no identifiable triggering factor for the "black holes". I have also witnessed similar episodes firsthand where in the middle of a discussion, Mr. Stanford will immediate cease speaking mid-conversation, appearing lost with a glazed look in his eyes staring at the wall without focus, only to refocus seconds to minutes later asking what was being discussed. Similar episodes are occurring with greater frequency and with greater duration as time progresses. Mr. Stanford's continued overall trend of deteriorating mental and physical health, combined with his inability to focus and work due to his mental status and effects of his medication regimen has resulted in a substantial inability to conduct discovery and prepare for trial, given the criticality of his required participation in trial preparation. Mr. Stanford's contributions are impaired not just for the criminal defense, but also the civil SEC trial with the SEC receiver seizing and liquidating Mr. Stanford's corporate and personal assets as well as a third civil proceeding regarding insurance coverage.

In addition to the challenges in working with Mr. Stanford in trial preparation given his deteriorating mental and emotional well-being, the size and scope of Mr. Stanford's criminal trial increases the trial preparation and discovery difficulties significantly. The complexities of the case involve a multinational conglomeration of multiple numbers of business entities worldwide with thousands of employees, tens of thousands of domestic and international clients, clients' accounts aggregated into over billions of dollars in assets, and hundreds of thousands of financial transactions conducted routinely. Mr. Stanford has intimate knowledge of the inner workings, interrelationships, and complexity of the multinational corporations he helped found and build over a thirty year career. Mr. Stanford's contribution and unfettered access to his criminal defense team in the discovery process and trial preparation strategy are an absolute necessity for his counsel to adequately prepare for trial. Mr. Stanford's acute, stable and coherent mental and emotional well-being are critical to the understanding of Mr. Stanford's businesses that is currently the subject of his indictment.

Compounding the complexity of the case itself, based upon recent court records, there are approximately 8-9 million documents of discovery which can only be accessed and searched via the internet. Discovery documents are continuing to be added to this

total, with approximately 300,000 documents added recently as of the middle of April 2010. While the "hot categories" of documents are presumed to narrow down the total number of discovery documents, there is no current means to ascertain neither the total number of discovery documents within the hot categories nor the total gross number of discovery documents which must ultimately be reviewed prior to the trial date. The "hot documents or categories" only present the documents the government intends to use against Mr. Stanford, and does not include the documents Mr. Stanford needs to review to counter these "hot documents" or other exculpatory documents. Further, there has not been an opportunity for discovery with Mr. Stanford to determine the assertion of a particularized Brady motion, especially in light of a recent OIG published report related to the SEC investigation of Mr. Stanford over the prior seven (7) years.

Compounding the challenges raised through the sheer number of discovery documents is the fact that the documents are searchable and accessible via internet-only connectivity, a resource functionality for which Mr. Stanford does not have access at the FDC and for which are against national policy guidelines of the U.S. Bureau of Prisons concerning inmate access to the internet. There exists no complete repository of discovery documents on an external hard drive that is also searchable and continually updated. Current efforts to warehouse the data apart from the iCONECT database provided by the Department of Justice require internet-only searchable functionality. Additionally, although Mr. Stanford's counsel may bring in laptops and external hard drives to the FDC, there still remains no internet access within the FDC. Without Mr. Stanford's immediate access to these internet-only searchable discovery documents and active participation with his counsel in the search and discovery process, the ability for Mr. Stanford to conduct adequate discovery and prepare for trial is extremely restricted and likely impossible to accomplish.

As of the Motion for Substitution of Counsel hearing on April 6, 2010, Judge Hittner was insistent upon the criminal trial occurring on January 24, 2011. As of the date of this affidavit approximately nine (9) months remain until trial. While trial counsel has access to the 8-9 million discovery documents via the iCONECT internet-only searchable database, Mr. Stanford continues to be deprived of this accessibility and cannot actively interact with trial counsel in this discovery process, despite his mental

state. To allow Mr. Stanford an opportunity to review these documents would equate to physically reviewing approximately 30,000 documents per day through the trial date – a very dubious possibility and unlikely undertaking. To adapt, trial counsel is currently manually bringing in discovery boxes received from prior counsel for Mr. Stanford's review on a daily basis. However, given Mr. Stanford's fragile mental and emotional state, it is a challenge accomplishing half of one box of discovery on a daily basis. Additionally, trial counsel has been exerting significant efforts in understanding and using the iCONECT along with the Orange Legal Technologies on-line database systems to manage the electronic discovery process; although technological and logistical issues have hampered this process. Mr. Stanford's active and comprehensive contribution to the discovery process and trial preparation with trial counsel is critical given the urgency and time constraints imposed by a January 2011 trial date and a trial that is estimated to last four to six months or longer.

In addition to the urgency of the trial date, practical issues at the FDC limit Mr. Stanford's ability to effectively work with trial counsel for discovery and trial preparation. Mr. Stanford is limited to carrying no more than one ream of paper or approximately 500 sheets of paper to and from his cell. He is limited to approximately three (3) cubic feet of non-secure storage space in his cell. Paper clips, alligator clips, and other means of organization of documents are disallowed, with the exception of red rope accordion folders. Mr. Stanford's documents and files are non-secure and subject to inspection by officers in risk of breaching his attorney-client privilege and the confidentiality of attorney-client work product. Prison officers are taking upon themselves the determination of what does and does not constitute attorney-client privileged documents prior to allowing Mr. Stanford to keep documents delivered by trial counsel. Mr. Stanford is often singled out by the prison officers during attorney visits, requiring him to be seated during each and every attorney visit in the same single seat in the same echoing glass room, visible by the officers from their station at all times. This is despite Mr. Stanford being allowed to visit with his attorneys in a private attorney-visiting room away from the officers' line of sight in the past. There have been instances where FDC officers have ordered Mr. Stanford's trial counsel to be seated after getting up to stretch in the same glass room. Other occasions have required counsel and staff

members to wait between thirty minutes to over two hours between the time of entering the FDC attorney visiting room until the time Mr. Stanford comes down from his cell block. All these examples, among others, in the aggregate create for a difficult and extremely limiting environment for which Mr. Stanford can prepare for trial and conduct discovery with this trial counsel.

Mr. Stanford's overall continuing decline in emotional and mental well-being while being detained in the FDC is a substantial hindrance to effectively preparing for trial and conducting discovery. The practical challenges inherent in the complexity of the case, a document discovery database that is only searchable through the internet (and Mr. Stanford's lack of access), the sheer volume of a growing quantity of millions of discovery documents, and limiting conditions imposed by the FDC increase the difficulty of preparing for trial and conducting discovery significantly. Mr. Stanford's contributions with specific and intimate knowledge of his business, which is core to his criminal indictment, and his unfettered and close proximity to his trial defense counsel are absolutely necessary for effective trial preparation and focused discovery. Currently Mr. Stanford's contributions and close proximity are severely limited and circumferential in the best characterization.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

"Declarant"

Nhan H. Nguyen, MD, JD, MSF
Attorney at Law

SIGNED AND SWORN Before me on this the 17 day of May, 2010.

XIOMARA STEINBERG-COLLINS
Notary Public, State of Texas
My Commission Expires
November 16, 2011

Notary Public, State of Texas