IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| vs. | § § § | CR. No. 4:09-342-01 |
| ROBERT ALLEN STANFORD | § § § § | |

## RESPONSE TO STANFORD'S MOTION TO RECONSIDER ORDER QUASHING STANFORD'S SUBPOENA AND TO ORDER AKIN GUMP TO COMPLY WITH STANFORD'S MODIFIED SUBPOENA

Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump") files this response to Allen Stanford's Motion to Reconsider Order Quashing Stanford's Subpoena and to Order Akin Gump to Comply with Stanford's Modified Subpoena and respectfully shows the Court as follows.

*Preliminary Statement*

Stanford argues his Motion as if he is waging this battle for the first time, rather than having waged and lost it once already in this Court. Instead of explaining why he meets the criteria for reconsideration, Stanford argues only the alleged merits of his subpoena, attempting to show that it seeks evidence material

to his criminal defense.[1] The standard for granting a motion for reconsideration has nothing to do with the merits of Stanford's subpoena, however. This Court has already weighed those merits and found them wanting. Instead, the relevant question is whether there has been a change or law, a change of fact, newly-discovered evidence, or a showing of manifest error such that this Court should grant the Motion for Reconsideration. Stanford touches on *none* of these issues in a Motion that stretches to 28 pages in length.

Nothing has transpired in the six weeks since this issue was first briefed that would lay a predicate for reconsideration. To the contrary, the Honorable Nancy Atlas' recent opinion denying Stanford's Motion to Disqualify Akin Gump in the Coverage Action pending in her Court simply underscores the fundamentally specious nature of Stanford's subpoena. In addition, the fact remains that Akin Gump has already produced a substantial amount of the information that Stanford seeks. The only items the firm has not produced are those that would require an extraordinarily burdensome and expensive undertaking to gather, such as specific emails and privileged client communications.

In addition, Akin Gump notes that the timing for compliance set forth in Stanford's subpoena once again suggests that at least one of its objectives is

---

[1] Large parts of Stanford's Motion merely re-iterate verbatim the arguments in Stanford's Reply to Underwriters' Motion to Quash Defendant's Criminal Subpoena filed in this Court on June 30, 2010, Document No. 259.

harassment. As this Court knows, Akin Gump's clients, Certain Underwriters at Lloyd's of London and Arch Specialty Insurance Company (collectively, "Underwriters"), are defending a coverage dispute pending in Judge Atlas' Court.[2] On August 24, 2010, Judge Atlas will hold an evidentiary hearing (which she refers to as a trial) to determine whether Stanford's claim for coverage under a Directors and Officers Liability Insurance Policy issued by Underwriters is excluded due to his having engaged in acts of Money Laundering. That Stanford would have this Court compel Underwriters' counsel to gather and produce subpoenaed materials one week before that hearing suggests his purpose is strategic (to distract resources from the coverage litigation) rather than substantive.[3]

## I. PROCEDURAL BACKGROUND

As this Court is aware, Stanford first served Akin Gump with a criminal subpoena *duces tecum* on June 28, 2010. That subpoena "commanded Akin Gump to produce twelve years of documents, e-mails, communications, and correspondence related to Akin Gump's representation of Stanford Financial

---

[2] *Laura Pendergest-Holt, et al. v. Certain Underwriters at Lloyd's of London and Arch Specialty Ins. Co.*, Cause No. H-09-3712 (S.D. Tex. Nov. 17, 2009) (hereinafter the "Coverage Action").

[3] This is not the first time Stanford has endeavored to make extra work for Akin Gump attorneys and interfere with the prompt resolution of the coverage dispute. The most salient example of this phenomenon is Stanford's Motion to Disqualify. In her Order on this Motion, Judge Atlas said "The Court finds Stanford's disqualification Motion is primarily strategic rather than substantive. If the Money Laundering applies, Stanford loses access to insurance funds to compensate the criminal defense counsel of his choosing." Coverage Action, Document 219 at 25. A true and correct copy of Judge Atlas' Order is attached as Exhibit A to this Response.

Group" within a 48 hour period.[4] On June 30, 2010, Akin Gump filed an Emergency Motion to Quash (the "Emergency Motion"), explaining that Stanford's subpoena sought information that is both irrelevant and inadmissible.[5] Akin Gump further asserted that the subpoena was unreasonable, oppressive, and brought in bad faith.[6] Akin Gump will not test the Court's patience by simply repeating the arguments briefed in its Emergency Motion, but it incorporates that Motion and its Reply[7] for all purposes within this Response.

