UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CR. NO. 4:09-342-01 |
| | § | |
| | § | |
| ROBERT ALLEN STANFORD | § | |

**DEFENDANT ROBERT ALLEN STANFORD'S MOTION TO
DISMISS DUE TO GOVERNMENT'S FAILURE TO SATISFY
PLEADING REQUIREMENTS**

TO THE HONORABLE DAVID HITTNER, UNITED STATES DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION:

COMES NOW Defendant Robert Allen Stanford (hereinafter "Stanford"), by and through his attorney of record, and respectfully requests that this Court dismiss certain counts of the indictment, as further specified herein, based on the existence of fundamental pleading defects, the effects of which greatly prejudice Stanford's ability to put forth an effective defense. Through this motion, Stanford seeks dismissal of Counts One, Nineteen, Twenty and Twenty-One in the indictment.

<u>Count One is fatally defective and should be dismissed because the critical pleading requirements of 18 U.S.C. § 1341 & § 1343 are not satisfied.</u>

Count One alleges a conspiracy to engage in conduct proscribed by, *inter alia*, 15 U.S.C. § 78j(b) (securities fraud); 18 U.S.C. § 1341 (mail fraud); and 18 U.S.C. § 1343 (wire fraud). Specifically, the pertinent language appearing within the June 18, 2009 indictment claims that Stanford used "deceptive devices and contrivances in connection with the purchase and sale of securities, that is, certificates of deposit of the Stanford International Bank, Ltd…"[1] *See* June 18, 2010 Indictment, at 13. Significantly, however, the government's "holder's claims" are fatally inconsistent with the text of Section 78j(b), which is commonly referred to as Section 10(b) of the Securities Exchange Act of 1934 (hereinafter "Exchange Act").

As an additional matter, it is readily apparent that the substance of those "holder's claims" are imbedded within the allegations resting upon Sections 1341 and 1343 and, as a result, the critical requirements of both Sections have not been satisfied. In that regard, to the extent any of the statements that were allegedly made induced investors to continue holding

---

[1] The earmarks of those CDs cut against the government's attempt to label them as securities. As more than fully discussed, <u>infra</u>, an in depth analysis of the applicable precedent, together with the particular attributes of the CDs, calls for the opposite conclusion. Plainly stated, the reach of Section 10(b) does not extend to underlying SIBL CDs.

the investment products they had purchased, such representations were too

far removed from the alleged "scheme . . . to obtain money and property."

<u>Counts Nineteen and Twenty are fatally defective and should be dismissed
because the dates used by the government to frame the scope of the alleged
conspiracies are facially absurd and conflict with the allegations made
within the four corners of the indictment.</u>

With respect to Counts Nineteen and Twenty, they allege the

formation of a joint undertaking designed to "corruptly influence, obstruct

and impede" "a pending proceeding before the…Securities and Exchange

Commission."  Speaking in global terms, it is apparent that the expansive

character of Count One envelopes Counts Nineteen and Twenty, and in

many respects, and nearly dwarfs them.  To that end, Count One expressly

references conduct that is ostensibly attributable to Leroy King, who

previously served as the Administrator of an Antiguan governmental agency

known as the Financial Services Regulatory Commission ("FSRC").  In

doing so, Count One also points to the alleged existence of an ongoing,

concerted joint undertaking that was designed to thwart the SEC's regulatory

ambitions.  At the same time, however, Count One argues that the

conspiracy portrayal delineated therein came to a prompt conclusion on

February 17, 2009.  Stated otherwise, Count One supposes that the

overwhelming level of intense global media attention that erupted in the face

of the SEC's February 16, 2009 Complaint reflecting allegations of "a

massive ongoing fraud" promptly "snuffed out" the alleged scheme that had been targeted.  *See* June 18, 2009 Indictment, at 11.  More succinctly stated, Count One presumes that the sensational headlines that had grabbed so much world-wide attention eviscerated the alleged conspiratorial plot, especially since a Receiver had taken control of key aspects of Stanford's vast business empire, effectively making it impossible for any such plot to have survived for any substantive time period past February 17, 2009. *See* June 18, 2009 Indictment, at 12 (attributing an ending date to the Count One conspiracy of "on or about February 17, 2009").

Inexplicably, however, it appears that the government lost sight of these pivotal features of Count One at the time it drafted Counts Nineteen and Twenty.  Notwithstanding the virtual "iron curtain" Count One dropped on February 17, 2009, Counts Nineteen and Twenty shun the reasoning of Count One. They pretend that the combined effects of media saturation and the appointment of a Receiver were largely inconsequential.

While placing together the components of Counts Nineteen and Twenty, the government brazenly (and foolishly) turns its back on Count One and casts aside the "teachings" thereof.  In pertinent part, Counts Nineteen and Twenty argue that the purported participants to this consolidated effort continued to be fixated on their objective (*i.e.*,

4

"*prevent[ing] detection* of an ongoing fraud' so as to "continue receiving economic benefits from the fraud" up until March 3, 2009. *See* June 18, 2009 Indictment at 42-44 (emphasis added).   In blunt terms, Counts Nineteen and Twenty are the product of unchecked prosecutorial abuses grounded in duplicity and bad faith.

