# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT of TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 17 2020

David J. Bradley, Clerk of Court

### CASE NO, 4:09-CR-00342

## UNITED STATES of AMERICA
### Plaintiff

## V.

## ROBERT ALLEN STANFORD
### Defendant

---

## Motion For Relief From Judgment Pursuant To Fed. R. Civ. P. 60(b)(6) And Request For Reassignment To A Different Judge

Defendant Robert Allen Stanford, proceeding pro se, now moves under Federal Rule of Civil Procedure 60(b)(6) seeking relief from his wrongful conviction and sentencing, and requests that this matter be reassigned to a different judge.

In support thereof, he submits the following good cause and points of law.

FED. R. CIV. P. 60(b)(6) - permits a court to reopen a judgment for any reason that justifies relief. This rule vests wide discretion in courts, and generally is available only in extraordinary circumstances. In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process. The whole purpose of this RULE is to make an exception to finality. BUCK v. LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT of CRIMINAL JUSTICE, 137 S. CT. 759 (2017)

_Reassignment of Judge_ - When read together with the facts below, the Recusal Statute (28 U.S.C. 455) or the Fifth Circuit standard for reassignment demand that this case be removed from Hon. David B. Hittner and reassigned to a different judge. 28 U.S.C. 455(a) provides that any judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. Recusal decisions under Section 455(a) are extremely fact-driven and must be judged on their unique facts and circumstances more than comparison to situations considered in prior jurisprudence.

And particularly relevant in this proceeding Section 455(b)(4) dictates that recusal is required whenever a judge has any interest that could be substantially affected by the outcome of the proceeding. UNITED STATES v. JORDAN 49 F.3d 152, 157 (5TH CIR. 1995) (citing, LITEKY v. UNITED STATES, 510 U.S. 540 (1994); See then, In re: DAIMLER CHRYSLER CORP., 294 F.3d 697 (5TH CIR. 2002) ("Reassignment is appropriate where the judge has engaged in conduct that gives rise to the appearance of impropriety, or the lack

3

of impartiality in the mind of a reasonable member of the public."); _UNDERLINE_ _UNITED STATES ex rel LITTLE v. SHELL EXPLORATION CORP._, 602 FED. APPX. 957 (5TH CIR. 2015) (confirming same)

## Unique Facts And Extraordinary Circumstances Justifying Relief And Demanding Reassignment

As Robert Allen Stanford sits alone in his 6x9 prison cell, surrounded by and contemplating the futility of the more than a decade of his pursuits of justice, and all the corresponding denials, he is reminded of the legend of Sisyphus — the Corinthian King condemned to roll a huge stone up a hill in Hades, only to have it roll back on him every time he neared the top.

With a seemingly similar condemnation, Mr. Stanford looks around at the mountain of motions and appeals, his years of Sisyphean filings, each one of them legally and technically correct if not perfectly written... and each one of them destined for DENIAL.

The sobering reality here, as Mr. Stanford would discover, is that no matter how many times he

necessarily sustained himself with the reality-
suspending belief that one day truth and justice
would prevail, the mountain of DENIALS reveal
otherwise ... and that since June 18, 2009, his
high profile prosecution has served, and continues
to serve, as a spring board for the Supreme Court
aspirations of lead prosecutor Gregg Jeffrey
Costa; a fait accompli that on September 9, 2011,
when Mr Costa's application for judgeship was
filed in and he testified before the U.S. Senate ...
became carved in stone.

To be more blunt, and as the facts presented below
will render indisputable, from the moment
this federal prosecutor conveyed to the U.S.
Senate Committee on the judiciary that the Criminal
prosecution of Robert Allen Stanford was the
"most significant" of his career as an Assistant
U.S. Attorney, no other facts or measures of truth
have been allowed entry into the calculus.

