# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 21 2022

Nathan Ochsner, Clerk of Court

**UNITED STATES OF AMERICA,**

Plaintiff

vs.                                                          Case No. 4:09-cr-00342

**ROBERT ALLEN STANFORD,**

Defendant

## DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582(c)(1)(A)(i) AS NOW AMENDED, AND THE FIRST STEP ACT OF 2018

### TO THE HONORABLE DAVID HITTNER, SENIOR U.S. DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS:

Defendant Robert Allen Stanford, proceeding *pro se*, hereby respectfully moves in this Court for compassionate release under 18 U.S.C. 3582(c)(1)(A)(i), and Section 603(b) of the First Step Act of 2018. In support of this request, Mr. Stanford submits the following 'Extraordinary and Compelling Reasons' relative to the present COVID-19 pandemic that warrant a reduction in his 110 year sentence. See, U.S.S.G. 1B1.13, Application Note 1 (A)-(D).

In Section 603(b) of the First Step Act, Congress amended the text of 18 U.S.C. 3582(c)(1)(A) to read:

1

"[T]he court, upon motion by the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce a prisoner's term of imprisonment...18 U.S.C. 3582(c)(1)(A) (2018)". *United States v. Shkambi*, 2021 U.S. App. LEXIS 10053 (5th Cir., April 7, 2021)

This change was obviously very important. It eliminated the first of the pre-FSA requirements for a 3582 motion. Namely, a motion by the BOP. For the first time, prisoners like Mr. Stanford could move on their own accord.

Another important change, relevant here, is the emergency circumstances brought on by the COVID-19 pandemic, with regard to the "or lapse of 30 days" exhaustion requirement in Section 603(b). In *United States v. D'Angelo Lee*, 2020 U.S. Dist. LEXIS 101815 (N.D. Tex. April 23, 2020), and in light of Section 603(b), Chief Judge Barbara M.G. Lynn, recognized:

"The court concludes that Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such a waiver, allowing courts to deal with the emergency before it is potentially too late." See also, *Valentine, v. Collins*, 956 F.3d 797 (5th Cir. 2020) (Higginson, J.) ("Though Section 3582(c)(1)(A)(i) contains its own exhaustion requirement, several courts have concluded this requirement is not absolute and that it can be waived by the government or the court, therefore justifying an exception in the unique circumstances of it can be waived by the government or the court, therefore justifying an exception in the unique circumstances of the

2

COVID-19 pandemic."); see also, *United States v. Orellana*, 2020 U.S. Dist. LEXIS 64037 (S.D. Tex. 2020) (confirming same).

In light of these important changes in the law that now allow a defendant-filed motion under 18 U.S.C. 3582(c)(1)(A)(i), and the Fifth Circuit's recognition of the unique circumstances surrounding the global COVID-19 pandemic, in the context of such a motion, when combined with the other intervening law as announced in *Luis v. United States*, 136 S.Ct. 1083 (2016), and in *Concepcion v. United States*, 142 S.Ct. 54 (2022) - the latter, a holding which has broadened the factors a District Court may consider in these motions - this First Step Act motion is properly brought and this Court has the discretion to hear and adjudicate it.

## BACKGROUND

Following a six-week jury trial, where Mr. Stanford was represented by court-appointed counsel, on March 6, 2012, he was convicted on 13 of 14 counts of a superseding indictment charging multiple conspiracies to commit mail and wire fraud, obstruction of an SEC investigation/proceeding, and money laundering, in violation of 18 U.S.C. 371, 1341, 1343, 1349, 1505, and 1956(h).

On June 14, 2012, after the denial of bail and three years of pre-trial detention, Mr. Stanford was sentenced in this Court to a total term of 110 years imprisonment and sent to serve that term at the United States Penitentiary in Coleman, Florida (USP Coleman II), where he remains confined.

Mr. Stanford is now 72 years old and suffers from a serious heart condition requiring close and continuous monitoring and multiple medications. He has been in federal custody since June 18, 2009, which is just over 13 years. When credited with the additional "statutory good time" under 18 U.S.C. 3624(b)(1), which was amended by Section 102(b) of the First Step Act to provide an increase of ... "up to

3

54 days for each year of the prisoner's sentence imposed by the court"...Mr. Stanford has served the equivalent of approximately 29 years.

