## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**UNITED STATES OF AMERICA**     §
                                 §
    **v.**                       §        **CR. NO. H-09-342**
                                 §
**ROBERT ALLEN STANFORD**        §

## OPPOSITION OF THE UNITED STATES TO DEFENDANT R. ALLEN STANFORD'S FOURTH MOTION FOR COMPASSIONATE RELEASE

The United States respectfully submits its opposition to defendant R. Allen Stanford's fourth motion for compassionate release, which was filed under the First Step Act and 18 U.S.C. § 3582. *See Defendant's Motion for Sentencing Relief In Accordance with U.S.S.G. Amendment 814 and 18 U.S.C. 3582(c)(1)(A)(i)* (ECF No. 1604, filed April 29, 2025) (*Def. Mot.*). The motion fails to satisfy the requirements for compassionate release and should be denied with prejudice.

The defendant claims "extraordinary and compelling reasons" warrant a reduction in his sentence. *Def. Mot.* 2 (citing and quoting § 3582(c)(1)(A)(i)). However, his lone argument is that he received an "unusually long sentence," which is one of six different factors the U.S. Sentencing Guidelines recommend judges use to determine whether extraordinary and compelling reasons exist. *See* U.S.S.G. § 1B1.13(b)(6). The defendant does not qualify under this provision, however, for three independent reasons. First, he did not receive an unusually long sentence, based on the facts and circumstances of his case. Second, the text of the

Guideline requires the defendant to identify a change in the law, which Stanford cannot do and has not done. More specifically, for this provision to apply, the defendant must establish a retroactive change in the law that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." No such change has occurred, nor can the defendant point to any. U.S.S.G. § 1B1.13(b)(6).

Third, the defendant does not seriously contest, much less demonstrate, that a reduction would be consistent with the factors laid out in 18 U.S.C. § 3553(e). These remain required elements of the compassionate release analysis, as do the policy statements of the Sentencing Commission. Instead, the record and the applicable factors demonstrate that any sentence reduction would constitute a miscarriage of justice.

## Facts and Procedural History

This Court is intimately familiar with the facts of the case. The defendant masterminded one of the two largest Ponzi schemes in U.S. history, with billions of dollars in loss and thousands of victims in his wake. A grand jury sitting in the Southern District of Texas returned an initial indictment in June 2009 and then, in a fourteen-count superseding indictment returned in May 2011, charged the defendant with one count of conspiracy to commit wire and mail fraud; five counts of wire

fraud; five counts of mail fraud; one count of conspiracy to obstruct an SEC investigation; one count of obstruction of an SEC investigation; and one count of conspiracy to commit money laundering. *See Superseding Indictment* (ECF No. 422, filed May 4, 2011).

This Court presided over the defendant's seven-week jury trial, which began on January 23, 2012 and concluded on March 6. The jury convicted the defendant on 13 of 14 counts. *See United States v. Stanford*, 805 F.3d 557, 563 (5th Cir. 2015). As the government's proof at trial demonstrated, from 1990 through February 2009 the defendant's investment scheme cost his victims approximately $7 billion. Stanford's victims believed they were investing in sound, low-risk CDs issued by Stanford's bank, Stanford International Bank Limited. *See id.* at 564. In reality, Stanford used the money, at the rate of $1 million per day in 2008, to fund his extravagant lifestyle. *See id.* As summarized by the Fifth Circuit, "[c]ontrary to the company's marketing materials regarding secure, conservative investments, a substantial portion of investor funds were actually appropriated by Stanford himself, who used them to finance his personal business ventures and opulent lifestyle." *Id.*

This Court also conducted the defendant's sentencing proceedings, which involved a presentence report, prepared by the U.S. Pretrial Services Office, as well as extensive briefings by both parties. The defendant's guideline range called for up to 230 years in prison, PSR ¶ 145, and after considering the evidence, on June 14,

2012, this Court sentenced the defendant to 1,320 months' imprisonment. It also ordered forfeiture in the amount of $5.9 billion. *See Order of Forfeiture* (ECF No. 862, filed June 1, 2012).