Akin Gump's Emergency Motion, however, sets out five pages of background materials explaining that it had previously represented certain Stanford *entities*—not Allen Stanford personally—with respect to a few discrete matters.[8] Akin Gump also related that it had produced all paper documents concerning that representation.[9] It further recounted that Stanford had petitioned both Judge Atlas and the Honorable David Godbey of the United States District Court for the Northern District of Texas for the additional materials he seeks through the instant

---

[4] Document No. 276.
[5] Document No. 258.
[6] *Id.*
[7] Akin Gump's Reply to Defendant's Response to Emergency Motion to Quash Robert Bennett's Subpoena Duces Tecum, Document No. 262.
[8] Paragraph 7 of the Declaration of Barry Chasnoff, which Stanford filed as Appendix L to his Motion, lists these matters.
[9] Akin Gump had produced these paper files to the Receiver. In an Order of June 21, 2010, the Receivership Court authorized the Receiver to produce these documents to Attorney Bennett. Order, *Secs. & Exch. Comm'n v. Stanford Int'l Bank, Ltd., et al.*, Cause No. 3-09-CV-298-N (N.D. Tex. Jun. 21, 2010) (Document No. 1108).

subpoena, namely attorney emails and privileged attorney-client communications, and that both Courts rejected that request.

This Court, for its part, first stayed Stanford's subpoena in an Order of June 30, 2010,[10] and then quashed the subpoena on July 15, 2010.[11] In the meantime, Stanford filed his Motion to Disqualify Akin Gump on July 2, 2010 in Judge Atlas' Court, and the parties spent a good portion of July briefing that issue.

Stanford caused the instant subpoena to Akin Gump to issue on July 27, 2010. This new subpoena is identical to the June 28th subpoena quashed by this Court in every respect other than time and place specified for production.

On July 30, 2010, Judge Atlas issued an order on Stanford's Motion to Disqualify that confirms the correctness of this Court's decision to quash the June 28th subpoena. Judge Atlas' order, described more fully below, found Stanford failed to demonstrate that any attorney-client relationship had ever existed between him and Akin Gump and strongly intimated that the subject matter of Akin Gump's earlier representations bears no relationship to Stanford's current legal situation.[12]

---

[10] Document No. 260.
[11] Document No. 276.
[12] Ex. A at 22-23.

## II. ARGUMENTS AND AUTHORITIES

### A. There is No Basis for This Court to Reconsider its Decision.

Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the motion seeks reconsideration of an interlocutory order. *T-M Vacuum Prods., Inc. v. TAISC, Inc.*, No. H-07-4108, 2008 WL 2785636 at *2 (S.D. Tex. July 16, 2008). The Court's Order of May 10, 2010 was an interlocutory order, meaning that Stanford's Motion falls under Rule 59(e).

A Rule 59(e) motion calls into question the correctness of a judgment. *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact, must present newly discovered evidence, or must show that there has been an intervening change in the controlling law. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003); *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule 59(e) motion is not a vehicle for re-litigating old matters or rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.

*Broyles v. Texas*, 643 F. Supp. 2d 894, 898 (S.D. Tex. 2009). In other words, motions for reconsideration cannot be used to raise arguments which could, and should, have been made before the judgment was issued. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479. Because granting a Rule 59(e) motion is an extraordinary remedy, the Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Given the foregoing legal criteria and the facts of this case, this Court's granting of Akin Gump's Motion to Quash is not susceptible to reconsideration. First, there has been no change in the law. The standards governing issuance of a subpoena in a criminal case pursuant to FED.R.CRIM.P. 17(c) have not changed in the six weeks since the parties briefed this issue. The law governing when subpoenas may be quashed (if a subpoena seeks inadmissible, irrelevant, or immaterial or was not served in good faith) likewise remains the same. Stanford does not contend otherwise. In addition, there has been no change in facts or newly-discovered evidence that would necessitate reconsideration. Judge Atlas' opinion denying Stanford's Motion to Disqualify Akin Gump represents the only material development since the last briefing of this matter. As discussed below,

that ruling underscores Akin Gump's point that its representation of certain Stanford entities in the past has no bearing on Stanford's current legal troubles. Finally, Stanford has not shown that the Court's Order of July 15, 2010 resulted from *manifest* error, or, indeed *any* error.

### B. Time Has Only Weakened Stanford's Claims.

Stanford argues that the documents he seeks are relevant to his criminal case because they will "help him prepare for a defense of reliance on advice of counsel [and] show the existence of legitimate businesses."[13] But this argument has never made any sense, and Judge Atlas' Order of July 30, 2010 on Stanford's Motion to Disqualify simply highlights that fact.