Troublingly, however, there is no indication that those traits have become dormant, or have ever been diluted.  As a result, the government will continue to pursue Counts Nineteen and Twenty.  But any "victory" the government might achieve on that front will be short-lived.  To that end, should Counts Nineteen and Twenty remain intact, the government will suffer an upset once the trial commences.  The jurors, no doubt, will appreciate the true character of those charges.

Count Twenty-One is fatally defective and should be dismissed because of the far-reaching, impermissibly vague use of the term "securities fraud".

Count Twenty-One does not pass muster; it is fatally defective. Among other things, it seeks to portray "securities fraud" as a specified unlawful activity that forms the basis for the money laundering allegations reflected therein.  By taking that approach, the government's cavalier uses of the phrase "securities fraud," a loose colloquialism that may be attached to

an expansive array[2] of activities linked to capital formation initiatives or the financial markets in general, passes muster. The federal securities laws are comprised of numerous intricate prohibitions covering specific forms of conduct. The complexities surrounding this area of law have been magnified with the passage of time, in that, the stream of judicial interpretations that have been issued has steadily heightened the need for precision in describing the exact species of "securities fraud" alleged. Using the phrase "securities fraud" is not of itself adequate to give Mr. Stanford notice of the specific charges the government has made against him and against which he must prepare to defend himself. This lack of specificity as to what facet of "securities fraud" the government intends to base its argument against Stanford on makes this count of the indictment facially flawed.

<u>Count Twenty-One is fatally defective and should be dismissed because it omits critical elements of the offence charged by failing to descend to the particulars of the elements of that offence .</u>

The government alleges a violation of title 18, United States Code, §1956(a)(2)(A) which states in relevant part:

---

[2] "Securities fraud" may be used to reference a violation of state "blue sky" law, section 17(a) of the Securities Act of 1933, section 9 of the Exchange Act, section 10(b) of the Exchange Act and SEC Rule 10b-5, section 10(b) of the Exchange Act and SEC Rule 10b-9, section 15 of the Exchange Act, etc.

"(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place inside the United States from or through a place outside the United States-

(A) with the intent to promote the carrying on of specified unlawful activity…

Shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer whichever is greater, or imprisonment for not more than twenty years or both.[]"

Counts in an indictment that misstate or omit elements of an offence or fail to provide defendant sufficient notice should be dismissed. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). "Where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species . . . it must state the particulars.  Undoubtedly, the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the

accused of the specific offence, coming under the general description, with which he is charged." *United States v. Pirro*, 212 F.3d 86, 92-93 (2d Cir.2000); *see also United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) citing *Russell v. United States*, 369 U.S. 749, 765 (1962).

The government's indictment alleges in generic terms, that Stanford and other defendants and co-conspirators, caused the movement of millions of dollars of fraudulently obtained funds back and forth from bank accounts in the United States to various bank accounts outside the United States, through the use of intermediary bank accounts in the United States. The statute the government relies on in Count Twenty-One of the indictment requires that funds be transferred either "from a place in the United States to or through a place outside the United States" or "to a place inside the United States from or through a place outside the United States." While the indictment alleges these activities generically, it fails to descend to the particulars or to accompany the general description with a statement of facts sufficient to give Mr. Stanford notice of the criminal activities he is accused of participating in. No where in the indictment, including in the re-alleged paragraphs, are any specific transmittal or deposits of funds "from a place in the United States to or through a place outside the United States" or "to a

place inside the United States from or through a place outside the United States" referenced.

Even if the government tried to meet this requirement by relying on the counts of wire fraud alleged on Page 39, Paragraph 6 of the Indictment (which are *not* re-alleged in Count Twenty-One), none of these alleged transactions allege the transfer of monies or funds "from a place in the United States to or through a place outside the United States" or "to a place inside the United States from or through a place outside the United States". Only Counts Two & Six even make reference to money at all and neither of these Counts allege funds ever left the United States.

As such, the government's pleading of Count Twenty-One of the Indictment is fatally flawed because it omits critical elements of the statutory offence charged and fails to describe the particulars of those elements and give Mr. Stanford sufficient notice of the specific offence with which he is charged.  Count Twenty-One of the Indictment should be dismissed.

<u>Counts One and Twenty-One are fatally defective and should be dismissed because the CDs Sold At SIBL Are Not "Securities".</u>

Stanford argues that the government lacks the necessary jurisdiction over SIBL and the affiliated CDs that were sold from the bank to bring any criminal charges against him through federal securities laws.  Specifically,

Stanford maintains that the CDs are not "securities" regulated under the federal securities laws and thus, the pleadings in the indictment are defective under Count One for conspiracy to commit mail fraud, wire fraud, and securities fraud, and Count Twenty-One for conspiracy to commit money laundering.  Both Counts One and Twenty-One rely on alleged violations of federal securities law.  Because the CDs at SIBL are not "securities" as defined under federal securities law, Counts One and Twenty-One cannot pass muster and must be dismissed.