No matter the number of irrefutably exculpatory
facts, compelling legal principles and
constitutional violations presented to him, prior
to trial, and over the years since then, judge David
Hittner has ignored their relevance and kept

5

them hidden away and from ever seeing the light of day. With blatantly erroneous ruling after ruling, he has blocked every substantive challenge to the validity of his colleagues proudest and "most significant" achievement — judicially thwarted each and every attempt to pierce his protective shield and expose the many and unconstitutional flaws in the Stanford prosecution.

And to be sure, there are many of them.

But here, for the limited purpose of this motion, rather than painting a giant mural of this judges' many derelictions of his judicial oath and responsibility, Mr Stanford will focus on a single inexcusably unconstitutional action.

# The Facts

In **COUNT FOUR** of the May 4, 2011 superseding indictment (DOC. 422), lead Prosecutor Costa charged a wire communication between two Stanford entities that were both located in Houston, Texas. The indictment alleged that this wire communication was sent in furtherance of the wire and mail fraud conspiracy charged in **COUNT ONE**, in violation of 18 U.S.C. 1343.

And further, according to Section 38(i) of the indictment, this wire communication was characterized as an "**overt act**" of the charged conspiracy, in violation of 18 USC 1349.

At the outset here — and irrespective of the fact that the author of this indictment is now a prominent judge in the Fifth Circuit Court of Appeals — because this wire communication was clearly a **Texas-only** communication and did not cross state lines ... it was not even a federal crime.

Let me repeat that. No matter the allegation, this

"*INTRASTATE*" communication was not, and never will be, a violation of United States law.

To be more specific, because this was an "*INTRASTATE*" wire communication, and did not involve "*INTERSTATE OR FOREIGN COMMERCE*" as required for any prosecution under 18 U.S.C. 1343, there was no "federal nexus" on which to indict. And in turn, nothing with which to provide the court with subject-matter jurisdiction, also required for any federal prosecution.

And to compound matters . . . at the end of the government's summation, when judge Hittner provided the jurors with the law relative to the Section **1349** conspiracy charged in **COUNT ONE** (jury instruction #19) he told them:

"you as jurors, are judges of the facts . . . you have no right to question the wisdom or correctness of any rule that I may state to you. you must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I give it to you, regardless of the consequences." (DOC. **788**, at 9)

"Title 18, United States Code, Section 1349, makes it a crime for anyone to conspire with someone else to commit mail or wire fraud. In this case, **COUNT ONE** of the indictment charges the defendant with conspiring to commit wire fraud and mail fraud... for you to find a defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt. [including] ... that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the **overt acts** described in the indictment, in order to accomplish some object or purpose of the conspiracy." (DOC. 788, at 20-21)

In the clearest of terms, this critically important jury instruction was an incorrect statement of the law, and served only to confuse the principles of law applicable to the factual issues confronting the jurors upon their deliberation. It tracked the Fifth Circuit Pattern Instruction for a "Section 371 conspiracy", which does include and require the unanimous finding of an **overt act**, and not the Fifth Circuit Pattern Instruction for a "Section 1349 conspiracy" which does not. See, UNITED STATES v. ANDERSON, 558 F. APPX 454, 461

(5TH CIR. 2014) ("1349 does not contain an overt act requirement")

This distinction is important for two reasons. First, a jury instruction is required to be a correct statement of the relevant law. And second, a jury instruction is not supposed to demand consideration of a wire communication as an **overt act**, in a conspiracy that does not contain an **overt act** requirement — and certainly not where that **overt act** was unlawfully charged and without statutory support.

And, whenever this occurs it is reversible error. See, <u>ARTHUR ANDERSON, LLP v. UNITED STATES</u>, 544 U.S. 695 (2005) (Unanimous decision reversing where ... "the jury instructions were flawed in important respects" and where the district court "failed to follow" the Fifth Circuit Pattern jury instruction for the statute charged in the indictment and presented to the jury); see also, <u>UNITED STATES v. PIPER</u>, 2019 U.S. APP. LEXIS 901 (5TH CIR. 2019) (confirming same)

And further, this erroneous jury instruction, because it involved the conjoining (or "merging") of two