## ARGUMENT

In light of the corona virus (COVID-19) and its spread throughout the federal prison system, and Mr. Stanford's vulnerability to contagion, he merits compassionate release. According to the Centers for Disease Control and Prevention (CDC), his age and pre-existing condition place him at a heightened risk of infection and serious illness or possible death from COVID-19. When these factors are combined with the known realities of his institutional confinement, living in close proximity quarters where hundreds of inmates have already contracted the virus, and where some have even died, numerous District Courts have recognized that, these realities of institutional confinement constitute 'extraordinary and compelling reasons' warranting a reduction in sentence.

And further, the Department of Justice has recognized these ongoing risks, now compounded by the new "next generation" strains of this deadly virus (against which the current vaccines have not been tested), and responded with internal guidance directing the Government to concede the presence of 'extraordinary and compelling reasons' warranting sentence reduction for defendants who have CDC risk factors...such as, inter alia, defendants with unstable heart conditions.

The Government's position is that, during the pandemic, a serious medical condition meets the requirement..."even if that condition in ordinary times would not allow for compassionate release." See, *United States Unopposed Motion For Remand*, at *United States v. Garcia*, No. 20-1716 (7th Cir. June 2020) ECF No. 9; see also, *United States v. Firebaugh*, No. 16-20341-CR-UU (S.D. Fla. June 1, 2020).

U.S.S.G. 1B1.13

Although no longer binding on the District Courts after the First Step Act of 2018 (FSA), and *United States v. Shkambi*, this policy statement remains instructive in the compassionate release context. In Application Note (B), where prior to the FSA the Sentencing Commission listed certain circumstances that may constitute 'extraordinary and compelling reasons' for a sentence reduction, the Commission included where..."The defendant is at least 65 years old, and is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75% of his or her sentence, whichever is less." *United States v. Kubinski*, No. 3:93-CR-28-1H (E.D. N.C. 2020) (compassionate release granted to 72 year-old defendant facing risk of infection and serious illness from COVID-19); see also, *United States v. Rasasy*, U.S. Dist. LEXIS 223909 (E.D. La. 2020).

When this specifically identified criteria in Application Note (B) is combined with the catch-all ("Other Reasons") category found in Application Note (D), which could certainly apply to the heightened risks Mr. Stanford faces of COVID-19 infection and serious illness or possible death, he very clearly meets the Commission's existing (and at least instructive) definition of 'extraordinary and compelling reasons' warranting a reduction in his sentence to time served. See then, *United States v. Castillo*, 2020 U.S. Dist. LEXIS 94611 (S.D. Tex. May 29, 2020) (granting compassionate release to a 65 year-old suffering from "heart issues", and the risks faced in the COVID-19 pandemic); *United States v. Busby*, 2021 U.S. Dist. LEXIS 78902 (N.D. Tex. 2021) (granting defendant's Section 3582 motion for compassionate release after finding extraordinary and compelling

5

reasons arising out of the COVID-19 pandemic); *United States v. Jones*, 2020 U.S. Dist. LEXIS 231976 (E.D. Tex. 2020) (granting compassionate release based on circumstances surrounding COVID-19 pandemic); *United States v. Samuels*, 2020 U.S. Dist. LEXIS 232495 (W.D. La. 2020) (granting compassionate release based on defendant's age and medical condition placing him at a heightened risk of COVID- 19 infection); *U.S. v. Calhoun*, 2021 U.S. Dist. LEXIS 92022 (S.D. Miss

## OTHER INTERVENING CHANGES IN LAW

*Luis v. United States*, 136 S.Ct. 1083 (2016)

In *Luis v. United States*, 136 S.Ct. 1083 (2016), the Supreme Court held that the government violates the Sixth Amendment when it freezes and restrains a defendants legitimate (untainted) assets prior to a criminal trial, and subsequently prevents that defendant from accessing those assets in order to hire the counsel of his choice. The Supreme Court made clear that the government cannot withhold legitimate assets, untraceable to any criminal conduct, as occurred here in this case, solely for the purpose of obtaining a post-verdict forfeiture.

"The question presented is whether the pretrial restraint of a criminals legitimate untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice, violate the Fifth And Sixth Amendments. We see no reasonable way to interpret the relevant statutes to avoid answering the question. Hence we answer it, and our answer is that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment. The nature and importance of the constitutional right, taken together with the nature of the assets, lead us to this conclusion." [ ] "To ensure that the right to counsel has meaning, the Sixth Amendment limits the assets the government may freeze to secure eventual

6

forfeiture". [and] "It is no answer that defendants rendered indigent by a pretrial asset freeze can resort to public defenders".