At sentencing, Stanford took no responsibility for his crimes, which decimated the savings of thousands of victims. *See Transcript* at 30-32 (ECF No. 867, filed July 5, 2012). Instead, he outright denied committing the fraud. *See id.* ("I never planned to, I never did, either corporately or personally, defraud anyone.") By contrast, two victims, on behalf of many more, spoke eloquently of the impact on their lives: "Mr. Stanford stole the life savings of innocent and unaware families that were left in poverty, unable to pay for medical treatments and living expenses." *Id.* at 62-63.

Prior to pronouncing the sentence, this Court made the following statement:

A few observations from the Court first, all based upon the evidence that I heard during trial. Mr. Stanford was found guilty by the jury for perpetuating one of the most egregious criminal frauds ever presented to a trial jury in federal court.

The testimony revealed that the fraud was executed with the precise aim of amassing billions of dollars to fund a personal business empire and to support an extraordinarily lavish lifestyle. The testimony graphically depicted that the Defendant's actions ruined the lives of thousands of victims all over the world who entrusted him with their life savings.

Hundreds of victim impact statements were received by me and I read each one of them. I felt I owed it to each writer to read their story and consider their anger and grief.

*Id.* at 71.

Stanford proceeded pro se on appeal, and in 2015, the Fifth Circuit affirmed his convictions and sentence. *Stanford,* 805 F.3d at 563. After the defendant filed a motion to vacate his convictions and sentence under 28 U.S.C. § 2255, this Court denied the motion in a lengthy order entered on April 3, 2019. *See Order* (ECF No. 1421).

After the denial of numerous motions to alter or amend the judgment, motion for relief from judgment, request for reassignment to a different judge, motion to disqualify the judge, and unsuccessful appeals from the denials of the aforementioned motions, Stanford began filing motions for compassionate release. *See* ECF Nos. 1422-1593 (detailing filings in district court and appellate court).

On July 22, 2021, Stanford filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See Motion for Compassionate Release* (ECF No. 1553). As "extraordinary and compelling reasons" justifying early release, he cited "a serious heart condition requiring close and continuous monitoring and multiple medications," coupled with his age of 71 years. *Id.* He assured the court that, upon his release, "he would end all litigation in his complex and enduring case." *Id.* The district court denied the motion on July 23, 2021, after "having considered the motion and applicable law." *See Order* (ECF No. 1554).

On August 13, 2021, Stanford filed a second motion for compassionate release

under § 3582(c)(1)(A)(i), based upon the new "Delta Variant" of COVID-19 and his alleged susceptibility to it due to his age and to arrhythmia. *See Motion for Compassionate Release* (ECF No. 1565). Stanford asserted that, if released, he would "file the necessary paperwork to immediately suspend and terminate all pending litigation in his complex and protracted criminal case – as any further litigation beyond his release would be unnecessary and unnecessarily burdensome on himself, his extended family, and the Courts." *Id*. The district court denied the motion after "having considered the motions, submission, and applicable law." *See Order* (ECF No. 1567).

On July 21, 2022, Stanford filed his third motion for compassionate release, again citing § 3582(c)(1)(A)(i) and his alleged risk for COVID-19 and his personal health. *Def Mot*. at 1-2. He argued that his age (72) and a serious heart condition, which required continuous monitoring and medications, increased his risk of infections and serious illness or possible death. *Id*. at 3-4. He also argued that *Luis* constituted an intervening change in the law that the court could consider in his current motion. *Id*. at 3.

The district court denied the motion on July 25, 2022, after "having considered the motion and the applicable law." *See Order* (ECF No. 1578). The defendant appealed the denial of this motion, and on August 17, 2023, the Fifth Circuit ordered a limited remand "for the district court to explain its reasons." *United States v.*

6

*Stanford*, 2023 WL 5284059 (5th Cir. 2023).

While his third motion was pending, the court-appointed Receiver, Ralph S. Janvey, filed a notice providing relevant information. *See Notice of Information Relevant to Allen Stanford's Motion for Compassionate Release* (ECF No. 1588, filed Aug. 24, 2023). In it, the Receiver explained that the defendant has filed objections to five settlements, which total $1.6 billion, reached by the Receiver with banks who processed and held Stanford's money. *Id.* 1–2. These objections prevented thousands of victims from receiving compensation—despite the still pending $5.9 billion restitution (and forfeiture) order against the defendant. *Id.*

The government filed its response, *see Response in Opposition*, ECF No. 1589, filed Aug. 28, 2023), and the Court denied the motion again on August 31, 2023. In its Order denying the motion, the Court explained that the § 3553(a) factors were wholly against compassionate release, including the "unprecedented" nature of Stanford's offenses and the "countless number of victims," as well as the "financial devastation" he wrought. ECF No. 1591 at 3.