To prevail on his motion to disqualify Akin Gump, Stanford was required to demonstrate that Akin Gump represented him personally, *i.e.*, that he is a former client of the firm.[14] He failed to meet that burden. Judge Atlas found that Stanford provided no persuasive evidence that Akin Gump had ever represented his individual interests.[15] Judge Atlas stated that "there is no basis to allow Stanford to pierce the corporate veil of his own corporate entities, even if such tactic were

---

[13] Stanford's Motion at 10.

[14] Ex. A at 18.

[15] *Id.* at 18, 20-21. Judge Atlas noted that Stanford failed "to proffer any probative communications or other reliable evidence supporting his belief that Akin Gump gave him legal advice in his individual capacity or otherwise provided him with a reasonable basis for believing that the firm represented him individually."

legally possible, which it is not."[16] Judge Atlas additionally noted that it is "undisputed that Stanford never sought Akin Gump's representation in the SEC or Criminal Litigation."[17] In sum, the Court found that Stanford "has not demonstrated that he personally had an actual attorney-client relationship with Akin Gump."[18] In light of Judge Atlas' findings, Stanford is left with no basis to assert an "advice of counsel" defense with respect to Akin Gump, and the advancement of that defense cannot serve as a platform for obtaining additional discovery from Akin Gump.[19]

Judge Atlas also considered whether there exists a substantial relationship between Stanford's current legal issues and Akin Gump's prior representation, although the Court declined to determine this question definitively "given the record and time available." Judge Atlas found, however, that Stanford had not presented evidence that Akin Gump's earlier work was related to present matters, and observed that no evidence suggested that Akin Gump currently possesses relevant information gleaned from its attorneys' work on earlier representations.[20] Judge Atlas noted that several of Akin Gump's prior representations of Stanford entities were "clearly ministerial in nature," and the others appeared to be unrelated

---

[16] *Id.* at 21.

[17] *Id.* at 19-20.

[18] *Id.* at 22.

[19] Judge Atlas noted Stanford's claim that he is entitled to an 'advice of counsel' defense but found such contentions were unsupported by the law or the record. *Id.* at 22-23, n.34.

[20] *Id.* at 22.

to Stanford's current legal challenges.[21] As Akin Gump has previously argued, and as Judge Atlas has now affirmed, Stanford has no good reason to embark on this fishing expedition through Akin Gump's files.

### C. Stanford's New Subpoena Suffers from the Same Problems As Did His Earlier Subpoena.

The instant Subpoena, once again, seeks information that is neither relevant nor admissible. Akin Gump has already briefed why the information Stanford seeks in each of the five categories of documents subpoenaed is not relevant to the criminal case. Each of the arguments Akin Gump raised remains valid, and are buttressed by Judge Atlas' ruling.

Stanford—for the second time—brings this subpoena in bad faith. While the earlier subpoena was largely a fishing expedition designed to obtain information supporting Stanford's Motion to Disqualify, this subpoena, which calls for production of documents on August 17, 2010, is designed to harass Akin Gump as the hearing in Judge Atlas' Court on August 24, 2010 approaches. There is no doubt that compelling Akin Gump to comply with Stanford's subpoena would achieve that result in spades. As Akin Gump pointed out in its Motion to Quash through the declaration of its Director of EDiscovery, it would take many hundreds of hours both to identify emails associated with Akin Gump's representation of

---

[21] *Id.* at n.34.

Stanford Entities and to review those emails for responsiveness. Stanford would like nothing better than to set Akin Gump on this wild goose chase on the eve of the August 24th hearing.

## *Conclusion*

Stanford's Motion to Reconsider Order Quashing Stanford's Subpoena and to Order Akin Gump to Comply with Stanford's Modified Subpoena should be denied.

> Respectfully submitted,
>
> AKIN GUMP STRAUSS HAUER & FELD LLP
>
> By:  /s/ Daniel McNeel Lane, Jr.
>   Barry A. Chasnoff (SBN 04153500)
>   bchasnoff@akingump.com
>   Daniel McNeel Lane, Jr. (SBN 00784441)
>   nlane@akingump.com
>   300 Convent Street, Suite 1600
>   San Antonio, Texas 78205
>   Phone: (210) 281-7000
>   Fax: (210) 224-2035

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all parties listed on this certificate of service will receive a copy of the foregoing document filed electronically with the United States District Court for the Southern District of Texas, Houston Division, on this 13th day of August, 2010, via email and/or with notice of case activity to be generated and ECF notice to be sent electronically by the Clerk of Court.

/s/ Daniel McNeel Lane, Jr.
DANIEL MCNEEL LANE, JR.