Count One of the indictment refers to a violation of Title 17, Code of Federal Regulations, Section 240.10b-5[3], which states that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate

---

[3] Pg 14 of the indictment ¶ 34(c)

> as a fraud or deceit upon any person, in connection with the
>
> purchase or sale of any security.

Count Twenty-One of the indictment similarly relies on this violation.[4]

In both instances, Section 240.10b-5 does not cover the CDs sold at SIBL because they are not "securities" that fall within the scrutiny of the statute. Extensive case law provides that as long as the investor's deposit is protected by comprehensive banking regulation, especially when supplemented by insurance against risk of loss, CDs are not securities. *See Marine Bank v. Weaver*, 455 U.S., 551, 558059 (1982); *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984); *West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987)(U.S. dollar and peso denominated CDs issued by privately held Mexican bank are not securities where a foreign government has adopted a comprehensive regulatory scheme governing bank operations that virtually guaranteed repayment); Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b ("unless the context otherwise requires"); *See also,* Section 3(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78c (hereinafter "Exchange Act") (same).

In all of these cases, the issue whether a CD was considered to be a "security" turns on the degree of protection offered by the bank regulatory

---

[4] Pg 45 of the indictment ¶ 2

system of the country of the issuing bank.  SIBL was a heavily regulated financial institution subject to comprehensive regulation by three different entities: the International Business Corporation Act, Statutory Instruments, and the operational procedures of the Financial Services Regulatory Commission (hereinafter "FSRC"). Financial institutions in Antigua are subject to the regulation of the FSRC and the Ministry of Finance of the Government of Antigua.  The Ministry of Finance has had comprehensive regulatory structure in place for international banks in Antigua since 1982 and the FSRC has exclusive supervisory power over international banks in Antigua.

In both *Wolf* and *West*, the Ninth Circuit deferred to foreign governments with regards to the sufficiency of their regulatory process and supervision of their financial institutions.  *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984)(where the Ninth Circuit would not address the notion that Mexican authorities were not enforcing Mexican bank regulations, citing the traditional respect paid to foreign governments by U.S. courts); *See also West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987),(explaining that under the act of state doctrine, US government must assume that a foreign government is enforcing its own laws, even though they may not have been enforced in practice).  These

cases show that the regulatory environment surrounding SIBL as an institution should not be questioned as to their sufficiency and thoroughness, but should be found to be sound financial regulatory agencies.

In *Wolf*, the Court found the peso denominated CDs issued by Mexican bank are not securities "when a bank is sufficiently regulated [such] that there is virtually no risk that insolvency will prevent it from repaying the holder of one of the certificates of deposit". *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984).  The Court goes further to state that the CDs are not securities despite the fact that the Mexican government only provided the deposit holders with priority claim status – and not actual insurance – if the issuing bank becomes insolvent.  *Id.* Holders of CDs at SIBL were similarly in the position that although SIBL did not supplement by insurance against risk of loss, the government of Antigua gave the holders priority claim status if SIBL became insolvent.

## CONCLUSION

For the foregoing reasons, Defendant Robert Allen Stanford respectfully requests that this Court dismiss certain counts of the indictment, as specified therein, based on the existence of fundamental pleading defects, the effects of which greatly prejudice Stanford's ability to put forth an effective defense.

October 4, 2010

Respectfully submitted,

\_\_\_/s/  Robert S. Bennett\_\_\_
ROBERT S. BENNETT
Federal ID. No. 465
TBA No. 02150500
515 Louisiana St. Suite 200
Houston, TX 77002
713.225.6000
713.225.6001 (FAX)

Attorney for Defendant,
ROBERT ALLENSTANFORD

## CERTIFICATE OF CONFERENCE

On September 30, 2010, undersigned counsel was informed via email that AUSA Gregg Costa was opposed to this Motion.

 /s/ Robert S. Bennett\_\_\_\_
ROBERT S. BENNETT

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2010, I electronically filed the foregoing with the Clerk of the Court, which will send notification of such filing to all registered parties.

_____/s/_ Robert S. Bennett_____
ROBERT S. BENNETT
Federal ID. No. 465
TBA No. 02150500
515 Louisiana St. Suite 200
Houston, TX 77002
713.225.6000
713.225.6001 (FAX)

Attorney for Defendant,
ROBERT ALLENSTANFORD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CR. NO.4:09-342-01 |
| | § | |
| | § | |
| ROBERT ALLEN STANFORD | § | |

### ORDER GRANTING MOTION TO DISMISS DUE TO GOVERNMENT'S FAILURE TO SATISFY PLEADING REQUIREMENTS

Having considered Defendant Robert Allen Stanford's Motion to Dismiss Due To Government's Failure to Satisfy Pleading Requirements, the Court being fully advised, and good cause shown:

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Due to Government's Failure to Satisfy Pleading Requirements is **GRANTED**.

**IT IS HEREBEY ORDERED** that Count One of the indictment be dismissed.

**IT IS HEREBEY ORDERED** that Counts Nineteen and Twenty of the indictment be dismissed.

**IT IS HEREBEY ORDERED** that Count Twenty-One of the indictment be dismissed.

1

**SIGNED** at Houston, TX, this _____ day of October, 2010.

_____

Honorable Judge DAVID HITTNER