10

statutes with different elements of proof and penalties upon conviction, thus also violating **BLOCKBURGER v UNITED STATES**, 284 U.S. 299, 304 (1932) ("Blockburger Rule") ("where one provision requires proof of a fact that the other does not") was then further compounded by an additional "general instruction" requiring jurors to apply the same principles of law, including the **overt acts** in **COUNT ONE** ( that Section 38(i) of the Stanford indictment "realleges and incorporates by reference" in every other **Count** of the indictment) to the conspiracy to commit money laundering charged in **COUNT FOURTEEN**, in violation of 18 U.S.C. 1957 ... which also does not require **overt acts**.

Then, returning to the conspiracy charged in **COUNT FOURTEEN**, judge Hittner told the jurors...

"you are instructed that the same general instructions describing the crime of conspiracy in 'Instruction 19' apply to the conspiracy charge in this instruction" (Doc. 788, at 30)

and...

> "to reach a verdict, whether its
> guilty or not guilty, you must agree -
> all of you must agree. The verdict must
> be unanimous on each count of the
> indictment." (DOC. 788, at 42)

In other words, because this erroneous "general
instruction" required a finding of guilt on
**COUNT FOUR**, and Section 38(i) realleged and
incorporated **COUNT TWO** through **COUNT FOURTEEN**
as **overt acts**; the unlawfully changed **COUNT FOUR**
might well have served as the **overt act** to
establish the required unanimity on all other
**COUNTS** in the indictment. See, **CHRISTOPHER V.**
**DEPUY ORTHOPEDICS, INC.**, 888 F. 3d 753 (5TH CIR. 2018)
(general instruction at the close of trial was
"grossly inadequate under the circumstances"...
because, as occurred here, this instruction, that
served only to confuse the jurors even more, was
among... "the last things the jurors heard before
retiring to deliberate... and a colossal verdict
followed.")

At this point, a reasonable person might ask... in such a high profile prosecution (or for that matter, in any prosecution) with no less than 17 federal prosecutors involved, and a trial judge with 50 years experience, in state and federal prosecutions ... how could such errors have occurred?

And yet there's more ... a lot more.

Just prior to judge Hittner's (erroneous) jury instructions, at the summation stage of the trial, when one of these 17 government prosecutors suddenly realized the critical problem with **COUNT FOUR** - that it charged a Houston to Houston **INTRASTATE** communication, not the **INTERSTATE** or **FOREIGN COMMERCE** element required by 18 U.S.C. 1343, DOJ fraud chief William Stellmach stepped in and tried to clean it up.

With the ease and self-assurance of a senior government official whose words should be accepted without challenge - and as if this important element that was missing from the grand jury's indictment (in **COUNT FOUR**) could just as lawfully be inserted there in the courtroom -

Mr Stellmach told the jurors...

"**COUNT FOUR** relates to an investor in Texas
who purchased a 700,000 dollar CD. He
wired the money from Texas to an account in
Canada, held by the bank to buy that CD."

— and —

"Well, as you saw in **COUNT FOUR**, money was
routinely wired from depositors here in the
United States to Stanford accounts in Canada,
Stanford International Bank accounts, to
buy CDs. **COUNT FOUR** is one example of one
of those wires. That happened routinely. And
all of that CD money going from the U.S. to
Canada was an international movement
of money to promote the scheme" (DOC. **788 at 106**)

Now, consider the actual words in **COUNT FOUR**,
in the grand jury's indictment...

Wire transmission of approximately
$700,000 from SGC account #4183 located
in Houston, Texas to an SIB account
located in Houston, Texas, regarding

14

investor WJ's purchase of SIB CDs.
(Doc. 422, at 17)

No mention of "Canada". No allegation of
"international movement."

As chief of the Department of Justice's Fraud
Division, this government official knew his verbal
alteration of <u>COUNT FOUR</u> — infusing it with the
missing **INTERSTATE** or **FOREIGN** element, and therein
changing (broadening) the government's theory —
was, and always will be, constitutionally
impermissible. In legal terms, it was a
"Constructive amendment" of the grand jury
indictment.