As Stanford was in fact rendered indigent by the district court (Doc. 122), based on the government's pretrial freeze of his legitimate, (untainted) assets, and the district court denied any and all access to those funds, instead appointing publicly-paid counsel, even after his prior (unpaid) counsel had made repeated attempts to unfreeze those government restrained untainted assets, the holding announced here in *Luis v. United States* applies to his case with decisive force.

This fact becomes indisputably clear when considering that at the post-conviction forfeiture hearing it was revealed by U.S. Postal Inspector Clayton Gerber that at least eleven of the multiple bank accounts frozen by the Department of Justice in the criminal proceeding, held millions of dollars in legitimate funds untraceable to any illegitimate activity. (See, Doc. 967)

Accordingly, based on the government's own asset-tracing expert, the person who confirmed the DOJ's unconstitutional pre-trial restraint of millions of legitimate (untainted) dollars - that Stanford could have used, and should have been allowed to use to hire the qualified counsel of his choice - when viewed through the clarifying prism of Luis v. United States, it is indisputable that his substantial rights as guaranteed by the Sixth Amendment, were violated in a manner now requiring a new trial. In no uncertain terms, the Supreme Court held that..."Untainted property belongs to the defendant, pure and simple".

## 28 U.S.C. 2255/Procedural Bar To Relief

Previously, when in the collateral habeas proceeding under 28 U.S.C. 2255 Mr. Stanford attempted to raise and fully brief this Sixth Amendment issue - based on

the clarification provided by the Supreme Court in *Luis v. United States* - both the government and the district court held that, even though Stanford had thought to 'preserve' this "untainted asset freeze" argument in summary fashion in the Fifth Circuit Court when filing his direct appeal, more than two years earlier, because *Luis v. United States*,136 S.Ct. 1083 (2016) was not retroactively available in collateral proceedings, he was procedurally barred from accessing its holding, and thus not entitled to the relief it would have provided.

Moreover, after first granting Mr. Stanford permission to present a full briefing of this "untainted asset freeze" argument, the district court then never even considered this separately-filed 'full briefing', and left all mention of it out of its denial. (See, Docs. 1364-1387, 1421)

### *Concepcion v. United States,* 1422 S.Ct. 54 (2022)

In *Concepcion v. United States*, 142 S.Ct. 54 (2022), the Supreme Court removed this previous 'non-retroactive' procedural bar to relief under *Luis v. United States*, 136 S.Ct. 1083 (2016), and made clear that in a First Step Act proceeding under Section 3582, as here, the district court may consider any such other intervening changes in law.

Specifically, the Supreme Court held that..."The question in this case is whether a district court adjudicating a motion under the First Step Act, may consider other intervening changes in law. The Court holds that it may".

By its plain language and terms - and particularly in the absence of any governing policy statement from the U.S. Sentencing Commission (U.S.S.G. 1B1.13) - this holding extends even further a district courts already broad discretion to determine, on its own, what may constitute an 'extraordinary and compelling reason' for

8

sentence reduction relief in a First Step Act proceeding under 18 U.S.C. 3582(c)(1)(A)(i); discretion that would include the application of a non-retroactive change in law in order to restore a defendant's substantial right to counsel of choice, as guaranteed by the Sixth Amendment.

## CONCLUSION

For imprisoned inmates with pre-existing conditions like Mr. Stanford, the ongoing COVID-19 pandemic with its multitude of highly contagious variants raises more than just legal questions. And in particular, for those inmates, like Mr. Stanford, who are over 70 years of age. For them, when these health and safety particulars are added to the fact that they are confined in closed and close-quartered prisons where every breath of air is shared with numerous others, and where protective medical care has proven to be virtually non-existent, this deadly pandemic has added a whole other dimension of vulnerability…and difficulty just to survive. Because the protections in our Constitution apply equally to the most vulnerable among us…even those who have lost their freedom…and particularly where matters of public health and safety are at issue, if the United States is to remain the civilized society it holds itself out to be, it would be heartless and inhumane for it to ignore Mr. Stanford's plight.

For these reasons, Mr. Stanford respectfully requests that this Honorable Court recognize his plight, and that it reduce his lengthy sentence to "time served".