Stanford appealed, and the Fifth Circuit affirmed this Court's decision in an opinion issued on November 7, 2023. In it, the court held that this Court had appropriately "explained its reasons for the denial and reiterated its ruling." *Order* at 2 (ECF No. 1593, filed Nov. 7, 2023). It concluded that Stanford had not shown this Court abused its discretion in denying the motion for compassionate release. *Id.*

On April 29, 2025, the defendant filed his current, fourth motion for compassionate release after exhausting his administrative remedies. In addition, he has filed five supplements to his motion, on five separate occasions, the last being on June 4. *See* ECF Nos. 1606–08, 1610, 1612.

## ARGUMENT

### I.      Applicable Law

Ordinarily, a district court may not modify a defendant's sentence after the judgment becomes final. *Dillon v. United States*, 560 U.S. 817, 824 (2010). Enacted as part of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, section 3582(c)(1)(A) provides a rare exception to this rule, often referred to as "compassionate release." It permits a district court to reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The defendant has the burden to prove he is entitled to a reduction. *United States v. Ward*, 11 F.4th 354, 361 (5th Cir. 2021).

Congress did not define "extraordinary and compelling reasons," instead directing the Sentencing Commission to promulgate policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence

reduction, including the criteria to be applied." 28 U.S.C. § 994(t). Effective November 1, 2023, the Commission amended the Guidelines to expand the previous policy statement set forth in U.S.S.G. § 1B1.13. As relevant here, the Guideline now lists six categories of circumstances that may qualify as "extraordinary and compelling reasons." *Id.* U.S.S.G. § 1B1.13(b)(1)-(6).

These categories are (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* The Fifth Circuit has made clear, however, that "prisoners have extraordinary and compelling reasons for relief 'only when the face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025) (quoting *United States v. Escajeda*, 58 F.4th 186, 186 (5th Cir. 2023)).

The lone category raised by the defendant—"an unusually long sentence"—has itself been the subject of considerable debate. It was not included in the original categories of "extraordinary and compelling reasons" propounded by the Commission as commentary to § 1B1.13. Only when the Guidelines were revised in 2023 did this provision appear, now in the text of the Guideline itself.[1] It requires

---

[1] The government reserves the right to argue that § 1B1.13's inclusion of "unusually long

that the defendant establish (1) he received an unusually long sentence; (2) he has served at least ten years; and (3) a change in the law that would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

Importantly, although the Guideline allows nonretroactive changes in the law to constitute a qualifying change, the Fifth Circuit has rejected this interpretation of extraordinary and compelling circumstances, because it exceeds the statutory mandate. *Austin*, 125 F.4th at 691–92. In particular, because a nonretroactive change "affects every prisoner previously sentenced under that provision in the exact same way," and has "zero effect on defendants already in prison," it is by definition neither an exigency nor unique and can never be "extraordinary and compelling" under 18 U.S.C. § 3582. *Austin*, 125 F. 4th at 692.

## II.     The Court Should Deny Defendant's Motion Because He Has Not Met His Burdens Justifying Compassionate Release

The defendant's motion should be denied. This Court did not impose an "unusually long sentence." In addition, the defendant has failed to show a nonretroactive change in the law that would produce a gross disparity if he were sentenced today. Taken individually or together, these mean that he cannot show

---

sentence" is invalid because the Commission exceeded its mandate from Congress. Specifically, allowing nonretroactive changes in the law to qualify as a proper "change in the law" is inconsistent with the statutory mandate in 18 U.S.C. § 994(t).

"extraordinary and compelling circumstances" under § 3582(c). Finally, he has not met his burden to show that a reduction is warranted in light of the relevant § 3553(a) factors.