See, <u>**UNITED STATES v. COOPER**</u>, 714 F.3d 873, 878
(5<u>TH</u> CIR. 2013) ("The fifth amendment allows criminal
prosecutions only on the basis of an indictment,
and only the grand jury may amend an indictment."
<u>**UNITED STATES v. GONZALES**</u>, (5<u>TH</u> CIR. 2006).
"[A]n action of either the judge or prosecutor [that]
allows the jury to convict the defendant upon a
factual basis that effectively modifies an
essential element of the offense charged
constitutes an improper constructive amendment

15

and is grounds for reversal.") (quoting, *UNITED STATES v. STIRONE*, 361 U.S. 212 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with, or without, courtroom amendment.")

Then see, *UNITED STATES v STANFORD*, 805 F. 3d 557 (5TH CIR. 2015) ("A constructive amendment occurs when an essential element of the offense is effectively modified at trial; furthermore, that particular predicate is an essential element of any federal offense. [] the particular predicate for jurisdiction for wire fraud requires a communication in *INTERSTATE* or *FOREIGN COMMERCE*, [] the Statute [18 U.S.C. 1343] does not apply to purely *INTRASTATE* communications.")

Then finally, see *UNITED STATES v. LOCKHART*, 844 F. 3d 501 (5TH CIR. 2016) ("If we conclude that there has been a constructive amendment, we must reverse the defendant's conviction.")

With it so clear that what DOJ fraud chief Stellmach was doing, and did, was unconstitutional, why then did he do it?

The answer here is straight-forward and outrageous in equal measure: to conclude the trial and case prior to (the now-confirmed) Mr Costa's imminent swearing in (which would later take place there in the same courtroom, and be conducted by judge David Hittner) there was no time to return the indictment to the grand jury.

It was a calculated gamble, that Stanford's court-appointed counsel wouldn't notice the courtroom "constructive amendment" and object, and it worked.

The bigger question here... what was Mr Costa and the senior district judge Hon. David Hittner doing at the time? And the answer here: they were watching... and holding their breaths.

In a nutshell, excluding Mr Stanford's court-appointed counsel, whose wholesale incompetence need not be emphasized further, every attorney

in the courtroom that day knew precisely what was occuring, and why. This was a high stakes, high profile prosecution, and the final, "most significant" case in the lead prosecutor's career. No matter the tactics, No matter the Constitutional violations, It had to be WON.

And so it was.

On March 6, 2012, after it was made clear to them that they had no right to question the erroneous instructions on the applicable law, including where they concerned the unlawful **COUNT FOUR**, it came as no surprise when the jurors returned a verdict of guilty on 13 of 14 Counts.

It also came as no surprise when, on June 14, 2012, judge David Hittner sentenced Mr Stanford to an astonishing 110 years in prison, which included a 20 year term on **COUNT FOUR** ... all of which engendered a visible, celebratory sigh of relief from the prosecution, and stamped a bold exclamation point on Mr Costa's final "most significant" WIN.

And yet still, there's more.

Honorable Gregg Jeffrey Costa

Today, June 18, 2020, eleven years after Mr. Stanford's arrest, the author of this demonstrably defective indictment (which contained multiple other jurisdictional defects beyond **COUNT FOUR**) ... the government attorney who, four months before the first day of trial told the U.S. Senate that the Stanford Prosecution was the "most significant" of his career ... the federal prosecutor who sat in the courtroom and watched in silence as his colleague William Stellmach clearly and blatantly violated Mr. Stanford's Constitutional rights ... the proud judicial nominee who lorded over Mr. Stanford's unconstitutional prosecution, and then stood by as he was sentenced to **20 years in prison** for something this judicial nominee knew was not even a crime ... is now a proud and prominent judge in the Fifth Circuit Court of Appeals ... an experienced jurist who now routinely reverses wrongful convictions with jurisdictional defects and accomplished through "constructive amendments" of their indictment.