Or, in the alternative, in light of the holding in *Concepcion v. United States*, 142 S.Ct. 54 (2022), that it now consider the merits of Mr. Stanford's (previously) "procedurally-barred" arguments as presented in the 2255 proceeding, relative to the government's unconstitutional restraint of his legitimate assets, as clarified by

9

the Supreme Court in *Luis v. United States*, 136 S.Ct. 1083 (2016), and in that process that it order a *'Monsanto-style'* hearing, *United States v. Monsanto*, 491 U.S. 600, 607(1989); whereupon he will be allowed to recall U.S. Postal Inspector Clayton Gerber in order to compel his testimony and show that the government's unconstitutional pretrial restraint of his millions of dollars in legitimate (untainted) assets, violated his Sixth Amendment right to hire the counsel of his choice; a violation that now demands he be given a new trial.

Simply put, and in sum, if retried today, in 2022, for the same alleged offenses, Mr. Stanford would have the unassailable constitutional right to receive the full benefit of the decision in *Luis v. United States*, 136 S.Ct. 1083 (2016), regarding the government's unlawful pre-trial (pre-indictment) restraint and withholding of his millions of dollars in wholly legitimate and "untainted" assets, as confirmed by the government's own asset-tracing expert, U.S. Postal Inspector, Clayton Gerber…and not be forced to proceed to trial in a case the district court itself characterized as "extraordinarily complex" (Doc. 126), with publicly-paid counsel who, by their own admission, were utterly incapable of providing him with "the constitutional threshold of effective assistance of counsel". (Doc. 602-1); an indisputable fact that, through any legal prism, and by any definition, constitutes an "extraordinary and compelling reason" for First Step Act relief under 18 U.S.C. 3582(c)(1)(A)(i).

And finally in the 'extraordinary and compelling reasons' context, and calculus, and perhaps most glaring of all, Mr. Stanford submits that his 2012 conviction and sentencing to 20 years imprisonment on COUNT FOUR of the Superseding Indictment (Doc. 422) - for allegedly sending a (Fifth Circuit Court of Appeals-confirmed) "purely intrastate" wire transmission from a location in Houston Texas, to another location in Houston, Texas, that was, and remains, not prohibited by the

federal wire fraud statute, 18 U.S.C. 1343 - constitutes a clear and indisputable violation of his substantive right to due process of law as guaranteed b the Fifth Amendment, thus representing a complete miscarriage of justice. See, *Whalen v. United States*, 455 U.S. 684 (1980) (A conviction and punishment not authorized by Congress violates the constitutional principle of separation of powers."); *Fiore v. White*, 531 U.S. 225 (2001) (A defendant's conviction and continued incarceration violates due process where it is based on conduct that a criminal statute, as properly interpreted, does not prohibit."); see also, *Davis v. United States,*, 417 U.S. 33 (1974)("Conviction and punishment for an act the law does not make criminal inherently results in a complete miscarriage of justice.")

Taken together, and at a minimum, because COUNT FOUR was, and remains, inextricably intertwined with all other counts in the indictment (and therefore cannot be viewed and corrected in isolation), and because in the absence of any governing policy statement defining such matters (U.S.S.G.1B1.13) that qualify as an 'extraordinary an compelling reason' for relief under the newly amended 18 U.S.C. 3582(c)(1)(A)(i) a district court may make their own determination based on any fact or set of facts a defendant may raise in these type proceedings, Mr. Stanford further submits that, on this issue alone, he is now entitled to a (plenary) resentencing; a resentencing whereby, under Fed. Crim. Rule 43(a)(3), he would be entitled to attend.

Date: July 17, 2022

Respectfully submitted,

*/s/ R. Allen Stanford*

Robert Allen Stanford, *pro se*

Reg.#35017-183

FCC Coleman USP II

P.O. Box 1034

Coleman, Florida 33521

# CERTIFICATE OF SERVICE

I, Robert Allen Stanford, *pro se*, hereby certify that on this 17th day of July 2022, I placed a copy of this 'Defendant's Motion For Compassionate Release' in the United States Mail addressed to:

United States Attorney's Office 1000 Louisiana Ave.
Suite 2300
Houston, Texas 77002

Robert Allen Stanford, *pro se*

*/s/ R. Allen Stanford*

R. Allen Stanford
U.S.P. Coleman II
P.O. Box 1034
Coleman, FL. 33521

United States District Court
Southern District of Texas
FILED
JUL 21 2022
Nathan Ochsner, Clerk of Court

U.S. District Court Southern District
of Texas
Clerk's Office
P.O. Box 61010
Houston, Texas
77208

7021 0950 0002 0072 4452

CERTIFIED MAIL





1023
77208

U.S. POSTAGE PAID
FCM LG ENV
PINELLAS PARK, FL
33781
JUL 18, 22
AMOUNT
$5.68
R2305K140660-10