**A.     The Defendant Did Not Receive an Unusually Long Sentence**

This Court should deny the defendant's motion initially because he was given an appropriate sentence, one in that in no way was "unusually long." As explained by the Fifth Circuit in its 2015 opinion affirming the original conviction and sentence, Stanford's sentence was appropriately calculated. *See Stanford*, 805 at 569–70. More importantly, this Court sentenced the defendant to 110 years, which was well within (and well below) the 230-year sentence authorized by the Sentencing Guidelines. *Id*. at 570.

This determinate sentence shows how this Court calculated the appropriate punishment with care. Its final pronouncement was under 50% of the authorized Guidelines range. *See United States v. Zapata*, 2025 WL 1456668 at *2 (S.D. Tex. 2025) (rejecting an unusually long sentence claim in part because the defendant's "life sentence was within his advisory guideline range based on the specific circumstances of his crime").

In addition, the defendant's crimes were of an unprecedented scale and scope. As this Court noted, and the Fifth Circuit affirmed, the defendant "perpetrat[ed] one of the most egregious criminal frauds ever presented to a trial jury in federal court."

*Stanford*, 79 F.4th at 462. As a result, it was not "unusually long." *See, e.g.*, *United States v. Francois*, 2025 WL 1042841 at *6 (E.D. Tex. Apr. 4, 2025) (Mem. Op.) ("The sentence Francois received, 535 months, could be viewed as unusually long, but it was imposed after he launched an unusually egregious saga of violence and intimidation spanning three different states over the course of two days.").

Accordingly, the defendant's motion should be denied for failure to demonstrate an unusually long sentence, and thus a lack of extraordinary and compelling circumstances.

### B. The Court Should Deny Defendant's Motion Because He Has Not Demonstrated A Change in the Law

Defendant's request for a sentence reduction should also be denied because he has not demonstrated a change in the law that would result in a gross disparity between his original sentence and a sentence calculated now. The defendant cites to two Supreme Court cases: *Rosales-Mireles v. United States*, 585 U.S. 129 (2018), and *Bittner v. United States*, 598 U.S. 85 (2023). Neither constitutes a change in the law, much less the kind of retroactive change that would produce a gross disparity if he were sentenced today.

*Rosales-Mireles* considered Federal Rule of Criminal Procedure 52(b), which states that "plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention." In *United States v. Olano*, the Court established three conditions for Rule 52(b) plain error relief, plus a fourth that

required the error to "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." 507 U.S. 725, 734–36 (1993). In *Rosales-Mireles*, the Supreme Court disagreed with and rejected the Fifth Circuit's formulation of *Olano*'s fourth prong, which reserved plain error reversal for "the types of errors . . . that would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge." *United States v. Rosales-Mireles*, 850 F.3d 246, 250 (5th Cir. 2017).

Simply put, the Supreme Court's rejection of the "shock the conscience" interpretation of the final prong in a Rule 52(b) analysis is not a change in the law. More importantly, it does not constitute a *retroactive* change in the law. *Valle v. McConnell*, 2019 WL6879363 at *2 (E.D. La. Nov. 12, 2019) (collecting cases). As a result, under the Fifth Circuit's decision in *Austin*, it cannot constitute a proper vehicle for a finding of "extraordinary and compelling circumstances." 125 F. 4th at 691–92.

Moreover, the impact of *Rosales-Mireles*, even according to the defendant, would be on whether certain individual counts of his conviction were proper. *See Def. Mot* 5 (arguing that his conviction on Count One of the Superseding Indictment was improper because it included overt acts when 18 U.S.C. § 1349, the relevant statute does not require an over act, and that Count Four was improper because the

Court allowed the government to amend constructively the indictment).[2] These have nothing to do with the calculation of his sentence. The reversal of these counts would not impact his sentence, much less create a gross disparity if he were sentenced today.

The defendant's other case, *Bittner v. United States*, 598 U.S. 85 (2023), is even less relevant. *Bittner* involved the Supreme Court's consideration of the Bank Secrecy Act, and in particular "FBAR" reports, which are reports of foreign bank and financial accounts that must be filed annually when a U.S. person maintains an overseas financial account. 31 U.S.C. § 5314. In *Bittner* the Court held the penalty provision of the BSA and its implementing regulations works on a per-report basis, rather than a per-account basis. *Bittner*, 598 U.S. at 89–90. In other words, a report failing to disclose ten accounts would be subject to only one penalty, with a maximum fine of $10,000, rather than ten separate penalties, with a maximum fine of $100,000. *Id.* at 90.