See, e.g., **UNITED STATES v HOFFMAN**, 901 F.3d 523 (5TH CIR. 2018) (opinion by Gregg Costa) Where, when

reversing a conviction for a wire and mail fraud conspiracy because the indictment had been constructively amended, he stated... ("Improper constructive amendment occurs when the jury is allowed to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged") (quoting, UNITED STATES v. COOPER, 714 F. 3d 873, 878 (5TH CIR. 2013))

During the time between Mr. Stanford's March 6th conviction and June 14th sentencing, the now-confirmed Gregg Jeffrey Costa's swearing in ceremony was held in the courtroom of his "most significant" prosecution, with Senior U.S. District Judge David Hittner administering the oath.

Initially seated as a District judge in Galveston, Texas, he had replaced the former U.S. District judge Samuel E. Kent, who had been removed for trading judicial leniency for sex.

Eighteen months later, in 2014, he was elevated once again to the Fifth Circuit Court of Appeals, and upon the 2016 death of Supreme Court Justice

20

Antonin Scalia, CNN NEWS identified him as one
of the nine canidates on "the short list" to
replace Scalia.

From federal prosecutor to potential
Supreme Court Justice ... in less than
four years.

## UNITED STATES V STANFORD, 805 F. 3d 557 (5TH CIR 2015)

When in his direct appeal Mr Stanford argued, inter
alia, the unconstitutionality of this "constructive
amendment" of the indictment, a three judge
panel of the Fifth Circuit Court acknowledged
the impermissibly amended indictment, and
even noted that the statute, 18 U.S.C. 1343, "does
not apply" to the charge of conviction. But then,
because the person responsible was by then a
prominent member of their court, that panel
held that this constitutional violation — and
the resulting 20 year term of imprisonment ...
"Did not affect the fairness, integrity, or
public reputation of the judicial proceeding."

At this point, anyone who is still not convinced of the now - collective effort to preserve as lawful this "most significant" prosecution, should also consider that, just prior to her "no harm, no foul" opinion in **UNITED STATES v STANFORD**, judge Edith Brown Clement, in **UNITED STATES v COOPER**, supra, had held that...

> "An action of either the judge or prosecutor [that] allows the jury to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged constitutes an improper constructive amendment and is grounds for reversal."

And then, they should also consider this...

In two subsequent cases, where the Supreme Court agreed to review the Fifth Circuit's rule **52(b)** "No harm, No foul" (plain error) analysis, it held that the standard used by the Fifth Circuit was neither in line with rule **52(b)** nor in line with the Supreme Court's long-standing plain error doctrine, as announced in **UNITED STATES v OLANO**, **507 U.S. 725 (1993)**, and was in fact an "unduly burdensome" articulation of **OLANO'S** fourth prong.

22

— ROSALES-MIRELES V UNITED STATES, 585 U.S. ___ (2018).

And that, moreover, there was "no legal basis" for the Fifth Circuits practice of refusing to correct such errors. Specifically, the Supreme Court stated. . . "The text of Rule 52(b) does not immunize factual errors from plain error review. Our cases likewise do not purport to shield any category of errors from plain error review. See, generally, ROSALES-MIRELES and OLANO. Put simply, there is no legal basis for the Fifth Circuits practice of refusing to review unpreserved factual arguments for plain error." — DAVIS V. UNITED STATES, 589 U.S. ___ (2020).

And yet, even after these two admonishments from the Supreme Court, regarding their "no harm, no foul" plain error standard of review, the Fifth Circuit's intransigence in the Stanford case lives on.

See, UNITED STATES v STANFORD, No. 12-20411, denying 'Motion to Recall Mandate' in light of ROSALES-MIRELES October 25, 2018, and denying 'Rehearing En Banc', November 7, 2018. And again, in light of DAVIS, May 21, 2020, and 'Rehearing En Banc', June 9, 2020.

And now, returning to the original "trier of fact," the person most responsible for this gross miscarriage of justice, the judge who could have and should have halted it eleven years ago...