---

2 Interestingly, the Fifth Circuit's consideration of the constructive amendment issue in Count Four specifically and correctly cites to *Olano*, including the proper articulation of the fourth prong. *Stanford*, 805 F.3d at 566. It does not include the "shock the conscience" language criticized by *Rosales-Mireles*. *Id*.

This case has nothing to do with the defendant's case. Stanford was not charged with BSA or § 5314 violations, nor was the per-account vs. per-report issue relevant to the wire fraud and money laundering scheme he carried out on thousands of victims or the trial this Court oversaw.

Further, *Bittner* did not work a change in the law. It merely restated the familiar rule of lenity, requiring courts to construe penal statutes strictly. 598 U.S. at 102. In fact, *Bittner* quotes at length from *Commissioner v. Acker*, an opinion from 1959. *See Bittner*, 598 U.S. at 101–02 (discussing and then rejecting the government's attempts to distinguish *Acker*). *Bittner* applies the rule of lenity—it does not change the rule. Indeed, Stanford's motion quotes a portion of *Bittner* which is itself an embedded quote from Justice Charles Evans Whittaker's 64-year-old opinion in *Acker*.

This is not a change in the law, much less a retroactive change, still further less a retroactive change that would create a gross disparity if the defendant were sentenced today. The rule of lenity was properly applied during the defendant's original case proceedings, and it had no impact on his convictions or his sentence. As a result, the defendant cannot establish the "unusually long sentence" prong of § 1B.13(b) and by extension, the "extraordinary and compelling circumstances" required under § 3582(c).

### C.    The Court Should Deny the Motion Because the Statutory Sentencing Factors Do Not Weigh in Favor of Release

Even if Stanford had received an unusually long sentence, and had demonstrated extraordinary and compelling reasons, his motion would still fail, because he does not merit release under the factors laid out in 18 U.S.C. § 3553(a). These factors speak powerfully and eloquently in favor of this Court's original sentence, and they provide independent justification for this Court to deny the defendant's motion with prejudice.

Before granting a compassionate release motion for an otherwise eligible defendant, this Court must consider the § 3553(a) factors as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Stanford's motion does not address the § 3553(a) factors. [3]

Further, to the extent that this Court considers the Guidelines policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(a)(2). Whether analyzed under the danger prong of this Guideline, or the

---

[3] Stanford's fourth supplement to his motion claims that he will address the § 3553(a) factors. *Defendant's Fourth Supplement to Pending Motion Filed Under 18 U.S.C. 3582(c)(1)(A), and U.S.S.G. 1B1.13(b)(5) and (b)(6)* (ECF No. 1610, filed May 21, 2025). However, it fails to cite the §3553(a) factors, nor does it argue how application of those factors support a reduction in his sentence. Instead, the *Fourth Supplement* attempts to relitigate issues decided at trial, including who was in control of the Stanford empire when investors lost their money; whether Stanford conducted a Ponzi scheme; and whether any investors had in fact lost any money prior to the SEC's enforcement action in February 2009. *Id.* 2–4.

§ 3553(a) factors themselves, any consideration of the defendant's conduct strongly disfavors reducing his duly imposed sentence by over ninety years.

Section 3553(a) requires courts to consider, among other things, the "nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). The nature and circumstances of the defendant's offenses were unprecedented. So too was the havoc he and his co-conspirators wrought on their victims. The defendant's history and characteristics, including the lifestyle Stanford enjoyed during his scheme and the lack of remorse he demonstrated at his sentencing and which continues to this day, reinforce the imperative to deny the defendant's motion.

Section 3553(a) also speaks of the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). Stanford's offenses were of the most serious kind. To release him, after serving only 15 of a 110-year sentence, and with a multi-billion dollar restitution and forfeiture obligation unpaid, would invert the statutory scheme. It would obscure the seriousness of the offense. It would subvert respect for the law. And it would sanction unjust, insufficient punishment for the offense.