## The Honorable
## Senior U.S. District Judge David Hittner

To begin with, in any "case or controversy" arising under the federal Constitution or laws of the United States, the first obligation of the presiding judge is to verify that the plaintiff has "standing" to bring the claim, and that the court has proper jurisdiction over both the **subject** and **matter** involved. See, ARBAUGH v. Y&H CORP., 546 U.S. 500 (2006) ("Subject-Matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waved. UNITED STATES v. COTTON, 535 U.S. 625, 630 (2002) Moreover, courts have an independant obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party") 546 U.S. 514-15; See then, CATERPILLAR, INC v. LEWIS, 519 U.S. 51 (1996) ("If, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be reversed"), and finally see

_FISHER v UNIVERSITY OF TEXAS AT AUSTIN_, 758 F. 3d 640 (5TH CIR. 2014) ("A court's subject-matter jurisdiction may be challenged at any time, even after final judgment.")

Accordingly, this "**failure**" to verify the government's standing, and the court's proper "subject-matter jurisdiction" over COUNT FOUR, represents the first of the constitutional reasons for judicial reassignment of this case; because either, after more than five **decades** on the bench, judge David Hittner is no longer mentally competent to preside over 'cases or controversies,' or he is; and there is an even more disqualifying explanation for this "**failure**" ... involving "judicial malfeasance."

Because he believes it is the latter, Mr Stanford now presents the following ...

Beyond the abundance of evidence presented above, this judges April 3, 2019 ruling on Mr Stanford's November 21, 2017 'Motion To Vacate or Correct Sentence,' filed pursuant to 28 USC 2255, represents that which should by now be obvious, and demonstrated nothing less than a "come hell

25

or high water" determination to preserve the foundation of his colleague's judicial appointment.

## Erroneous Jury Instructions

After giving the jurors the completely erroneous instruction for a Section 371 conspiracy, rather than a Section 1349 conspiracy as charged in **COUNT ONE**, and telling them that they must find and be unanimous on "at least one" of the 'overt acts' in **COUNT ONE** (which included the jurisdictionally defective **COUNT FOUR**), and, most importantly, that they had "no right to question the wisdom or correctness of" that instruction ... and a "colossal verdict" followed that may well have rested on **COUNT FOUR**...

When responding to Stanford's **2255** challenge to this unconstitutional conflation of 371 and 1349, and the resulting consequences, judge David Hittner pretended as if there was no transcription of this blatant error, no hard copy record of the actual instructions, and that it was all a figment of Mr. Stanford's vivid imagination. He said: "Section 1349 does not contain an overt act requirement."

**UNITED STATES v ANDERSON**, 559 F. Appx. 454, 461 (5TH CIR 201

26

("1349 indeed does not contain an **overt act requirement**") "The Court therefore finds **COUNT ONE** did not require an **overt act** finding by the jury." (Doc 1421 at 16)

## Mental Incompetence
## Or A Bungled Cover Up?...

"Recusal decisions under 28USC 455(a) are extremely fact-driven and must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." UNITED STATES v JORDAN, 49 F.3d 152, 157 (5TH CIR. 1993); RIPPO v BARKER, 137 S. Ct. 95 (2017) (" Recusal is required when, objectively speaking, the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.")

# Count Four
## "Actual Innocence"

In an amendment to his 2255, filed on February 13, 2018 (DOC.1414), Mr Stanford argued that, because he was actually innocent of his conviction on COUNT FOUR, a strict application of the AEDPA limitation period would be inequitable, and that the principles of equitable tolling should be applied, pursuant to LAWRENCE v FLORIDA, 549 U.S. 327, 335 (2007).

Specifically, Mr Stanford argued that...
1) COUNT FOUR did not allege a federal offense,
2) that the government "constructively amended" the indictment's charges,
3) that his court-appointed counsel were ineffective for failing to object on his behalf ... and that the court's imposition of 20 years on COUNT FOUR represented a Miscarriage of Justice.