These conclusions are only strengthened by the Receiver's Notice, which was filed in August 2023 and lays out in detail how the defendant's actions have frustrated both the need to provide restitution, another § 3553(a) factor, and the nature of the offense and history and characteristics of the defendant. *Receiver's Notice* 1 (ECF No. 1588, filed Aug. 24, 2023). The defendant has continued to obstruct the Receiver's efforts to obtain funds on behalf of Stanford's victims, *id.* 2, including by filing frivolous and irrelevant objections to five different settlements. *Id.* These actions have denied victims access to the first $100 million in settlement funds and caused the Receiver to incur $91,000 in additional attorney's fees. *Id.* 2–3. This Court should take notice of the Receiver's information and add it to the already-overwhelming evidence that shows releasing Stanford would not be in the best interests of justice.

This conclusion finds strong support in the caselaw. Courts across the country have denied compassionate release to defendants based on the severity of their crimes, even when the defendant has established an extraordinary and compelling reason to be released based on medical hardship. *See, e.g.*, *United States v. Logan*, 2020 WL 730879, at *3 (W.D. Ky. Feb. 13, 2020) (denying compassionate release for defendant with diabetes, prostate cancer, and kidney disease, among other ailments because "reducing Defendant's sentence would minimize the nature and seriousness of the offense," despite the presence of medical conditions that would

warrant release); *United States v. Meli*, 2020 WL 2114769 (S.D.N.Y. May 4, 2020) (denying compassionate release for defendant guilty of $100 million fraud due to the "enormous scale and heartbreaking effects of defendant's crime," even though defendant's medical conditions warrant a reduction in sentence); *United States v. Varnado*, 2020 WL 2512204, at *1-2 (S.D. Cal. May 15, 2020) (denying compassionate release for defendant with COPD and asthma due to seriousness of defendant's charges).

Courts also consistently reject motions for compassionate release when those convicted of serious crimes have not served a substantial enough portion of their sentence. *See, e.g.*, *United States v. Daugerdas*, 2020 WL 2097653 (S.D.N.Y. May 1, 2020) (rejecting compassionate release for defendant with diabetes, hypertension, and obesity due to his only serving 37% of a 180-month sentence for the "largest tax shelter fraud in American history"); *United States v. Steinger*, 2020 WL 1865989, at *1 (S.D. Fla. Apr. 14, 2020) (denying compassionate release to defendant convicted of healthcare fraud because "if granted, would result in a 12-year reduction of his sentence, which the Court finds to be inappropriate given the severity of his offenses."); *United States v. Israel*, 2019 WL 6702522, at *3 (S.D.N.Y. Dec. 9, 2019) (denying defendant compassionate release because even though "the defendant is severely disabled by incurable and progressive medical

conditions," reducing his sentence by seven years after he orchestrated a $450 million Ponzi scheme "would make a mockery of the sentencing statute.").

Stanford devised and executed one of the largest criminal fraud schemes in our nation's history. He has served approximately 14.6% of his sentence. He continues to file baseless motions and appeals to avoid accepting responsibility for his actions. *See Fourth Supplement* (Ex. A) (Stanford's Fifth Circuit brief appealing the decision in the SEC's civil enforcement action); *Defendant's Fifth Supplement to Pending Motion for Reduction in Sentence Under 18 U.S.C.C.3582(c)(1)(A)(i)* (Ex. A) (Stanford's motion to dismiss the SEC's action). Finally, his motion does not address the § 3553(a) factors, and this silence speaks volumes.

Given all this, no court could confidently conclude that releasing the defendant would fulfill the statutory requirement to "protect the public from further crimes of the defendant." § 3553(a)(2)(C). Nor would it constitute a just sentence. Instead, this Court's diligent, thorough, original sentence, imposed after this Court oversaw every key phase of this case (pretrial, trial, presentencing, sentencing, and post-conviction motions), should remain.

# CONCLUSION

This Court should deny the defendant's motion for compassionate release for failing to demonstrate that he received an "unusually long sentence," both because his sentence was appropriately long and because he has not demonstrated a retroactive change in the law that would cause a gross disparity if resentenced. In short, no extraordinary and compelling reasons exist, and after consideration of the § 3553(a) factors, the defendant cannot demonstrate that release would be just.

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

/s/ John Pearson
JOHN P. PEARSON
Assistant United States Attorney
Southern District of Texas

## Certificate of Service

I certify that on June 13, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system.

By: _/s/ John Pearson_
John Pearson
Assistant United States Attorney