Initially, judge Hittner accepted this amendment, but then, once again disregarded the facts and all applicable law.

After acknowledging that ..."The one-year limitations period in 28 USC 2255 is subject to equitable tolling. __UNITED STATES v. WYNN__, 292 F.3d 226, 230 (5TH CIR. 2002) The Doctrine of Equitable Tolling preserves a persons claim when strict application of the statute would be inequitable" ... He ruled that this constructive amendment argument, which clearly established Mr. Stanford's innocence on __COUNT FOUR__, and affected the entire trial process and jury's verdict on all other __COUNTS__, did not rise to ..."inequitable" Therefore, "The court finds Stanford cannot meet his burden to equitably tolling the AEDPA limitations period." (Doc. 1421)

The Supreme Court disagrees.

"The Miscarriage of Justice exception, our cases bear out, survived AEDPA's passage." MᶜQUIGGINS v. PERKINS, 596 U.S. 383 (2013), "We think in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." (quoting, MURRAY v. CARRIER, 477 U.S. 478, 496 (1986)

Clearly this is an "extraordinary case." The "constructive amendment" of the indictment was a violation of the Constitution. And, because COUNT FOUR did not even charge a federal offense, Mr Stanford is "actually innocent" of the resulting conviction.

"Reassignment is appropriate where the judge has engaged in conduct that gives rise to the appearance of impropriety, or the lack of impartiality in the mind of a reasonable member of the public." IN RE: DAIMLER CHRYSLER CORP. 294 F.3d 697 (5ᵀᴴ CIR, 2002)

## Summary of The Facts

No matter the extraordinary lengths they have gone and may continue to go in their relentless efforts to evade them, and justice, the facts presented here reveal an indefensible abuse of power — where the collective force of a few undeniably corrupt judges and government prosecutors was wielded for personal and political gain.

Through any prism, they show a criminal prosecution where the laws and facts and truth were twisted and manipulated like putty in the hands of a demonic sculptor — in a public ceremony where a man's entire life and accomplishments were torn apart and sacrificed at the altar of evil.

In this Motion, the arguments, to the necessary exclusion of others of equal significance, have been cabined to the establishment of Mr. Stanford's "factual" and "actual innocence" of **COUNT FOUR** — as well as the strong and inextricably linked likelihood that his entire conviction rests on that single unconstitutional charge.

But in so doing, he wants to make clear that this is not some clever attempt, as some may assume, to win his freedom through a mere technicality. Rather, he is presenting and exposing this **one** violation of his civil rights as a means to encourage a reexamination of his entire prosecution — to reach the truth of his absolute innocence of every one of the charges against him; to expose the ugly truth, the facts that these few corrupt judges and government prosecutors are desperately trying to keep buried in a 6 x 9 prison cell.

## CONCLUSION

Because the Hon. David Hittner has, for the past eleven years played the leading role in this conspiracy to keep an innocent man in prison, and therein to protect the finality of the Hon. Gregg Jeffrey Costa's "most significant" prosecution ... and there is no reason to expect an uncharacteristic departure from that role here ... this case should be reassigned to a different judge. And, because the facts here are indisputable and more than establish Mr Stanford's actual innocence and wrongful conviction, that conviction should be **VACATED**

32

# Certificate of Service

I, Robert Allen Stanford, pro se, hereby certify
that on this 13 day of July, 2020, I placed a
copy of this 'Motion For Relief From Judgment' in
the U.S. Mail addressed to:

Lauretta Drake Bahry
Carmen Castillo-Mitchell
Assistant U.S. Attorney
Department of Justice
1000 Louisiana Ave.
Suite 2300
Houston, Texas 77002

Respectfully submitted,

July 13, 2020          R. Allen Stanford
                       ROBERT ALLEN STANFORD
                       MOVANT PRO SE
                       REG. # 35017183
                       USP COLEMAN II
                       P.O. BOX 1034
                       COLEMAN, FL 33521

33